Allen Lichtenstein, Bar No. 3992
Lichtenstein@aclunv.org
Margaret A. McLetchie, Bar No. 10931
mcletchie@aclunv.org
Lee Rowland, Bar No. 10209
rowland@aclunv.org
**ACLU OF NEVADA**
732 S. Sixth Street, Suite 200A
Las Vegas, NV 89101
(702) 366-1536
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jason A. Perez-Morciglio and Sebastian Perez-Morciglio, <br><br> Plaintiffs, <br><br> v. <br><br> Las Vegas Metropolitan Police Department; Sheriff Douglas Gillespie (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); Las Vegas Metropolitan Police Department Officers T. Scott and S. Schaier (in their individual capacities); Las Vegas Sands Corporation, a Las Vegas Corporation; and Venetian Security Guards 1-6, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT UNDER 42 U.S.C. § 1983 FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

Come now Plaintiffs Jason A. Perez-Morciglio and Sebastian Perez-Morciglio, by and through the undersigned attorneys, and file this Complaint for injunctive relief, declaratory relief and damages, pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights), 28 U.S.C. §

1331 (federal question jurisdiction), 28 U.S.C. § 1367(a) (supplemental jurisdiction), and 28 U.S.C. § 2201 (creation of remedy).

This is an action under 42 U.S.C. § 1983 seeking to address: (1) Defendants' violations of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution; (2) the unconstitutional policies and practices of The Las Vegas Sands Corporation, doing business as The Venetian Resort Hotel and Casino (the "Venetian"), under which Venetian security personnel falsely claim that the public forum sidewalk abutting Las Vegas Boulevard ("the Strip") and in front of the Venetian Hotel is not a public forum, and detain, search, and arrest citizens on that property in violation of those individuals' constitutional rights of free speech, rights to be free from unlawful arrests and unreasonable searches and seizures, rights to be free from unlawful detainer, and substantive and procedural due process rights; (3) the unlawful policies and practices of Las Vegas Metropolitan Police Department ("Metro"), under which Metro officers validate and encourage Venetian Hotel's false claims that the public forum sidewalk is not a public forum, and additionally, by arresting, searching, and citing of people on that property in violation of those individuals' constitutional rights of free speech, rights to be free from unlawful arrests and unreasonable searches and seizures, and substantive and procedural due process rights; and (4) the civil conspiracy between Defendants to violate civil rights of individuals using the public forum sidewalk abutting the Strip and in front of the Venetian Hotel by falsely claiming it is not a public forum and wrongfully ejecting individuals from that sidewalk.

This action also seeks to address Plaintiffs' several state tort claims against Defendants for false imprisonment, battery, intentional infliction of emotional distress, negligent infliction of

emotional distress, and negligent training, supervision and retention.    This court has supplemental jurisdiction over the state law claims.

Based upon the clear constitutional violations, Defendants' willful and deliberate violations of the law, the harm suffered by Plaintiffs, which is ongoing and irreparable, Plaintiffs seek a permanent injunction and declaratory relief. Furthermore, Plaintiffs are entitled to damages, costs and attorney's fees, punitive damages, and any other relief as victims of civil rights violations and as victims of tort.

## NATURE OF THE ACTION

On January 15, 2010, Plaintiffs were on the public sidewalk in front of the Venetian Hotel. As detailed below, Jason and his brother Sebastian occasionally dress as Zorro and Darth Vader and perform on the Strip. They were standing on the sidewalk, not obstructing pedestrian traffic. On January 15, 2010, Jason was dressed as Zorro. His brother Sebastian was not in costume. Without any provocation, Venetian security personnel confronted the brothers when Jason was throwing away trash in a receptacle on the public sidewalk in front of the Venetian. They then kidnapped the brothers, forced them into a small room inside the Venetian Hotel and detained them.   These security guards handcuffed the brothers, searched their persons and belongings, demanded identification, and photographed them. Each of the brothers was strapped to a chair and kept by the security guards for over an hour.   The guards then summoned two Metro officers who handcuffed and searched the brothers before directing them to sign misdemeanor trespass warnings. Thereafter, the brothers were escorted from the premises to the parking lot in the back of Harrah's Las Vegas Casino by the security guards and were warned not to "trespass" on the sidewalk in front of the Venetian Hotel again or else face arrest.

Plaintiffs allege that Venetian security guards' actions of arresting, handcuffing, detaining, searching, and citing Plaintiffs based upon Plaintiffs' speech and expression on the public forum sidewalk in front of the Venetian Hotel, and their false assertions that this public forum sidewalk is not a public forum, violate Plaintiffs' rights under the United States and Nevada Constitutions and laws and amounted to unconstitutional restraints on Plaintiffs' rights to speech and expression, unconstitutional arrests and searches, as well as violations of Plaintiffs' substantive and procedural due process rights.

Upon information and belief, Plaintiffs further allege that the Venetian's policies and practices of falsely claiming that the public forum sidewalk in front of the Venetian Hotel is not a public forum and harassing, arresting, detaining, searching, ejecting, and excluding individuals from the public forum sidewalk, and Metro's policies and practices of validating and enforcing the Venetian's claims that the public forum sidewalk in front of the Venetian Hotel is not a public forum and validating and affirming the Venetian's actions, as well as Metro's handcuffing, detaining, searching, and citing or issuing warnings to individuals engaged in protected speech on that public forum sidewalk, all violate the United States and Nevada Constitutions and amount to unconstitutional restraints on speech and expression, violations of Plaintiffs' rights to liberty and free movement, violations of Plaintiffs' due process rights, and constitute a conspiracy to deprive individuals using the public forum sidewalk in front of the Venetian Hotel of these protected civil rights.

Finally, Plaintiffs allege that Venetian security guards harassed, seized, unlawfully detained, and searched Plaintiffs, and thereby falsely imprisoned, battered, and intentionally and/or negligently inflicted emotional distress, and inflicted injury upon Plaintiffs.

Plaintiffs allege as follows:

## I.    JURISDICTION

1.      Pursuant to 28 U.S.C. § 1331 this Court has original subject matter jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983.  This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  This Court has jurisdiction to award Plaintiffs damages pursuant to 42 U.S.C. § 1983 and N.R.S. 41.130. This Court has jurisdiction to award Plaintiffs attorney's fees and expenses pursuant to 42 U.S.C. § 1988(b).

2.      Each of the Defendants acted under color of law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983.

3.      Because Defendants are not arms of the State this suit is not barred by the Eleventh Amendment to the U.S. Constitution.  *See Eason v. Clark County School District,* 303 F.3d 1137, 1145 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

4.      Venue is proper in the District Court of Nevada pursuant to 28 U.S.C. § 1391.  All parties reside in Nevada, and all actions pertinent to this Complaint occurred in Clark County, Nevada.  The Las Vegas Sands Corporation, doing business as the Venetian Resort Hotel and Casino, engages in routine business in Clark County, Nevada, and is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1391(c).

## II.    PARTIES

5.      Plaintiff Jason A. Perez-Morciglio ("Jason") is a resident of Clark County, Nevada.  He is a street performer who dresses and performs as Zorro in public.  He considers himself an actor and loves to perform.  He performs two to three times each weekend on

sidewalks along the Strip. Jason has been performing on sidewalks along the Strip since early January, 2010, and performed on the Hollywood Boulevard for over seven years.

6.     When Jason performs on the Strip, he does not approach people. Rather, people approach him and ask to take pictures with him. He does not carry a camera with him when he performs. Jason does not ask for money. He does accept tips when offered. Jason carries plastic swords and plastic knives with him while performing, so that he can do play sword fights in front of people visiting the Strip. However, Jason does not sell anything while performing on the Strip.

7.     Certain sidewalks abutting the Strip and adjacent to certain Strip properties on which Jason performs, which are located above land owned by private corporations (hereinafter "public forum sidewalks"), have been repeatedly declared by the federal courts to be a public forum and the First Amendment fully applies to all expressive activity on those sidewalks.

8.     Plaintiff Sebastian Perez Morciglio ("Sebastian") is a resident of Clark County, Nevada, who, on occasion, accompanies his brother Jason on street performances. Sebastian is also an actor and sometimes dresses as Darth Vader and performs on the Strip.

9.     Defendant Las Vegas Metropolitan Police Department ("Metro") is a law enforcement agency for Clark County and the City of Las Vegas, with jurisdiction over the unincorporated parts of Clark County and is tasked with enforcing both Nevada statutory law and Clark County Codes. Upon information and belief, Metro has engaged and/or engages in a policy and practice of deliberate indifference to the constitutional rights of persons engaging in free speech activities on the Strip, and a policy and practice of deference to casinos on the Strip and their security personnel employees with respect to the constitutional rights of persons engaging in free speech activities on the Strip. Furthermore, despite law clearly establishing that

the sidewalk in front of the Venetian Hotel is a public forum, *Venetian Casino Resort, L.L.C. v. Local Joint Executive Board of Las Vegas*, 45 F. Supp. 2d 1027, 1036 (D. Nev. 1999), *aff'd*, 257 F.3d 937 (9th Cir. 2001), *cert denied*, 535 U.S. 905 (2002), Metro has failed to train its officers to recognize public forum space on the Strip, adequately protect constitutional rights, and prevent continuing constitutional violations.  Metro also, upon information and belief, has a policy and practice of encouraging and assisting the Venetian and its employees in falsely asserting that they can regulate free speech activity on the public forum sidewalk, and violating the constitutional rights of persons engaging in free speech activities on that sidewalk.

10.      Defendant Douglas Gillespie is a Sheriff of Metro ("Sheriff Gillespie"). Defendant Sheriff Gillespie and all Metro police officers are vested with authority to enforce both Nevada statutory law and Clark County Codes.  Defendant Sheriff Gillespie has final policymaking authority for Metro internal polices and is vested with supervisory authority over all Metro officers.

11.      Upon information and belief, Defendant Sheriff Gillespie is aware of, and has either explicitly or implicitly condoned or created a policy and practice of deliberate indifference towards the constitutional rights of persons engaging in free speech activities on the public forum sidewalks.  Furthermore, upon information and belief, despite law clearly establishing that the sidewalks abutting the Strip are a public forum, Defendant Sheriff Gillespie has failed to train his officers to adequately protect constitutional rights on the Strip.  Additionally, upon information and belief, Defendant Sheriff Gillespie is aware of, and has either explicitly or implicitly condoned or created a policy and practice of encouraging and validating claims by casinos on the Strip and their employees that they may regulate free speech activity on public forum sidewalks

and condoning, assisting, validating, and encouraging casinos on the Strip and their employees in their arrests, detentions, and searches of persons engaged in free speech activities on the Strip.

12.     "Defendants Metro Officers" S. Schaier and T. Scott are vested with authority to enforce both Nevada statutory law and Clark County codes, and are each sued in their individual capacities.

13.     Defendant Las Vegas Sands Corporation, a Nevada Corporation, owns, operates and does business as the Venetian Resort Hotel and Casino (the "Venetian"), a Casino and Hotel located at 3355 Las Vegas Boulevard, South, Las Vegas, Nevada, within an unincorporated part of Clark County.

14.     Upon information and belief, the Venetian is aware of, and either explicitly or implicitly condoned or created the policy and practice of its employees and/or agents falsely asserting that the public forum sidewalk in front of the Venetian is not a public forum, regulating free speech on public forum sidewalks adjacent to the Venetian, as well as the policy and practice of Venetian employees arresting, detaining, searching, ejecting, and excluding individuals from the public forum sidewalk in front of the Venetian.  Upon information and belief, the Venetian and its employees and agents have sought the assistance, validation, and cooperation of Metro in engaging in these policies and practices.

15.     "Defendant Security Guards" are employed by the Venetian as security personnel and are charged with enforcing certain Nevada laws on casino property.  Upon information and belief, six security guards were involved in the incident giving rise to this lawsuit.  Upon information and belief, five of the guards' names are "Lovegren," "Linda," "Kevin," "Eli," and "Paul."  The sixth guard's name is unknown.  Defendant Security Guards each harassed, arrested, detained, and searched Plaintiffs under color of law, claiming that the public forum

sidewalk in front of the Venetian is not a public forum, and solicited and received Metro's assistance, encouragement, and validation in doing so. Defendant Security Guards are each sued as individuals.

16.     Defendant Security Guards also intentionally falsely imprisoned and battered Plaintiffs, and also inflicted emotional distress, either negligently or intentionally, upon Plaintiffs.

17.     The naming of defendants herein is based upon information and belief. Plaintiffs reserve their rights to name additional defendants and modify their allegations concerning defendants named herein.

**III.     STANDING**

18.     Plaintiffs were both directly affected by Defendants' practices and policies of violating the constitutional rights of persons engaged in free speech activities on the public forum sidewalk in front of the Venetian. Both Plaintiffs were harmed by Defendants' wrongful arrests and unreasonable searches and seizures. Plaintiffs' substantive due process rights were violated by Defendants' arbitrary and conscience-shocking seizure of Plaintiffs and subsequent banning of Plaintiffs from the public forum sidewalk, and the issuance of a criminal trespass warning to Sebastian regarding his use of the sidewalk. As a result, Plaintiffs were and will continue to be chilled in the exercise of their First Amendment rights to free speech and expression and are afraid to go to the sidewalk in front of the Venetian, even through it is a public forum.

19.     Plaintiffs were harmed by Defendant Security Guards' false imprisonment, battery and infliction of either negligent or intentional emotional distress of Plaintiffs.

20.    Plaintiffs were harmed by Defendants' conspiracy to eject individuals from the public forum sidewalk abutting the Strip and in front of the Venetian Hotel. Through the conspiracy, Plaintiffs were denied of their civil rights to free speech, freedom of movement, freedom from unreasonable searches and seizures, and freedom from unlawful arrest and detention.

21.    An actual case and controversy exists between Plaintiffs and Defendants concerning their respective rights, privileges, and obligations.

**IV.    FACTS**

22.    The Venetian Hotel is located at 3355 Las Vegas Boulevard, South, Las Vegas, Nevada, on an area known as the Las Vegas Strip, within an unincorporated part of Clark County.

23.    The sidewalk abutting the Strip and in front of the Venetian Hotel is a public forum according to the United State District Court for the District of Nevada, *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas*, 45 F. Supp. 2d 1027, 1036 (D. Nev. 1999).

24.    According to established case law, the Venetian does not have the right to exclude individuals from the sidewalk nor the right to regulate protected expression based upon the permissible exercise of those individuals' First Amendment rights. *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas*, 45 F. Supp. 2d 1027, 1036 (D. Nev. 1999).

25.    According to the Ninth Circuit Court of Appeals, the State of Nevada possesses a property interest in a portion of the Venetian's land, the sidewalk abutting the Strip, to guarantee unrestricted public passage along Las Vegas Boulevard. *Venetian Casino Resort, L.L.C. v. Local Joint Executive Board of Las Vegas*, 257 F.3d 937, 946 (9th Cir. 2001).

26.     Under the law, including clearly established case law from the Ninth Circuit Court of Appeals, members of the public have "the recorded right to pass across the Venetian property along Las Vegas Boulevard and to express themselves as they do so with the same freedom as on any public sidewalk." *Venetian Casino Resort, L.L.C. v. Local Joint Executive Board of Las Vegas*, 257 F.3d 937, 948 (9th Cir. 2001).

27.     According to established case law, by owning and maintaining the sidewalk abutting the Strip and in front of the Venetian Hotel, the Venetian is performing a "public function." *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas*, 45 F. Supp. 2d 1027, 1035 (D. Nev. 1999).

28.     Upon information and belief, Metro is a law enforcement agency which has engaged in a policy and practice of affirming the Venetian's false assertions that the sidewalk abutting the Strip and in front of the Venetian Hotel is not a public forum, and wrongfully affirming that the Venetian has the right to regulate protected expression on public forum sidewalks.

29.     Jason is a street performer who dresses as Zorro, and performs on the sidewalks abutting the Strip.

30.     Jason takes pictures with individuals and tourists upon request. He does not solicit any money, but he does accept tips. He also carries plastic knives and swords to play fight in front of people visiting the Strip.

31.     On Friday, January 15, 2010, around 6:20 p.m., Jason was dressed as Zorro and walking in front of the Venetian on the sidewalk along a fence bordering the Strip.

32.     Sebastian was accompanying his brother at that time, and was walking approximately five to seven feet in front of him as they passed the Venetian.

33.    Sebastian then stopped to watch the Mirage Hotel and Casino Volcano show, which is visible from the Strip.

34.    As he passed the entrance to the Venetian, Jason threw a piece of garbage in the receptacle located on the sidewalk along a fence bordering the Strip, and while standing on the public sidewalk, he was approached by a security guard.

35.    Upon information and belief, that security guard's name is "Lovegren."

36.    Security Guard Lovegren told Jason that he was not allowed on the sidewalk because it was private property, and that Jason should leave.

37.    Sebastian, who had been watching the Volcano show, turned and saw Security Guard Lovegren speaking with Jason.

38.    Security Guard Lovegren began reading rules off a piece of paper to Jason regarding conduct on private property.

39.    Jason then told Security Guard Lovegren that the sidewalk was not private property and that if he was trespassing the guard should call the police.

40.    Plaintiffs then saw Security Guard Lovegren speak into his walkie-talkie.

41.    Thereafter, five more security guards arrived and the six guards surrounded Jason.

42.    Defendant Security Guards told Jason to leave or else they would arrest him.

43.    Jason again told them to call the police if he was, in fact, trespassing.

44.    Defendant Security Guards then grabbed Jason and a Defendant Security Guard put him in handcuffs.

45.    One of the Defendant Security Guards then left.

46.    Jason then began to yell for someone to call the police.

47.     Sebastian walked over to the five guards and addressed one of the Defendant Security Guards, a female.

48.     Upon information and belief, one of the Defendant Security Guards, the female security guard addressed by Sebastian at this time, is named "Linda" (hereinafter "Security Guard Linda").

49.     Sebastian asked Security Guard Linda what his brother had done wrong.

50.     Security Guard Linda began to yell at Sebastian, telling him to go away or else they would arrest him.

51.     Sebastian told Security Guard Linda that he was doing nothing wrong.

52.     Security Guard Linda then took the Coke soda bottle from Sebastian's hand and threw it on the ground.

53.     Then, Security Guard Linda and another security guard grabbed Sebastian and handcuffed him.

54.     Upon information and belief, the Defendant Security Guard who assisted Security Guard Linda with handcuffing Sebastian is named "Kevin."

55.     The handcuffs covered Sebastian's wrist watch and pressed it into his skin.

56.     Defendant Security Guards then removed Jason's props, which were plastic knives and swords, from his person.

57.     Defendant Security Guards then took Plaintiffs into the Venetian Hotel and into a security office.

58.     At that time, one Defendant Security Guard told another to remove Jason's hat and mask, and that Defendant Security Guard did so.

59.   Throughout this, Jason continued to tell Defendant Security Guards that he had done nothing wrong and stated that he had constitutional rights.

60.   One Defendant Security Guard told another Defendant Security Guard that the handcuffs on Sebastian had been placed on him incorrectly.

61.   Defendant Security Guards then searched Plaintiffs, pulling possessions out of Jason's bag, asking Plaintiffs for identification, and taking personal effects from their pockets.

62.   At this time, Sebastian asked a Defendant Security Guard to remove his wrist watch, and the guard did so.

63.   Sebastian had a deep mark on his wrist where the watch had been pressed into the skin.

64.   In response to the requests by Defendant Security Guards that he provide identification, Jason refused to provide identification and demanded to see a police officer and an attorney.

65.   In response to the requests by Defendant Security Guards that he provide identification, Sebastian provided his temporary driver's license.

66.   Defendant Security Guards then moved Plaintiffs into a small room with a video camera and a sound recorder.

67.   Defendant Security Guards then stood Plaintiffs in front of a wall and took their pictures.

68.   At this point, Jason remained handcuffed.

69.   Defendant Security Guards then sat Plaintiffs in chairs and strapped them to the chairs with seatbelts.

70.     Sebastian was strapped to the chair for approximately ten minutes before being moved by Defendant Security Guards to another room.

71.     Sebastian was left in the second room for approximately thirty to forty minutes.

72.     Jason was kept handcuffed, strapped to a chair, in a room for approximately one hour.

73.     Throughout this time, Defendant Security Guards continued to tell Plaintiffs that they were trespassing.

74.     When Sebastian requested his temporary driver's license be returned, a Defendant Security Guard told him that it was not a valid identification and asked him for his social security number.

75.     A Defendant Security Guard began reading something to Sebastian and he asked them to read slowly, informing them that he did not understand English very well.   The Defendant Security Guard continued to read, only more slowly, and it sounded like "law" to Sebastian.

76.     Approximately an hour after Defendant Security Guards arrested Plaintiffs, two Metro officers arrived.

77.     Upon information and belief, Defendants Metro Officers are named "T. Scott" and "S. Schaier."

78.     Officer Schaier asked Sebastian to stand up and then patted down his clothes, telling him not to move.

79.     Officer Schaier then removed the security handcuffs from Sebastian and placed his own handcuffs on him.  Officer Schaier also removed the security handcuffs from Jason and placed his own on him.

80.     Officer Schaier then asked Sebastian if he had any scars or tattoos, and asked for his name and social security number.

81.     Sebastian then responded that he does not speak English very well, so Officer Schaier asked the questions more slowly.

82.     Jason heard a Defendant Security Guard tell Defendant Metro Officers that Jason was acting aggressively.

83.     Jason denied this to the officers and explained what had happened.

84.     Officer Scott then told Jason that they were not arresting Plaintiffs, but that because Plaintiffs had trespassed on private property they were going to give them a "warning."

85.     Officer Schaier asked Jason if he could search him.

86.     Jason consented to the search but told Officer Schaier that the Security Guards had searched him without asking for consent.

87.     Officer Schaier told Jason that the Security Guards could do whatever they wanted because Plaintiffs were on private property.

88.     Defendant Metro Officers then presented Sebastian with a misdemeanor trespass warning and told him that it is was not a ticket and that he had to sign it.

89.     Jason was at that time in another room, but saw the piece of paper presented to his brother, Sebastian.

90.     Jason began yelling from the other room for his brother not to sign the piece of paper.

91.     After approximately five minutes, Sebastian signed the misdemeanor trespass warning.

92.     Defendant Metro Officers then attempted to have Jason sign a misdemeanor warning.

93.     Jason refused to sign the document, explaining that he did not want to sign it because he had not been trespassing.

94.     Officer Schaier then told Jason that if he didn't sign the document they would take him to jail and he would have to talk to a judge.

95.     Officer Scott then summoned Officer Schaier away from Jason and they spoke privately.

96.     When Defendant Metro Officers returned, they removed the handcuffs from Jason and told him to put his hands on his head.

97.     Plaintiffs were the given back their seized property.

98.     Three Defendant Security Guards then walked Plaintiffs out the back of Harrah's Casino.

99.     Upon information and belief, these three Defendant Security Guards were named "Kevin," "Eli," and "Paul."

100.    Defendant Security Guards informed Plaintiffs that if they passed in front of the Venetian again they would arrest them.

101.    Plaintiffs asked if they could use the sidewalks to pass.

102.    The security guards then said that Plaintiffs could use the sidewalk to leave, but they must leave quickly, and told them that the security guards would arrest them if they stopped.

103.    Jason has back and shoulder problems.

104.    After having been handcuffed with his hands behind his back for over an hour, Jason's right shoulder hurt and he could not use his right arm for three days.

105.    Jason's back was also hurt from the experience of sitting handcuffed and strapped to a chair for an hour.

106.    An hour after the removal of his wrist watch from under the handcuffs, Sebastian still had marks on his wrist where the watch was pressed into the skin.

107.    Plaintiffs were both traumatized by the incident.

108.    Plaintiffs both experienced emotional distress injuries from the incident.

109.    Plaintiffs are both afraid to go back to the sidewalk in front of the Venetian and perform.

110.    Upon information and belief, at that time, neither Defendant Metro Officer attempted to confirm whether Plaintiffs had in fact committed a misdemeanor trespass.

111.    Upon information and belief, at that time, neither Defendant Metro Officer made a probable cause determination as to whether Plaintiffs had committed a crime.

112.    Defendant Security Guards sought assistance and affirmation, and cooperated with Defendant Metro Officers in the detention and search of Plaintiffs.

113.    Upon information and belief, Venetian security personnel have a policy and practice of asserting that the sidewalk in front of the Venetian is not a public forum and that the Venetian and its employees may detain individuals engaged in protected expression on the public forum sidewalks.

114.    Upon information and belief, Venetian security personnel have a policy and practice of arresting, detaining, searching, ejecting, and excluding individuals from the public forum sidewalk in front of the Venetian.

115.    Upon information and belief, Venetian security personnel have a policy and practice of soliciting the approval and assistance of Metro in both asserting that the sidewalk in

front of the Venetian is not a public forum and in affirming their practice of arresting, detaining, searching, ejecting, and excluding people from the public forum sidewalk in front of the Venetian.

116.    Upon information and belief, Metro has a policy and practice of encouraging and assisting the Venetian in its false claims that the sidewalk in front of the Venetian is not a public forum, and that it can detain individuals engaged in protected expression on the public forum sidewalks.

117.    Upon information and belief, Metro has a policy and practice of accepting the assertions of casino security personnel with respect to alleged trespassers, without making independent determinations as to whether a crime has, in fact, been committed.

118.    Upon information and belief, Defendant Sheriff Gillespie has failed to instruct or implement policies designed to protect against constitutional violations by officers, such as those committed by Defendants Metro Officers Scott and Schaier against Plaintiffs.

119.    Upon information and belief, Defendant the Venetian has failed to implement policies and procedures designed to prevent wrongful acts by its employees such as those committed by Defendant Security Guards against Plaintiffs.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES UNDER 42 U.S.C. § 1983
### (RIGHT TO FREE SPEECH AND EXPRESSION)
### (Against All Defendants)

120.    Plaintiffs incorporate paragraphs 1 through 119 of this Complaint as if fully set forth in this section.

121.   Defendants acted under color of law, and their actions violated Plaintiffs' rights to freedom of speech and expression as guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.  Defendants falsely asserted that the sidewalk in front of the Venetian is not a public forum and subjected Plaintiffs to private property rules of conduct and laws governing private property, despite the fact that the sidewalks abutting the Strip and in front of the Venetian Hotel are a public forum.

122.   Defendants' actions of detaining and citing Plaintiffs violated Plaintiffs' rights to freedom of speech and expression as guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

123.   Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to officer interactions with casino security personnel, and ensuring that officers were aware of the relevant law with respect to public and private property, and Defendants Metro and Sheriff Gillespie failed to do so.

124.   Defendant the Venetian is liable because at all relevant times it was responsible for making and enforcing policies with respect to the actions of Venetian security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the Venetian's property, and Defendant the Venetian failed to do so.

125.   As a direct and proximate result of Defendants' violations of the First Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant Metro and Defendant the Venetian, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

SECOND CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES
UNDER 42 U.S.C. § 1983
(RIGHT TO BE FREE FROM UNLAWFUL ARREST)
(Against All Defendants)

126. Plaintiffs incorporate paragraphs 1 through 125 of this Complaint as if fully set forth in this section.

127. Defendants acted under color of law, and their actions violated Plaintiffs' rights to be free from unlawful arrest as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution. Plaintiffs were wrongfully arrested and detained by Defendant Security Guards who claimed legal authority to do so, as well as sought and received approval and assistance from Defendant Metro in doing so. Further, Defendant Metro Officers arrested, detained, and cited Plaintiffs for trespass on private property, when Plaintiffs were on a public forum sidewalk, while Plaintiff Jason was engaged in protected expression.

128. Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to officers arresting and/or citing for actual violations of the law, and failed to do so.

129. Defendant the Venetian is liable because at all relevant times it was responsible for making and enforcing policies with respect to the actions of Venetian security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the Venetian's property, as well as their authority to detain individuals, and Defendant the Venetian failed to make and enforce such policies.

130. As a direct and proximate result of Defendants' violations of the Fourth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against

Defendant Metro and Defendant the Venetian, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

THIRD CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES
UNDER 42 U.S.C. § 1983
(RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE)
(Against All Defendants)

131.    Plaintiffs incorporate paragraphs 1 through 130 of this Complaint as if fully set forth in this section.

132.    Defendants acted under color of law, and violated Plaintiffs' rights to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.   Defendant Security Guards searched the persons and possessions of Plaintiffs claiming legal authority to do so, and sought and received the approval and assistance of Defendant Metro in doing so.   Defendant Metro Officers frisked and patted down Plaintiffs without reasonable belief that Plaintiffs committed a crime.

133.    Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to requests for assistance by casino security personnel and ensuring that officers only aid or affirm actions of casino security personnel when they act legally, and Defendants Metro and Sheriff Gillespie failed to make and enforce such policies.   Moreover, Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to Defendant Metro Officers' execution of frisks and searches and ensuring that such searches are conducted within the parameters of the law, and Defendants Metro and Gillespie failed to do so.

134.   Defendant the Venetian is liable because at all relevant times it was responsible for making and enforcing policies with respect to the actions of Venetian security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the Venetian's property, as well as their authority to search individuals and seize individuals' property, and Defendant the Venetian failed to do so.

135.   As a direct and proximate result of Defendants' violations of the Fourth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant Metro and Defendant the Venetian, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

FOURTH CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES
UNDER 42 U.S.C. § 1983
(RIGHT TO BE FREE FROM UNLAWFUL DETENTION)
(Against the Venetian and Defendant
Security Guards, as Individuals)

136.   Plaintiffs incorporate paragraphs 1 through 135 of this Complaint as if fully set forth in this section.

137.   Defendant the Venetian and Defendant Security Guards acted under color of law, and violated Plaintiffs' rights to be free from unlawful detention as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.   Defendant Security Guards seized and subsequently detained Plaintiffs for several hours claiming legal authority to do so, and sought and received the approval and assistance of Metro in doing so.

138.    Defendant Security Guards' actions in detaining Plaintiffs were unreasonable and violated their rights to be free from unlawful detention as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.

139.    Defendant the Venetian is liable because at all relevant times it was responsible for making and enforcing policies with respect to the actions of Venetian security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the Venetian's property, as well as their authority to seize and detain individuals, and Defendant the Venetian failed to do so.

140.    As a direct and proximate result of Defendants' violations of the Fourth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant the Venetian and their employees and agents; attorney's fees and costs from Defendant Security Guards and Defendant the Venetian, and monetary, compensatory and punitive damages from these defendants.

## FIFTH CAUSE OF ACTION
### CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS
### UNDER 42 U.S.C. § 1983
### (Against All Defendants)

141.    Plaintiffs incorporate paragraphs 1 through 140 of this Complaint as if fully set forth in this section.

142.    Defendants acted under color of law, and Defendants engaged in a civil conspiracy to violate Plaintiffs' civil rights to freedom of speech, movement, and rights to be free from unlawful arrest and unreasonable search and seizure, as well as to violate Plaintiffs' due process rights.

143.    Upon information and belief, Defendant Metro routinely responds to calls from private security forces employed by Defendant the Venetian, and routinely fails to make an independent determination of probable cause to arrest. Upon information and belief, Defendants Metro and the Venetian have an understanding and meeting of the minds that the Venetian security personnel may regulate free speech activity on public forum sidewalks contrary to law and otherwise unlawfully expel individuals from sidewalks designated as a public forum for freedom of expression purposes, and that Metro will respond by arresting or citing those individuals detained by the Venetian security officers, without making an independent determination of probable cause, which deprives individuals of their constitutional rights.

144.    Defendants Metro and Sheriff Gillespie are liable because they have instituted policies, practices, or customs that permit the Venetian and its employees to unlawfully expel or detain individuals engaged in protected activity on public forum sidewalks, and that require or permit its officers to respond with arrest or citation pursuant to such detention. Furthermore, Defendants Metro and Sheriff Gillespie at all relevant times were responsible for making and enforcing policies ensuring that Defendant Metro Officers make an independent determination of probable cause prior to arrest or citation. However, upon information and belief, Defendants engaged in an understanding that such independent determination was not required pursuant to a detention by security personnel for the Venetian, which deprived individuals of their constitutional rights.

145.    Defendant the Venetian is liable because, contrary to federal court decisions by which it is bound, it has instituted practices, policies or procedures that require or permit its security personnel to unlawfully expel or detain individuals engaged in protected activity on public forum sidewalks. Defendant the Venetian, upon information and belief, has engaged in an

understanding or meeting of the minds with Defendants Metro that the Venetian security personnel may regulate free speech activity on public forum sidewalks contrary to law and otherwise unlawfully expel individuals from sidewalks designated as a public forum for freedom of expression purposes, and that Metro will respond by arresting or citing those individuals detained by the Venetian security, without making an independent determination of probable cause, which deprive individuals of their constitutional rights.

146.     As a direct and proximate result of Defendants' civil conspiracy to violate Plaintiffs' civil rights, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant Metro and Defendant the Venetian, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

SIXTH CAUSE OF ACTION
VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE
UNITED STATES
UNDER 42 U.S.C. § 1983
(SUBSTANTIVE DUE PROCESS)
(Against All Defendants)

147.     Plaintiffs incorporate paragraphs 1 through 146 of this Complaint as if fully set forth in this section.

148.     Defendants acted under color of law, and violated Plaintiffs' substantive due process rights to liberty and free movement as guaranteed by the Fourteenth Amendment of the U.S. Constitution.  Defendant Security Guards' detention of Plaintiffs with the assistance and approval of Defendant Metro, and Metro's continued detention of Plaintiffs violated their rights to liberty and freedom of movement and locomotion.

149. Defendants' actions were in violation and flagrant disregard of established law as set out in Nevada District Court and Ninth Circuit Appellate Court decisions, in which the same defendants were even named parties, which is outrageous and shocks the conscience.

150. Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to requests for assistance by casino security personnel, and ensuring that officers only aid or affirm actions of casino security personnel when they act legally. Furthermore, Defendants Metro and Sheriff Gillespie at all times relevant were responsible for making and enforcing policies ensuring that Defendant Metro Officers do not violate the substantive due process rights of individuals. Defendants Metro and Sheriff Gillespie failed to make and enforce such policies.

151. Defendant the Venetian is liable because at all relevant times it was responsible for making and enforcing policies with respect to the actions of Venetian security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the Venetian's property, as well as their authority to deprive individuals of their liberty and freedom of movement, and Defendant the Venetian failed to do so.

152. As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant Metro and Defendant the Venetian, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

SEVENTH CAUSE OF ACTION
VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTIONS OF THE
UNITED STATES
UNDER 42 U.S.C. § 1983
(PROCEDURAL DUE PROCESS)
(Against Metro, Sheriff Gillespie and
Defendant Metro Officers)

153. Plaintiffs incorporate paragraphs 1 through 152 of this Complaint as if fully set forth in this section.

154. Defendants Metro and Metro Officers acted under color of law, and violated Plaintiffs' rights to be free from deprivation of their rights under the U.S. Constitution without due process of law. Defendant Metro Officers impinged on Plaintiffs' interests in moving freely on public forum sidewalks without the threat of criminal trespass citations by issuing misdemeanor citation warnings for use of public forum sidewalks and improperly enforcing the Venetian's claims of privilege to evict people from public forum sidewalks, and in doing so Defendants Metro and Metro Officers deprived Plaintiffs of their procedural due process rights ensured by the Fourteenth Amendment to the U.S. Constitution.

155. Defendant Metro's policy and practice of enforcing claims by casinos on the Strip against individuals, such as Plaintiffs, risks, and does cause, wrongful deprivation of individuals' liberty interests in using the public forum sidewalks on the Strip.

156. Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies with respect to requests for assistance by casino security personnel and ensuring that officers only aid or affirm actions of casino security personnel when they act legally, and Defendants Metro and Sheriff Gillespie failed to make and enforce such policies. Further, Defendants Metro and Sheriff Gillespie are liable because at all relevant times they were responsible for making and enforcing policies ensuring

that Defendant Metro Officers do not issue misdemeanor citations where they have no legal basis for doing so.

157.    As a direct and proximate result of Defendant Metro, Defendant Sheriff Gillespie, and Defendants Metro Officers' violations of the Fourth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to: injunctive and declaratory relief against Defendant Metro; attorney's fees and costs from these defendants, and monetary, compensatory, and punitive damages from these defendants.

EIGHT CAUSE OF ACTION
FALSE IMPRISONMENT UNDER N.R.S. 41.130
(Against the Venetian and Defendant
Security Guards, as Individuals)

158.    Plaintiffs incorporate paragraphs 1 through 157 of this Complaint as if fully set forth in this section.

159.    Defendant Security Guards each intended to and confined Plaintiffs within the Venetian Hotel, their actions resulted in Plaintiffs being so detained, and Plaintiffs were both aware of and harmed by the confinement.

160.    Defendant the Venetian is liable because Defendant Security Guards were at all relevant times in the employ of the Venetian and the Venetian is responsible for Defendant Security Guards' conduct. Defendant Security Guards were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable where the Venetian maintained a policy that its employees could detain individuals engaged in lawful, protected activity on public forum sidewalks.

161.    As a direct and proximate result of Defendants' false imprisonment of Plaintiffs, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject

to proof and, pursuant to N.R.S. 41.140, Plaintiffs are entitled to: actual and foreseeable monetary damages from Defendant Security Guards and Defendant the Venetian; and attorney's fees and costs from these defendants.

### NINTH CAUSE OF ACTION
### BATTERY UNDER N.R.S. 41.130
### (Against the Venetian and Defendant
### Security Guards, as Individuals)

162.    Plaintiffs incorporate paragraphs 1 through 161 of this Complaint as if fully set forth in this section.

163.    Defendant Security Guards each intentionally used physical force upon Plaintiffs by grabbing, handcuffing, physically moving, and strapping Plaintiffs to chairs. Defendant Security Guards did so in a harmful and offensive manner, all without the consent and against the will of Plaintiffs.

164.    Those Defendant Security Guards who did not actually use physical force on Plaintiffs are liable for encouraging, aiding and abetting other Security Guards in their battery of Plaintiffs.

165.    Defendant the Venetian is liable because Defendant Security Guards were at all relevant times in the employ of the Venetian and the Venetian is responsible for Defendant Security Guards' conduct. Defendant Security Guards were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable where the Venetian maintained a policy that public forum sidewalks were not a public forum.

166.    As a direct and proximate result of Defendants' battery of Plaintiffs, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof and, pursuant to N.R.S. 41.130, Plaintiffs are entitled to compensatory damages from Defendant

Security Guards and Defendant the Venetian; and attorney's fees and costs from these defendants.

## TENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### UNDER N.R.S. 41.130
(Against the Venetian and Defendant
Security Guards, as Individuals)

167.    Plaintiffs incorporate paragraphs 1 through 166 of this Complaint as if fully set forth in this section.

168.    Defendant Security Guards intentionally caused Plaintiffs to suffer severe emotional distress by their outrageous conduct of harassing, detaining, searching, and threatening Plaintiffs.   Defendant Security Guards conducted themselves with reckless disregard for inflicting emotional distress on Plaintiffs.

169.    Defendant the Venetian is liable because Defendant Security Guards were at all relevant times in the employ of the Venetian and the Venetian is responsible for Defendant Security Guards' conduct.  Defendant Security Guards were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable where the Venetian maintained a policy that public forum sidewalks were not a public forum.

170.    As a direct and proximate result of Defendants' infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof and, pursuant to N.R.S. 41.130, Plaintiffs are entitled to compensatory damages from Defendant Security Guards and Defendant the Venetian; and attorney's fees and costs from these defendants.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UNDER N.R.S. 41.130
### (Against the Venetian and Defendant
### Security Guards, as Individuals)

171.    Plaintiffs incorporate paragraphs 1 through 170 of this Complaint as if fully set forth in this section.

172.    Defendants owed Plaintiffs a duty not to detain, assault, batter, or unlawfully imprison them, as individuals engaged in lawful, protected activity on property owned by Defendant the Venetian, and breached same.

173.    Defendants' breach of this duty inflicted severe emotional distress upon Plaintiffs.

174.    Defendants' breach of this duty inflicted physical injury upon Plaintiffs.

175.    Defendant the Venetian is liable because Defendant Security Guards were at all relevant times in the employ of the Venetian and the Venetian is responsible for Defendant Security Guards' conduct. Defendant Security Guards were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable where the Venetian maintained a policy that public forum sidewalks were not a public forum.

176.    As a direct and proximate result of Defendants' infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof and, pursuant to N.R.S. 41.130, Plaintiffs are entitled to compensatory damages from Defendant Security Guards and Defendant the Venetian; and attorney's fees and costs from these defendants.

## TWELFTH CAUSE OF ACTION
## NEGLIGENT TRAINING, SUPERVISION, AND RETENTION
## UNDER N.R.S. 41.130
## (Against the Venetian Only)

177.     Plaintiffs incorporate paragraphs 1 through 176 of this Complaint as if fully set forth in this section.

178.     Defendant the Venetian owed Plaintiffs a duty to use reasonable care in the training, supervision, and retention of their employees to make sure that the employees are fit for their positions by implementing policies and procedures designed to prevent wrongful acts by its employees, such as those committed by Defendant Security Guards against Plaintiffs, and breached the same.

179.     Defendant the Venetian's breach of this duty caused Plaintiffs to suffer severe emotional distress.

180.     Defendant the Venetian's breach of this duty caused Plaintiffs to suffer physical injury.

181.     Defendant the Venetian is liable because Defendant Security Guards were at all relevant times in the employ of the Venetian and the Venetian is responsible for Defendant Security Guards' conduct. Defendant Security Guards were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable considering the nature and scope of their employment as security personnel where the Venetian maintained a policy that public forum sidewalks were not a public forum.

182.     As a direct and proximate result of Defendant the Venetian's negligent training, supervision and retention of Defendant Security Guards, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof and, pursuant to N.R.S.

41.130, Plaintiffs are entitled to compensatory damages from Defendant the Venetian; and attorney's fees and costs from this defendant.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek judgment as follows:

a.    A declaration that Defendant the Venetian's policies and practices of regulating, ejecting, or detaining individuals engaged in lawful, protected activity on public forum sidewalks is unlawful and that the harassment, arrest, detainment, search, and other unlawful treatment of Plaintiffs based upon their being on public forum sidewalks violated their rights to free speech and expression under the free speech clause of the First Amendment to the U.S. Constitution, right to be free from unlawful arrest under the Fourth Amendment to the U.S. Constitution, rights to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution, right to be free from unlawful detention under the Fourth Amendment of the U.S. Constitution, substantive due process rights to freedom of movement and liberty under the Fourteenth Amendment to the U.S. Constitution;

b.    A declaration that Defendant Metro and Defendant Sheriff Gillespie's failure to make or enforce policies and practices with respect to wrongful actions of Defendant the Venetian and personnel in regulating, ejecting or detaining individuals engaged in lawful, protected activity on public forum sidewalks is unlawful and that the harassment, arrest, detainment, search, and other unlawful treatment of Plaintiffs, including issuance of, and attempts to issue, misdemeanor citations based upon their being on public forum sidewalks violated their rights to free speech and expression under the free speech clause of the First Amendment to the U.S. Constitution, right to be free from unlawful arrest under the Fourth Amendment to the U.S. Constitution, rights to be free from unreasonable searches and seizures

under the Fourth Amendment to the U.S. Constitution, substantive due process rights to freedom of movement and liberty under the Fourteenth Amendment to the U.S. Constitution, and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution;

c.     A permanent injunction preventing Defendants and their employees and agents from violating the constitutional civil rights of individuals based upon the false assertion that Defendants may regulate, eject, detain, cite, arrest, or otherwise interfere with individuals engaged in lawful, protected activity on public forum sidewalks;

d.     A permanent injunction preventing Defendant Metro from further engaging in a policy and practice of issuing citations and making arrests based on the mere assertions of casino security personnel;

e.     Damages and punitive damages to be determined at the time of trial;

f.     An award of attorney's fees and expenses under 42 U.S.C. § 1988(b); and,

g.     Any further relief the Court deems appropriate.

## VII.     DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action.

RESPECTFULLY SUBMITTED this 10th day of June, 2010.


/s/ Margaret A. McLetchie
Margaret McLetchie, Esq.
Staff Attorney, ACLU of Nevada
Nev. Bar. No. 10931
732 So. Sixth Street, Suite 200A
Las Vegas, Nevada 89101

Attorney for Plaintiffs

JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jason A. Perez-Morciglio and Sebastian Perez-Morciglio,

**(b)** County of Residence of First Listed Plaintiff   Clark
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
ACLU of Nevada, 732 S. 6th St., Ste. 200A, Las Vegas Nevada 89101;702-366-9109

## DEFENDANTS

Las Vegas Metropolitan Police Department; Sheriff Douglas Gillespie (individually and in his official capacity as Sheriff of ☐

County of Residence of First Listed Defendant   Clark
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Sect. 1983

Brief description of cause:
Violation of Plaintiff's rights under the First, Fourth and Fourteenth Amendment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____  DOCKET NUMBER _____

DATE  06/10/2010

SIGNATURE OF ATTORNEY OF RECORD
/s/ Margaret A. McLetchie

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____