Allen Lichtenstein, Bar No. 3992
lichtenstein@aclunv.org
Margaret A. McLetchie, Bar No. 10931
mcletchie@aclunv.org
ACLU OF NEVADA
601 South Rancho Dr. Suite B-11
Las Vegas, NV 89106

Attorneys for Plaintiffs
Jason and Sebastian Perez-Morciglio

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jason A. Perez-Morciglio and Sebastian Perez-Morciglio,<br><br>       Plaintiffs,<br><br>   vs.<br><br>Las Vegas Metropolitan Police Department; Sheriff Douglas Gillespie (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); Las Vegas Metropolitan Police Department Officers T. Scott and S. Schaier, Sergeant Bell (in their individual capacities); Las Vegas Sands Corp., a Nevada Corporation; Venetian Casino Resort, LLC, a Nevada Limited Liability Company; Venetian Security Guard Eli Castro; Venetian Security Guard Linda Hagenmaier; Venetian Security Guard Ron Hicks; Venetian Security Guard William Lovegren; Venetian Security Guard Anthony Bronson; and Venetian Security Guard Kevin Neanover; Venetian Security Guard Kim Gorman; Venetian Security Guard Paul Tanner; and Executive Director of Security Tony Whiddon,<br><br>       Defendants. | Case No.:    2:10-CV-00899-PMP-RJJ<br><br><br><br>**PLAINTIFFS' MOTION TO COMPEL VENETIAN DEFENDANTS TO CERTIFY THEIR PRODUCTION AND FOR EVIDENTIARY SANCTIONS** |

## I. INTRODUCTION

According to deposition testimony, not a single Venetian employee defendant recalls ever being notified that they should retain documents – despite the fact that a freeze letter was sent on March 2, 2010. Even worse, some of the security officer defendants were never asked to search for responsive documents at all. One witness who actually did search for documents testified that he searched only recently. While counsel for the Venetian defendants claims that some witnesses – the security officers – would not have had documents anyway, that assumption cannot justify a failure to even ask and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, despite multiple requests from Plaintiffs' counsel hoping to get an explanation for the alarming deposition testimony, counsel for the Venetian defendants has not provided *any* definitive detail regarding exactly which custodians were searched, whether and when the freeze letter was circulated, or what types of documents were searched for. Plaintiffs thus respectfully request this Court to mandate the Venetian defendants to provide that information. In addition, given the testimony supporting the conclusion that the freeze letter was never circulated, Plaintiffs also respectfully request sanctions.

## II. STATEMENT OF FACTS AND MEET-AND-CONFER STATEMENT

### A. Litigation Freeze Letter

The incident giving rise to this lawsuit occurred on January 15, 2010. Plaintiffs sent Defendant Las Vegas Sands ("LVS")[1] a litigation freeze letter on March 2, 2010, putting LVS on notice of possible litigation, and thus triggering its duty to preserve potentially discoverable material. The letter explained, in detail, the January 15th incident, along with what types of documents needed to be preserved, including but not limited to emails and calendar items.

### B. Plaintiffs' Discovery Requests, and Revelations in Depositions About the Failure to Communicate Freeze Letter and Failures to Search for Responsive Documents.

After Plaintiffs submitted their First Requests for Production to LVS, Decl. of Margaret McLetchie ¶ 3, Plaintiffs learned during the initial depositions of Venetian security officers that they had not been asked to search for responsive documents. Hagenmaier Dep. 21:3-15, Ex. 7; Lovegren Dep. 41:21-23, Ex. 8. Plaintiffs also noticed that documents mentioned during those depositions, including the text of a trespass warning and Defendant William Lovegren's notebook, had not been produced.

Plaintiffs raised concerns in a March 2, 2011 meet and confer letter raised concerns and formally requested that LVS "provide information regarding the search for documents" conducted. Ex. 4.

Counsel for LVS responded by letter on March 8, 2011, in which counsel agreed to conduct a search of email accounts and stated, without specificity, that custodians were identified and asked to conduct searches, and that responsive documents were produced. Ex. 5.

---

[1] While the freeze letter was sent to "Las Vegas Sands," "LVS" hereafter refers to Las Vegas Sands Corp., a Nevada Corporation and Venetian Casino Resort, LLC, the properly named corporate entity defendants.

Subsequently, Plaintiffs' counsel, Margaret McLetchie, met and conferred with counsel for LVS, Robert Hernquist, by telephone, on approximately March 14, 2011, and again requested information regarding searches conducted, including which of LVS's custodians and sources were searched and when those searches were performed.

Additional witnesses testified that they had not searched for responsive documents, Castro Dep. 48:17-49:1, Ex. 9, or that they had only been asked to search for documents at a late date.  Tanner Dep. 39:24-40:25, Ex. 10; Bronson Dep. 31:1-4, 33:23-34:3, Ex. 11 (asked to search for documents only a month before his deposition); Whiddon Dep. 29:15-16, 31:17-19, Ex. 12.  Witnesses also testified that they had not received a copy of or even heard of the freeze letter asking LVS to retain documents.  Hagenmaier Dep. 155:9-15, 21:3-15, Ex. 7; Castro Dep. 177:11-22, Ex. 9; Bronson Dep. 33:11-19, Ex. 11.  Indeed, even LVS's head of security, Tony Whiddon, was not sure whether he ever saw the freeze letter.  Whiddon Dep. 38:3-6, Ex. 12.  Finally, no notebooks were produced from the security officers involved in the January 15, 2010 incident, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**C. Plaintiffs' Further Attempts to Obtain Explanation of LVS's Searches and Steps to Communicate the Freeze Letter.**

Plaintiffs' counsel has repeatedly asked for (1) a list of LVS custodians and sources that have been searched; (2) information regarding when those searches were conducted and which

---

[2] While security officers stated that they did not take notes regarding the incident, ███████████████████████████████████████████

types of documents were searched for; and (3) information that would assuage Plaintiffs' concerns that the freeze letter was not circulated or heeded. *See* Decl. of Margaret A. McLetchie, ¶¶ 11-15.

On March 2, 2011, Plaintiffs' counsel wrote to counsel for Las Vegas Sands regarding outstanding discovery issues. (McLetchie Decl. at ¶ 6). In that letter, Plaintiffs' counsel indicated that in depositions, Venetian Security guards testified they had not been asked to search for responsive documents to Plaintiffs' Requests for Productions sent on January 5 and March 2 of 2011. (McLetchie Decl. at ¶ 6). In that same letter, Plaintiffs' counsel formally requested that Las Vegas Sands provide information regarding the search for documents requested. (McLetchie Decl. at ¶ 6). Counsel for Las Vegas Sands responded by letter on March 8, 2011, stating that custodians had been identified and asked to conduct searches for responsive documents. (McLetchie Decl. at ¶ 7).

Plaintiffs' counsel subsequently contacted counsel for Las Vegas Sands telephonically on March 14, 2011, requesting that information regarding searches conducted for responsive documents be produced. (McLetchie Decl. at ¶ 8). Plaintiffs' counsel followed that telephone call with an email the same day detailing a list of Plaintiffs' outstanding concerns regarding Las Vegas Sands' production and the fact that numerous witnesses testified they had not been instructed to search for responsive documents. (McLetchie Decl. at ¶ 11). Further emails and telephone calls regarding this issue proved unsuccessful in resolving Plaintiffs' issue with Las Vegas Sands' failure to produce documents showing that Plaintiffs' litigation freeze letter was actually disseminated to relevant employees, and that all Defendants conducted proper searches. (McLetchie Decl. at ¶¶ 12-15). Thus the present Motion to Compel has become necessary in

order to ensure that documents responsive to Plaintiffs' Requests for Production have been properly searched for and have not been destroyed in anticipation of litigation.

LVS has failed to adequately respond to these requests. On May 5, 2011, Plaintiffs' counsel wrote a detailed letter to Mr. Hernquist requesting the missing information and requesting a response no later than 3 p.m. on Friday, May 6, 2011. No response has been received.

**III. ARGUMENT**

**A. Plaintiffs Have Not Received Critical Information Regarding Communication of Their Litigation Freeze Letter or Defendants' Searches, Which would allow Plaintiffs to Properly Evaluate Defendants' Production.**

Plaintiffs have yet to receive a full and formal explanation of (1) which of LVS's custodians and sources were searched; (2) what types of documents were searched for; and (3) when those searches were performed. Thus, Plaintiffs respectfully request this Court to order LVS to provide a certification regarding its production to address these concerns.

The District of Nevada has ordered evasive parties to give such explanations before. *See, e.g.*, *Powell v. Texvans, Inc.*, No. 2:09-CV-01079, 2011 WL 1099120, at *7 (D. Nev. Mar. 22, 2011) ("The Court also ordered Plaintiffs' counsel to file an affidavit describing the search [for responsive records] and providing a certification that Plaintiffs had produced all [such] records in their possession, custody and control."). Other federal courts have as well. *See, e.g.*, *Melendres v. Arpaio*, 2010 WL 582189 at *9 (D. Ariz. 2010) (ordering Defendants to give Plaintiffs (1) a description, under oath, of the steps Defendants took to find responsive evidence and (2) "any evidence relating to the scope of [Defendants'] litigation hold," and any documents retained pursuant to that hold).

The testimony of LVS employees, whom are also defendants in this action, has raised dire questions regarding both whether the freeze letter was ever circulated and whether proper

searches were conducted. As noted above, not a single employee recalled ever seeing a copy of the freeze letter. Hagenmaier Dep. 155:9-15, 21:3-15, Ex. 7; Castro Dep. 177:11-22, Ex. 9; Bronson Dep. 33:11-19, Ex. 11. Indeed, even LVS's head of security, Tony Whiddon, was not sure whether he ever saw the freeze letter. Whiddon Dep. 38:3-6, Ex. 12.

Plaintiffs urge this Court to order Defendants to provide an explanation of the three points mentioned above. Understanding those issues would enable Plaintiffs to properly evaluate the sufficiency of Defendants' production and of their efforts to comply with discovery.

### B. LVS Should Be Sanctioned For Failing to Notify its Employees of Plaintiffs' Litigation Freeze Letter to Ensure Evidence Retention.

A court has inherent authority to impose sanctions based on a party's failure to preserve relevant evidence. A party may be sanctioned if he or she had some notice that the discarded evidence was potentially relevant to pending or reasonably foreseeable litigation. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009). The failure to preserve need not have been in bad faith for a court to impose sanctions. *Powell v. Texvans, Inc.*, 2011 WL 1099120 at *3 (D. Nev. 2011); *see also Melendres v. Arpaio*, 2010 WL 582189 at *6 (D. Ariz. 2010) (finding that Maricopa County Sheriff's Office's failure to communicate litigation freeze letter to employees was "at a minimum, negligent," and therefore sufficient to justify sanctions).

LVS was given explicit notice of reasonably foreseeable litigation on March 2, 2010. However, the freeze letter sent on that date appears to have been ignored and not distributed, either negligently or deliberately. Not a single LVS witness that was asked – four witnesses, including the head of security and a security manager – recalled ever seeing a copy of the freeze letter. *See* Statement of Facts, Section I.B, *supra*. The failure of an organization to communicate a litigation freeze letter to its employees, or to adequately specify which

documents are subject to the hold, constitutes negligence, and is therefore sufficient in and of itself to justify evidentiary sanctions. *Melendres*, 2010 WL 582189 at *6.

LVS deserves sanctions for its failure to communicate Plaintiffs' litigation freeze letter. ▮▮▮▮▮ LVS may attempt to argue otherwise, but the Ninth Circuit has rejected relying on the assurances of those who have engaged in spoliation. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("[B]ecause the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents.") (citation and internal quotation marks omitted).

Sanctions that a court may impose for failure to preserve relevant evidence include: (1) making an adverse inference instruction to the jury about the contents of the documents destroyed; (2) excluding witness testimony offered by the party responsible for the failure to preserve; (3) dismissing the culpable party's claims; and (4) awarding fees or costs to the non-culpable litigant. *Powell*, 2011 WL 1099120 at *3; *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (discussing district court's "broad discretion" to issue monetary sanctions, including attorney's fees, for failure to preserve relevant evidence). Because relevant evidence was likely destroyed in this case, Plaintiffs request the sanction of an instruction to the jury that such evidence would have been harmful to the LVS Defendants. Barring that, Plaintiffs request monetary sanctions in the form of costs and attorneys' fees.

## IV. CONCLUSION

For all these reasons, the ACLU of Nevada respectfully requests that this Motion to Compel and Motion for Evidentiary Sanctions be granted.

Dated this 9th day of May, 2011,

ACLU OF NEVADA

\_\_/s/ Margaret A. McLetchie_____
Margaret A. McLetchie, Bar. No. 10931
Legal Director
ACLU OF NEVADA
601 South Rancho Drive Suite B-11
Las Vegas, NV 89106

*Attorney for Plaintiffs*
*Jason and Sebastian Perez-Morciglio*