Samuel S. Lionel, Nevada Bar No. 1766
*slionel@lionelsawyer.com*
David N. Frederick, Nevada Bar No. 1548
*dfrederick@lionelsawyer.com*
Robert Hernquist, Nevada Bar No. 10616
*rhernquist@lionelsawyer.com*
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 383-8888
Facsimile:  (702) 383-8845

*Attorneys for Defendants Las Vegas Sands*
*Corporation, Venetian Casino Resort, LLC,*
*Eli Castro, Linda Hagenmaier, William Lovegren,*
*Anthony Bronson, Kevin Neanover, Kim Gorman,*
*Paul Tanner and Tony Whiddon*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JASON A. PEREZ-MORCIGLIO and SEBASTIAN PEREZ-MORCIGLIO, | Case No. 2:10-cv-00899-PMP-(RJJ) |
| Plaintiffs, | |
| vs. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); LAS VEGAS METROPOLITAN POLICE DEPARTMENT OFFICERS T. SCOTT and S. SCHAIER (in their individual capacities); LAS VEGAS SANDS CORPORATION, a Nevada corporation; VENETIAN RESORT HOTEL & CASINO, LLC, a Nevada limited liability company; ELI CASTRO; LINDA HAGENMAIER; RON HICKS; WILLIAM LOVEGREN; ANTHONY BRONSON; KEVIN NEANOVER; KIM GORMAN; PAUL TANNER; and TONY WHIDDON | **DEFENDANTS LAS VEGAS SANDS CORP. VENETIAN CASINO RESORT, LLC, ELI CASTRO, LINDA HAGENMAIER, WILLIAM LOVEGREN, ANTHONY BRONSON, KEVIN NEANOVER, KIM GORMAN, PAUL TANNER AND TONY WHIDDON'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-1, Defendants Las Vegas Sands Corp. ("LVSC"), Venetian Casino Resort, LLC ("VCR"), Eli Castro, Linda Hagenmaier, William Lovegren, Anthony Bronson, Kevin Neanover, Kim Gorman, Paul Tanner and Tony Whiddon (individually, collectively and together with LVSC and VCR, singly and/or collectively "LVS") move the Court to enter summary judgment as follows:

a.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' First Cause of Action for violation of First and Fourteenth Amendments to the U.S. Constitution (free speech and expression);

b.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Second Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful arrest);

c.       Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Third Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unreasonable search and seizure);

d.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Fourth Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful detention);

e.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Fifth Cause of Action for civil conspiracy to violate civil rights;

f.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Sixth Cause of Action for violation of Fourteenth Amendment of the U.S. Constitution (substantive due process);

g.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Eighth Cause of Action for  false imprisonment;

h.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Ninth Cause of Action for battery;

i.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Tenth Cause of Action for intentional infliction of emotional distress;

j.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Eleventh Cause of

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   Action for negligent infliction of emotional distress; and

2           k.      Judgment against Plaintiffs and in favor of LVS on Plaintiffs' Twelfth Cause of

3   Action for negligent training, supervision and retention.

4           There is no genuine issue as to any material fact upon which these claims are based and

5   LVS is entitled to judgment as a matter of law. This motion is based upon the pleadings and papers

6   on file, the attached memorandum of points and authorities, the attached exhibits, and any oral

7   argument the Court may consider.

8                                   LIONEL SAWYER & COLLINS

9

10                          By:   /s/ Samuel S. Lionel
                                  Samuel S. Lionel, Bar No. 1766
                                  David N. Frederick, Bar No. 1548

11                                Robert W. Hernquist, Bar No. 10616

12                          *Attorneys for Defendants Las Vegas Sands*
                            *Corporation, Venetian Casino Resort, LLC,*

13                          *Eli Castro, Linda Hagenmaier, William Lovegren,*
                            *Anthony Bronson, Kevin Neanover, Kim Gorman,*

14                          *Paul Tanner and Tony Whiddon*

15

16                          **MEMORANDUM OF POINTS AND AUTHORITIES**

17  **I.      PRELIMINARY STATEMENT**

18          In this case, Plaintiffs Jason Perez-Morciglio ("Jason") and Sebastian Perez-Morciglio

19  ("Sebastian") assert various constitutional violations as well as tort claims against LVS based upon

20  events that occurred on the evening of January 15, 2010, on the sidewalk area between the

21  Venetian and Las Vegas Boulevard and in the LVS security office.  Jason, a self-proclaimed

22  "street performer", was dressed as the character Zorro and was observed soliciting sales of plastic

23  swords to tourists.  Jason was told he could not solicit, and was asked to leave.  Jason refused,

24  became argumentative and demanded that LVS call the police.  After Jason repeatedly refused to

25  leave the premises and was duly trespassed, he was taken into custody to await the arrival of

26  Metro.  While LVS security officers were addressing Jason, Sebastian charged the scene and

27  confronted the security officers.  Sebastian was perceived as a threat, refused to leave, and was

28  also taken into custody to await Metro.  Metro arrived at the Venetian's security office, spoke with

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

Plaintiffs and LVS security officers, and issued Plaintiffs a written warning.  They were not arrested.

Summary judgment on Plaintiffs' First Amendment claims is appropriate here because based on Plaintiffs' own sworn testimony, they were just "passing by" and were not performing. Additionally, the sale of plastic swords is not protected expressive conduct.  Summary judgment is also warranted on Plaintiffs' civil rights claims against the LVS defendants, because LVS is not a state actor and Plaintiffs are precluded from presenting traditional tort claims as constitutional violations.  Plaintiffs' tort claims are barred by a Nevada statute that allows hotel operators to remove trespassers.  Moreover, Plaintiffs' claims for intentional and negligent infliction of emotional distress fail as a matter of law because the actions by LVS were not extreme and outrageous, and also because Plaintiffs have not suffered severe or extreme mental injuries.

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiff's Fourth Amended Complaint (the "Complaint") contains twelve causes of action against LVS, VCR, the Las Vegas Metropolitan Police Department, Sheriff Douglas Gillespie, the Director of LVS's security department ("Metro"), eight LVS security officers and three Metro police officers. (Doc. No. 59).  The asserted claims are:

a.    Violation of First and Fourteenth Amendments to the U.S. Constitution (free speech and expression) [against all Defendants];

b.    Violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful arrest) [against all Defendants];

c.    Violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unreasonable search and seizure) [against all Defendants];

d.    Violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful detention) [against LVS, Tony Whiddon and eight LVS security officers];

e.    Civil conspiracy to violate civil rights [against all Defendants];

f.    Violation of Fourteenth Amendment of the U.S. Constitution (substantive due process) [against all Defendants];

g.    Violation of Fourteenth Amendment of the U.S. Constitution (procedural due

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

4

1   process) [against Metro, Sheriff Gillespie and three LVMPD officers];

2     h.  False imprisonment [against LVS, Tony Whiddon and eight LVS security officers];

3     i.  Battery [against LVS, Tony Whiddon and eight LVS security officers];

4     j.  Intentional infliction of emotional distress [against LVS, Tony Whiddon and eight

5   LVS security officers];

6     k.  Negligent infliction of emotional distress [against LVS, Tony Whiddon and eight

7   LVS security officers]; and

8     l.  Negligent training, supervision and retention [against LVS].

9   (Doc. No. 59).

10     The Complaint alleges that on January 15, 2010, Plaintiffs were passing by the Venetian,

11   Jason was dressed as the character Zorro while Sebastian was in ordinary street clothes, and that

12   Jason threw some trash in a garbage can and was then approached by an LVS security officer

13   named William Lovegren ("Lovegren"). (Doc. No. 59 at 3:13-9, ¶¶ 32-36). Plaintiffs allege that

14   Lovegren told Jason that he could not be on the sidewalk and that—after Jason protested, asserted

15   his legal rights, and told Lovegren to call the police—Lovegren placed him in handcuffs. (*Id*. at ¶¶

16   37-45). Plaintiffs allege that Sebastian then approached and asked what Jason had done wrong,

17   that LVS security officers told Sebastian to go away or he would be arrested, and that when

18   Sebastian refused to leave he was placed in handcuffs. (*Id*. at ¶¶ 48-54). Plaintiffs also allege they

19   were then taken to a security office within the casino to await the arrival of Metro. (*Id*. at ¶ 58).

20   After arriving, Metro spoke with LVS and Plaintiffs and issued written warnings to Plaintiffs. (*Id*.

21   at ¶ 84). Plaintiffs were not arrested. (*Id*.). The Complaint further alleges that Jason's physical

22   injuries consisted of a hurt right shoulder and back pain. (*Id*. at ¶¶ 104-105). The Complaint

23   alleges that Sebastian's physical injuries consisted of marks on his wrist for an hour after the

24   incident, purportedly caused by the handcuffs pressing against his wristwatch. (*Id*. at ¶ 106).

25   **III. UNDISPUTED FACTS**

26   **A. THE SECURITY VIDEO FOOTAGE OF THE INCIDENT**

27     1.  The substance of the incident was recorded on video by LVS. Copies of these three

28   security videos were produced to Plaintiffs as part of LVS's Initial Disclosures, and are attached as

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5

Exhibit 2).

**B.    PLAINTIFFS' FACTUAL ADMISSIONS**

2.    Plaintiffs' sworn testimony, along with factual accounts publicized by Plaintiffs and the ACLU, all indicate that neither Jason nor Sebastian was engaged in expressive activity. Jason's declaration, dated May 28, 2010, states he:

> was dressed up as Zorro **but not performing** as I passed in front of the Venetian Hotel & Casino. I was walking along the sidewalk against the fence bordering Las Vegas Boulevard. I was throwing away a Kleenex when a private security guard approached me and told me that I was not allowed to be on private property and that I should leave right away.

(Declaration of Jason Perez-Morciglio at ¶ 4, attached as Exhibit 3) (emphasis added).

3.    At his deposition, Jason again testified that he was not performing and was just walking by the Venetian when he was approached by LVS's security. (Jason Perez-Morciglio Depo. Tr. at 124:3-4, 125:16-22, 136:24-137:20, attached as Exhibit 4).

4.    Jason also testified that after Mr. Lovegren told him he was on private property and could not solicit and asked him to leave, Jason refused and instead demanded that Lovegren call the police. (*Id.* at 121:7-122:1, 146:19-147:19). Lovegren's additional requests that Jason move along were also refused, with Jason again demanding that Lovegren call Metro. (*Id.*).

5.    Jason further testified that he does not suffer from any continuing injuries:

> Q:    Do you have any other problems, physical problems or mental problems, as a result of your being -- of what happened on January 15th?
>
> A:    No.

(Tr. at 167:17-20). Jason's interrogatory answers also indicate that he never sought any form of medical treatment for his claimed physical and mental injuries. (Exhibit 5 at pp. 11-12).

6.    Sebastian also submitted a declaration, dated May 28, 2010, which states:

> On Friday, January 15, 2010, around 6:20 p.m., I was accompanying my brother who was performing as Zorro on the sidewalk along Las Vegas Blvd. I was walking five to seven feet in front of him as we were passing the Venetian. As we passed the Venetian, my brother was not performing as Zorro and I was not in costume. **We were just passing by**. I stopped to lean on a fence to watch the Mirage Hotel Volcano show and when the show finished, I turned around and saw a security guard approach my brother. I

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

> watched them talk and then the security guard spoke into his walkie talkie. Then, five more security guards arrived.  I saw them surround him and grab him.  I heard my brother yell for someone to call the police.

(Declaration of Sebastian Perez-Morciglio at ¶ 3, attached as Exhibit 6).

7.     Sebastian also testified at his deposition that he was not in costume at the time of the incident, and was not engaged in any form of protected expression.  (Sebastian Perez-Morciglio Depo. Tr. at 21:19-22:21, attached as Exhibit 7).  Sebastian testified that he was asked to leave the property by a female security officer, and that he refused and told her to call the police.  (*Id*. at 25:18-25, 53:1-12).  Sebastian admitted that neither he nor Jason was actually arrested by Metro.  (*Id*. at 30:25-31:3).

8.     Sebastian did not seek any treatment for his claimed physical and mental injuries.  (*Id*. at 103:17-19; Exhibit 8 at pp. 5-6).  Sebastian's claimed mental injury is limited to a claimed fear to walk by the Venetian -- Sebastian claims that the Plaintiffs were required to buy a vehicle so that they would no longer have to walk past the Venetian.  (Sebastian Perez-Morciglio Depo. Tr. at 45:18-46:4, 103:2-11, Exhibit 7).

9.     Similarly, a press release issued by the ACLU and published on its website on June 16, 2010 (just six days after Plaintiffs filed their Complaint and Jury Demand) contains the following description of the event:

> One Friday night the brothers Perez-Morciglio were walking on the public sidewalk in front of the Venetian.  Jason had already begun his transformation into Zorro while Sebastian was incognito in his daytime clothes.  Jason had momentarily stopped walking to throw trash into a bin when the Venetian security personnel confronted the brothers for being on "casino property."

(Exhibit 9).

C.     **THE FACTS AS STATED BY WILLIAM LOVEGREN**

10.     William Lovegren, the LVS security officer who first approached Plaintiffs, testified that he approached Plaintiffs after he personally observed the exchange of money for a generic toy sword between Jason and a family of tourists.  (William Lovegren Depo. Tr. at 42:4-14; 43:17-44:24, attached as Exhibit 10).  Mr. Lovegren then used his radio to report his observations to his manager and Security Control.  (*Id*. at 47:17-25).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

7

11. Mr. Lovegren then approached Jason, told him that he could not solicit the sale of goods on LVS property, and asked Jason to leave. (*Id.* at 49:15-25). Jason refused, claimed he had a constitutional right to be there, and demanded that Mr. Lovegren call the police. (*Id.* at 50:1-10). Mr. Lovegren again told Jason several times that Jason could not solicit the sale of swords. (*Id.* at 52:5-14). Jason objected and refused to leave. (*Id.* at 49:16-25).

12. Jason has never denied that he was soliciting the sale of plastic swords.

13. Using his radio, Mr. Lovegren then advised Security Control that Jason refused to leave. (*Id.* at 53:8-12). Mr. Lovegren was then directed by his manager to trespass Jason. (*Id.* at 63:18-25). After being instructed to trespass Jason, Mr. Lovegren read the text of NRS 207.200 to Jason on three separate occasions. (*Id.* at 53:13-60:4, 63:18-24). After each reading of the trespass statute, Jason maintained his refusal to leave the premises and stated he had a right to be there. (*Id.*). Mr. Lovegren repeatedly told Jason that he could not solicit, and each time Jason responded by stating that he had a 1st and 14th Amendment right to be there and demanding that Mr. Lovegren call the police. (*Id.*).

14. While Mr. Lovegren was asking Jason to leave and reading the trespass statute to him, four additional security officers arrived on the scene to assist. (*Id.* at 53:14-25, 58:19-21).

15. Mr. Lovegren then used his radio to report that he had read the trespass statute to Jason on three occasions, and that Jason still refused to leave. (*Id.* at 60:2-4). Mr. Lovegren was directed by his manager to handcuff Jason and to bring him to the security office to await the arrival of Metro. (*Id.* at 60:5-10).

16. While Mr. Lovegren was engaged with Jason, Sebastian approached the scene with a bottle in one had and a lit cigarette in the other hand. (*Id.* at 66:14-68:17, 91:18-93:10). Sebastian attempted to interfere with the security officers' handling of the incident with Jason, confronted the security officers and created a verbal disturbance and refused to stand down. (*Id.*). Sebastian was handcuffed and brought to the security office to await the arrival of Metro. (*Id.*).

/ / /

/ / /

/ / /

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

8

## IV.   LEGAL STANDARD

Summary judgment is proper where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  While the moving party bears this burden, it need not produce evidence showing the absence of a genuine issue of material fact.  *Celotex v. Cattrett*, 477 U.S. 317, 325 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Once the movant has made a prima facie showing that no genuine issue exists as to any material fact, the burden of showing otherwise shifts to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The Supreme Court has emphasized that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 248-49.

The non-moving party must establish a genuine issue of material fact as to each element for which it has the burden of proof.  Summary judgment is mandated when a party fails to establish an element essential to that party's case, and on which that party bears the burden of proof at trial:

> In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322-23.  In short, where the record could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment must be granted.  *Matsushita*, 475 U.S. at 585-87.  The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.  *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).

/ / /

/ / /

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

## V.     LAW AND ARGUMENT

### A.     PLAINTIFFS' FIRST AMENDMENT CLAIMS SHOULD BE DISMISSED

Plaintiffs' First Amendment Claims are predicated on the privately-owned sidewalks where the incident occurred being a "traditional public forum," as held by the Ninth Circuit in the context of labor union demonstrators in *Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd., etc.*, 257 F.3d 937 (9th Cir. 2001), *affirming* 45 F. Supp. 2d 1027 (D. Nev. 1999). Plaintiffs testified they were "not performing" and were "just passing by." (Exhibit 3 at ¶ 4; Exhibit 4 at 124:3-4, 125:16-19, 136:24-137:20; Exhibit 6 at ¶ 3; Exhibit 7 at 21:19-22:21). If that were true, no First Amendment issue would be presented. Instead, when Officer Lovegren asked Plaintiffs to leave the Venetian's private property, Plaintiffs adamantly refused and insisted they had a First Amendment right to remain on Venetian's private property, not just "pass by" it on the privately-owned sidewalk as they now claim in their testimony. (*See* Exhibit 4 at 121:7-122:1, 146:19-147:19; Exhibit 7 at 25:18-25, 53:1-12).

The First Amendment protects expressive conduct in a traditional public forum, which may include the exchange of money for message-bearing merchandise, because in that context, the solicitation of money is inextricably intertwined with the "message," *i.e.,* the pure speech that is protected by the First Amendment. *See, Village of Schaumburg v. Citizens For A Better Env't*, 444 U.S. 620 (1980); *Gaudiya Vaishnaya Soc'y v. City and County of San Francisco*, 952 F.2d 1059 (9th Cir. 1990). The "message" need not be explicit, as when an artist sells his or her original paintings on a city's streets and sidewalks, so long as it is the artist's self-expression that is being protected because the painting expresses the artist's perspective. *See, White v. City of Sparks*, 500 F.3d 953 (9th Cir. 2007). But in such circumstances, the exchange of money for merchandise is protected because it is the artist's self-expression that is protected by the First Amendment. *Id.* The fact that Venetian's private property has been declared to be a "traditional public forum" for labor union demonstrations does not mean that Venetian must tolerate purely commercial transactions, *i.e.,* the exchange of money for generic merchandise with neither an explicit nor an implicit "message" on its private property. *See*, *Gaudiya Vaishnaya Soc'y*, 952 F.2d at 1063-65.

Moreover, free expression, including expressive conduct, is subject to reasonable time,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

10

1  place and manner restrictions in the interest of avoiding congestion, deception, duress, and threats

2  to public safety in a public forum.  *See*, *Helfron v. Int'l Soc. for Krishna Consciousness,* 452 U.S.

3  640 (1981); *NMI Perry v. Los Angeles Police Dep't*, 121 F.3d 1365 (9th Cir. 1997).   Such

4  restrictions may include prohibitions on soliciting and the immediate transfer of money on

5  passageways dedicated to the orderly movement of significant number of people.  *Id.*; *see*, *United*

6  *States v. Kokinda*, 497 U.S. 720, 737-39 (1990) (Kennedy, J., concurring); *Int'l Soc. For Krishna*

7  *Consciousness v. Lee*, 505 U.S. 672, 703-09 (1992) (Kennedy, J., concurring) (and authorities cited

8  therein); *see also*, *Comite De Jornales De Redondo Beach v. City of Redondo Beach*, 607 F.3d

9  1178 (9th Cir. 2010); *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009

10  (9th Cir. 1996).

11       Here, Venetian security personal did not interfere with Plaintiffs' presence on the portion of

12  Venetian's private property in question until after Officer Lovegren had personally observed the

13  exchange of money for a generic toy sword, a purely commercial transaction with no expressive

14  content whatsoever.  (Exhibit 10 at 42:4-14; 43:17-44:24).  Plaintiffs have testified that they were

15  "just passing by" and were "not performing" at the time of the incident in question despite the fact

16  that Jason was wearing a black mask and a long flowing cape in which he had concealed toy

17  swords.  (Exhibit 3 at ¶ 4; Exhibit 4 at 124:3-4, 125:16-19, 136:24-137:20; Exhibit 6 at ¶ 3; Exhibit

18  7 at 21:19-22:21).

19       Nevertheless, when Venetian security personnel asked plaintiffs to leave Venetian's private

20  property due to their solicitation activities, Plaintiffs adamantly refused, insisting they had a First

21  Amendment right to remain on Venetian's private property.  (*See* Exhibit 4 at 121:7-122:1, 146:19-

22  147:19; Exhibit 7 at 25:18-25, 53:1-12).  The mere fact that the portion of Venetian's private

23  property in question has been declared to be a traditional public forum in the context of labor union

24  demonstrators does not license Plaintiffs to engage in purely commercial transactions and

25  otherwise threaten to disrupt the safe and orderly movement of pedestrians on the private walkway

26  in question, conduct the courts have held may be properly prohibited even in a public forum.

27       Plaintiffs' First Amendment claims should be dismissed.

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

11

1

2

**B.     PLAINTIFFS' CIVIL RIGHTS CLAIMS SHOULD BE DISMISSED AS AGAINST THESE DEFENDANTS**

In order to maintain their civil rights claims against these defendants, Plaintiffs must demonstrate: (1) an actionable deprivation of Federal constitutional rights resulting from the exercise of a right or privilege having its source in state authority, (2) by private parties appropriately characterized as state actors.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954-55 (9th Cir. 2008).  Plaintiff's civil rights claims fail as against these defendants because (1) Venetian and its personnel are not state actors; and (2) Plaintiffs cannot "constitutionalize" their ordinary state-law tort claims against these defendants arising from Venetian's exercise of its private property rights.

The mere fact that the portion of Venetian's private property in question serves a public function by being a public sidewalk for pedestrian traffic does not make Venetian and its personnel state actors.  *Caviness v. Horizon Cmty. Learning Ctr.*, 590 F.3d 806, 815 (9th Cir. 2010).  Nor does the fact that the Clark County Metropolitan Police Department ("Metro") may have approved of and/or acquiesced in Venetian and its personnel providing security on the public sidewalk make Venetian and its personnel state actors.  *Id.*, 590 F.3d at 817.  Nor does the fact that, with respect to the incident in question, Venetian—at the request and insistence of <u>Plaintiffs</u>—called Metro and, after Metro had separately interviewed Plaintiffs as well as talked to Venetian's security personnel, Metro issued trespass warnings, and Plaintiffs were then escorted off of Venetian's private property, make Venetian and its personnel state actors.  *Villegas*, 541 F.3d at 954-58.  Plaintiffs' civil rights claims against Venetian and its personnel fail because Venetian and its personnel are not state actors.

Moreover, Plaintiffs' civil rights claims fail for a second reason.  The civil rights statutes impose liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising out of tort law.  *See*, *Johnson v. Barker*, 779 F.2d 1396 (9th Cir. 1986).  As the Supreme Court observed in *Baker v. McCollan*, 443 U.S. 137, 146 (1979), "… false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id*.  In this case, Venetian personnel detained trespassers who

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

insisted on remaining on Venetian's private property under circumstances not protected by the First Amendment, required that they produce identification, ascertained that they were not carrying dangerous weapons, and then turned them over to Metro officers who issued trespass warnings to them.  Whatever state law tort claims Plaintiffs believe arise from these circumstances, they do not encompass constitutional violations sufficient to sustain plaintiffs' civil rights claims.  *See, e.g. Heibel v. Sixth Judicial District Court*, 542 U.S. 177 (2004); *cf, Alexis v. McDonald's Rest. of Massachusetts, Inc.*, 67 F.3d 341 (1st Cir. 1995).

Plaintiffs' civil rights claims should be dismissed.

**C.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED BECAUSE LVS'S ACTIONS ARE PROTECTED BY NEVADA STATUTE**

Nevada law provides LVS with a statutory defense to Plaintiffs' tort claims—operators of hotels are permitted to use reasonable force to eject a trespasser.  The statute provides:

> Every owner or keeper of any hotel, inn, motel, motor court, or boardinghouse or lodging house in this State shall have the right to evict from such premises anyone who acts in a disorderly manner, or who destroys the property of any such owner or keeper, or who causes a public disturbance in or upon such premises.

NRS 651.020.  A proprietor is permitted to use reasonable force to eject a trespasser.  *See Walker v. Burkham*, 67 Nev. 541, 570-74, 222 P.2d 205, 220-21 (1950).

Here, Plaintiffs were trespassers because they were asked to leave but refused to do so, thereby committing misdemeanor trespass under NRS 207.200(1)(b).  *See Billingsley v. Stockmen's Hotel*, 901 P.2d 141, 145 (Nev. 1995).  There is no evidence to suggest that Venetian's security personnel acted unreasonably or used excessive force.  (*See* Exhibit 2).  Accordingly, Plaintiffs' tort claims should be dismissed pursuant to NRS 651.020.

**D.    PLAINTIFFS' INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED**

The elements for intentional infliction of emotional distress are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff's having suffered severe or extreme emotional distress; and (3) actual or proximate causation.  *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  A claim for negligent infliction of emotional distress involves similar elements, except the requisite intent is one of

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

13

1   negligence rather than intentional or reckless conduct.  *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477

2   (Nev. 1995).  Plaintiffs cannot prevail on their claims for emotional distress because there is no

3   egregious conduct by the LVS defendants and Plaintiffs' claimed injuries are not severe or

4   extreme.

5          The emotional distress claims fail because Plaintiffs' purported mental injuries are nominal

6   at best.  However, the law requires that a claimed mental injury must be significant.  *Alam v. Reno*

7   *Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (feelings of "inferiority, headaches [and]

8   irritability" are not enough to amount to severe emotional distress); *Chowdhry v. NLVH, Inc.*, 851

9   P.2d 459, 462 (Nev. 1993) (explaining that insomnia and general physical or emotional discomfort

10  are insufficient).  Here, Jason testified that he did not suffer any mental injury, while Sebastian

11  testified that his mental injury consists of a fear to walk by the Venetian which required the

12  Plaintiffs to purchase a van.  (Exhibit 4 at 167:17-20; Exhibit 7 at 45:18-46:4, 103:2-11).  Neither

13  Plaintiff sought any treatment.  (Exhibit 5 at pp. 11-12; Exhibit 8 at pp. 5-6).  Instead, Plaintiffs

14  "cured" Sebastian's supposed mental anguish by purchasing a van.  (Exhibit 7 at 45:18-46:4,

15  103:2-11).  Plaintiffs' claimed emotional injuries are insufficient as a matter of law.  *See Alam*, 819

16  F. Supp. at 911; *Chowdhry*, 851 P.2d at 462; *Kennedy v. Town of Billerica*, 617 F.3d 520, 530-31

17  (1st Cir. 2010) (plaintiff's alleged fear of going to court, fear of the police, nightmares, and loss of

18  sleep after his arrest or after filing of complaint against him did not meet the severity of harm

19  requirement to find liability on an intentional infliction of emotional distress claim); *Jones v.*

20  *Warner*, 686 S.E.2d 835, 839 (Ga. App. Ct. 2009) (restaurant patron's purported anxiety,

21  nervousness, sleeplessness, and irritability for one month resulting from alleged false arrest did not

22  rise to the level of severe emotional distress necessary for actionable claim of intentional infliction

23  of emotional distress, thus precluding action against arresting officer).

24          Additionally, Plaintiffs cannot establish that the conduct of the LVS defendants was

25  extreme or outrageous.  Liability for emotional distress does not extend to "mere insults,

26  indignities, threats[,] annoyances, petty oppressions, or other trivialities."  *Burns v. Mayer*, 175 F.

27  Supp. 2d 1259, 1268 (D. Nev. 2001), *quoting Candelore v. Clark Co. Sanitation Dist.*, 752 F.

28  Supp. 956, 962 (D. Nev. 1990).  Instead, "[l]iability is only found in extreme cases where the

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

14

actions of the defendant go beyond all possible bounds of decency, are atrocious and utterly intolerable." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Plaintiffs' emotional distress claims fail as a matter of law because the events of January 15, 2010, were not egregious. Plaintiffs were taken into custody after Jason was observed soliciting plastic swords. (Exhibit 10 at 42:4-14; 43:17-44:24). Sebastian charged the scene of the incident with a bottle in one hand and a lit cigarette in the other hand. (*Id.* at 66:14-68:17, 91:18-93:10). Although Plaintiffs claim they were "just passing by", they both refused repeated requests to leave the premises and instead insisted that LVS call the police. (Exhibit 3 at ¶ 4; Exhibit 4 at 121:7-122:1, 124:3-4, 125:16-19, 136:24-137:20, 146:19-147:19; Exhibit 6 at ¶ 3; Exhibit 7 at 21:19-22:21, 25:18-25, 53:1-12). Plaintiffs were then taken into custody to await the arrival of Metro, and the entire incident lasted about an hour. (Exhibit 2). As confirmed by the security video footage, there was no egregious conduct.

There is no severe or extreme emotional distress in this case, and consequently Plaintiffs' claims for intentional and negligent infliction of emotional distress fail as a matter of law.

## VI.   CONCLUSION

For the foregoing reasons, summary judgment should be entered against Plaintiffs and in favor of LVS on the following:

a.   Plaintiffs' First Cause of Action for violation of First and Fourteenth Amendments to the U.S. Constitution (free speech and expression);

b.   Plaintiffs' Second Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful arrest);

c.   Plaintiffs' Third Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unreasonable search and seizure);

d.   Plaintiffs' Fourth Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful detention);

e.   Plaintiffs' Fifth Cause of Action for civil conspiracy to violate civil rights;

f.   Plaintiffs' Sixth Cause of Action for violation of Fourteenth Amendment of the U.S. Constitution (substantive due process);

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

15

g.     Plaintiffs' Eighth Cause of Action for false imprisonment;

h.     Plaintiffs' Ninth Cause of Action for battery;

i.     Plaintiffs' Tenth Cause of Action for intentional infliction of emotional distress;

j.     Plaintiffs' Eleventh Cause of Action for negligent infliction of emotional distress;

and

k.     Plaintiffs' Twelfth Cause of Action for negligent training, supervision and retention.

LIONEL SAWYER & COLLINS

By:   /s/ Samuel S. Lionel
       Samuel S. Lionel, Bar No. 1766
       David N. Frederick, Bar No. 1548
       Robert W. Hernquist, Bar No. 10616

*Attorneys for Defendants Las Vegas Sands*
*Corporation, Venetian Casino Resort, LLC,*
*Eli Castro, Linda Hagenmaier, William Lovegren,*
*Anthony Bronson, Kevin Neanover, Kim Gorman,*
*Paul Tanner and Tony Whiddon*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Lionel Sawyer & Collins, and that on the 23rd day of May, 2011, I caused to be served a true and correct copy of the foregoing *Motion for Summary Judgment* in the following manner:

(ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Allen Lichtenstein                          Nicholas Crosby
Margaret A. McLetchie                       MARQUIS AURBACH COFFING
ACLU OF NEVADA                              10001 Park Run Drive
3315 Russell Rd., Suite H 222               Las Vegas, NV 89145
Las Vegas, NV 89120
                                            *Attorney for Defendants Las Vegas Metropolitan*
*Attorneys for Plaintiffs Jason A. Perez-*   *Police Department, Sheriff Douglas Gillespie,*
*Morciglio and Sebastian Perez-*             *Officer S. Schaier and Officer T. Scott*
*Morciglio*

                                            /s/  Robert Hernquist
                                            LIONEL SAWYER & COLLINS

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

16