**Marquis Aurbach Coffing**
NICK D. CROSBY, ESQ.
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
ncrosby@maclaw.com
Attorneys for LVMPD Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JASON A. PEREZ-MORCIGLIO and SEBASTIAN PEREZ-MORCIGLIO,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); LAS VEGAS METROPOLITAN POLICE DEPARTMENT OFFICERS T. SCOTT and S. SCHAIER (in their individual capacities); Las Vegas Sands Corporation, a Las Vegas Corporation; and Venetian Security Guards 1-6,<br><br>Defendant. | Case No.:   2:10-cv-00899-PMP-RJJ |

## LVMPD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Douglas Gillespie ("Gillespie"), Officer T. Scott ("Scott") and Officer S. Schaier ("Schaier")(collectively "LVMPD Defendants") by and through their attorney of record, Nick D. Crosby, Esq., with the law firm of Marquis Aurbach Coffing herby file their Motion for Summary Judgment.

/ / /

/ / /

/ / /

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

This Motion is made and based upon the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, and any oral argument allowed at the time of the hearing.

Dated this **25** day of May, 2011.

MARQUIS AURBACH COFFING

By _____
Nick D. Crosby, Esq.
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for LVMPD Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The LVMPD Defendants are entitled to summary judgment because no genuine issue of material fact exists precluding summary judgment and the LVMPD Defendants are entitled to judgment as a matter of law.  Indeed, the LVMPD officers responding to the call for service from the Venetian conducted an investigation into the allegations of trespassing, determined that no enforcement activity was necessary, and released the Plaintiffs – all within the statutorily prescribed detention period.  There is absolutely no evidence whatsoever to prove a conspiracy on the part of LVMPD and the Venetian and there is no evidence to demonstrate the LVMPD Defendants violated the Plaintiff's due process rights.  As such, summary judgment in favor of the LVMPD Defendants is appropriate.

### II.    STATEMENT OF UNDISPUTED FACTS PURSUANT TO LR 56-1

#### A.     THE PLAINTIFFS.

The Plaintiffs, Jason Perez-Morciglio ("Jason") and Sebastian Perez-Morciglio ("Sebastian")(collectively "Plaintiffs"), are street performers who primarily earn a living portraying characters on the streets of Clark County.  (**Exhibit A**, Depo. Trans. of J. Perez-Morciglio, pp. 11-12; **Exhibit B**, Depo. Trans. S. Perez-Morciglio, pp. 15-16).  Jason routinely

Page 2 of 21

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   dresses-up in costume and performs as the "masked bandit like Zorro." (Exh. A at p. 17).

2   Sebastian portrays the character of Darth Vadar, from the movie Star Wars. (Exh. B at p. 16:9-

3   11). The Plaintiffs accept tips for posing in pictures with passers-by. (Exh. A at pp. 15 and Exh.

4   B at pp. 15-16).

5   **B.     THE INCIDENT.**

6         On January 15, 2010, the Plaintiffs were on the Las Vegas Boulevard (the "Strip") in

7   front of the Venetian Hotel and Casino ("Venetian"). (4th Amend. Compl., p. 3:13-17). Jason

8   was dressed as Zorro, but was not performing at the time. (Exh. A at pp. 124:3-4; 125:16-19; 4th

9   Amend. Compl. at p. 3:17). Sebastian was not in costume at the time and was not performing.

10  (Exh. B at p. 22:5-9, 19-21; 4th Amend. Compl. at p. 3:17-18). Jason and Sebastian are brothers.

11  (Exh. A at p. 17:1-4). As part of his costume, Jason carries plastic swords and knives. (Id. at p.

12  101:8-11). Plaintiffs were on their way to the Bellagio and/or the Paris Hotel and Casino. (Id. at

13  pp. 89:24-25; 90:1).

14        The Plaintiffs stopped in front of the Venetian so Sebastian could watch the Mirage Hotel

15  and Casino's volcano show. (Id. at pp. 103:25; 104:1-3). As Jason threw a piece of garbage

16  away in a trash receptacle located on the sidewalk in front of the Venetian, he was approached by

17  a Venetian security officer. (4th Amend. Compl. at p. 12, ¶¶ 35-36). Jason was told by Venetian

18  Security he was not allowed to be on the sidewalk because it was private property and he was

19  asked to leave. (Id. at p. 12, ¶ 37). Jason was told several times by Venetian Security to leave

20  the premises, but Jason refused. (Id. at p. 13 ¶ 39). At that point, Jason told Venetian Security

21  the sidewalk was not private property and that he had a right to be on the sidewalk. (Id. at p. 13

22  ¶ 40). Additional Venetian Security officers responded to the area and advised Jason that if he

23  did not leave, he would be arrested. (Id. at p. 13 ¶¶ 40-43). Jason was then put in handcuffs

24  after he refused to leave. (Id. at p. 13 ¶ 45). Sebastian, who was some distance away observing

25  the interaction, approached the guards and began questioning their actions. (Id. at p. 13 ¶¶ 48-

26  50). Sebastian was told to "go away" or he would be arrested. (Id. at p. 13, ¶ 51). When

27  Sebastian refused, he was detained by Venetian Security and handcuffed. (Id. at p. 14 ¶ 54).

28  The Plaintiffs were then escorted to the interior of the Venetian and to the Security office. (Id. at

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

1   p. 14, ¶ 58). The Plaintiffs admitted none of the LVMPD Defendants were present at the time of

2   the detention on the Strip. (Exh. A at p. 169:19-22; 170:1-12; Exh. B at p. 26:9-17).

3          LVMPD Officers Scott Schaier ("Schaier") and Terry Scott ("Scott") were notified by

4   LVMPD Dispatch of a call for service at the Venetian. (See **Exhibit C**, Depo. Trans. T. Scott,

5   pp. 59:25; 60:1-4). The call was a code 439, which refers to an in-custody call or assist a citizen

6   call. (Id.; **Exhibit D**, Depo. Trans. S. Schaier, p. 43:21-22). The Strip is policed by LVMPD

7   officers assigned to the Convention Center Area Command ("CCAC"). (Exh. D at p. 26:4-7).

8   Ofc. Scott was a Field Training Officer ("FTO") at the time of the incident and Ofc. Schaier was

9   his trainee. (Exh. D at p. 25:14-25). Ofc. Scott and Ofc. Schaier responded to the Venetian at

10  approximately 6:33 p.m. (**Exhibit E**, LVMPD (Perez-Morgiclio 004).

11         When Ofc. Schaier and Ofc. Scott arrived on the scene and removed Venetian Security's

12  handcuffs and placed the Plaintiffs in LVMPD handcuffs. (Exh. D at pp. 45:24-25; 46:1-2).

13  This is a standard operating procedure for LVMPD officers to ensure handcuffs are properly

14  applied to avoid injury to suspects and to prevent a suspect's ability to escape from handcuffs.

15  (**Exhibit F**, Scott's Ans. to Interrog., No. 13). Ofc. Schaier then spoke with Venetian Security

16  about the incident:

17         Q.      Then what did you do?

18         A.      Then at that point [after removal of Venetian handcuffs], I spoke with
           security, got their side of what had occurred, and then spoke to Sebastian and
19         Jason, got their versions of what occurred, and then made our decision from that
           point.
20
           …
21
           Q.      What questions did you ask?
22
           A.      Why they had him detained, where exactly they had him when they
23         detained him, why they did it, why he was in handcuffs, was he just walked back.
           I think that's about it.
24
           …
25
           Q.      What were you told about why the [Plaintiffs] were detained?
26
           A.      We were told that they were on their property, is how they explained it to
27         us, over by the fountain in the front of the Venetian. And at the time, they asked
           them to leave multiple times. They said they read them the NRS warning, the
28         207.200, and they refused to leave.

MARQUIS AURBACH COFFING
1001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1

2

3

> And then at that point, after they refused to leave a few times, they said they detained them. They said the reason they detained [Sebastian] is because he kind of came over aggressively towards them with a bottle in his hand, and they weren't sure what his – you know, what he was going to do or anything like that, so they detained him, as well. So that's what they told us.

4   (Exh. D at pp. 46:12-16; 47:12-16; 48:8-23). Ofc. Schaier explained that no criminal action was

5   pursued on the part of LVMPD because of the uncertainty in where the Plaintiffs were detained

6   because the Venetian is unique in that the entire front of the hotel is designed to look like a

7   European street, making it difficult to ascertain where, exactly, the sidewalk ends and the

8   Venetian's private property starts. (Id. at p. 49:10-20).

9          Ofc. Schaier also spoke with the Plaintiffs during the investigation into the call for

10   service. (Id. at pp. 53:25; 54:1). Jason told Ofc. Schaier that he and Sebastian were on the

11   sidewalk "taking pictures with people" when Venetian Security told Jason to leave. (Id. at p.

12   54:7-13). Jason explained to Ofc. Schaier that he (Jason) was on the sidewalk, to which Ofc.

13   Schaier explained the issue:

> Q.    So what did you tell him in response to his statement that it was a public sidewalk?
>
> A.    I told him the same thing, on how it's tricky with the Venetian because of the way it's designed. I said, "They're explaining to me that you were on their property by the fountain versus the sidewalk with the little railing and all that." He said he was – it was a he-said she-said, unfortunately, and we're stuck in the middle between the two.

14

15

16

17

18

19   (Id. at pp. 54:18-25; 55:1). Schaier also spoke with Sebastian, but could only recall Sebastian

20   telling him he (Sebastian) was Jason's brother and that he did not understand why he was

21   detained by Venetian Security. (Id. at p. 55:8-20). Ofc. Schaier was not sure about the location

22   of the Plaintiffs at the time of the detainment by Venetian Security, as Jason told Ofc. Schaier the

23   Plaintiffs were on the sidewalk. (Id. at pp. 52:12-17; 53:25; 54:1-13). Ofc. Schaier pat-searched

24   Jason after Jason consented to the search. (4th Amend. Compl. at pp. 16-17, ¶¶ 85-86).

25   Sebastian was also pat-searched, but could not remember whether he was asked prior to the

26   search, but admitted that he never told the LVMPD officers they could not conduct the search.

27   (Exh. B at p. 29:8-13).

28   / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

1    Based upon the differing stories as to where the Plaintiffs were actually located at the

2    time of the detention, the Officers determined the Plaintiffs would not be cited or arrested. (Id. at

3    p. 56:21). Instead, the Plaintiffs were issued a warning that the Venetian had trespassed them

4    from the Venetian's private property in the future. (Id.) Venetian Security read the Plaintiffs a

5    formal trespass warning in the presence of the LVMPD officers. (Id. at pp. 142:16-25; 143:1-

6    16). The warning is not a citation to appear before a court or a citation for any crime and,

7    instead, is a warning that the Plaintiffs were not welcome on Venetian private property. (Id.;

8    **Exhibit G**, LVMPD (Perez-Morciglio) 002-003).

9        C.    **THE COMPLAINT.**

10    On June 1, 2010, the Plaintiffs' filed a Complaint against the LVMPD Defendants in

11    addition to the Venetian and several of the Venetian's Security officers.    (Docket #1).

12    Throughout the course of the litigation, the Plaintiffs have amended the Complaint several times

13    to include new Defendants.  Most recently, on April 27, 2011, the Plaintiffs filed a Fourth

14    Amended Complaint pursuant to 42 U.S.C §1983 against the LVMPD Defendants.  (Docket

15    #59).  As it relates to the LVMPD Defendants, the Plaintiffs allege the following causes of

16    action: (1) violation of the Plaintiffs' right to free speech and expression under the First and

17    Fourteenth Amendments of the United States Constitution; (2) violation of the right to be free

18    from unlawful arrest pursuant to the Fourth and Fourteenth Amendments to the United States

19    Constitution; (3) violation of the right to be free from an unreasonable search and seizure

20    pursuant to the Fourth and Fourteenth of the United States Constitution; (4) civil conspiracy

21    pursuant 42 U.S.C. §1983; (5) violation of substantive due process rights pursuant to the

22    Fourteenth Amendment of the United States Constitution; and (6) procedural due process

23    pursuant to the Fourteenth Amendment of the United States Constitution.   (4th Amended

24    Complaint, pp. 20-30). In short, the Plaintiffs allege that LVMPD maintains a policy, practice,

25    custom or scheme which is unconstitutional and actually deprived the Plaintiffs of their

26    constitutional right to free expression and free speech by engaging in a civil conspiracy with the

27    Venetian to allow the Venetian to restrict free speech on the public sidewalk in front of its

28    property.  Additionally, the Plaintiffs allege that the LVMPD Defendants failed to conduct an

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    independent investigation into probable cause as to any crimes committed by the Plaintiffs and

2    that LVMPD employs a policy, practice, or custom of its officers failing or purposely not

3    conducting independent investigations of probable cause prior to arresting people engaged in free

4    speech on the public sidewalk.

5    **III.    LEGAL ARGUMENT**

6         **A.    SUMMARY JUDGMENT STANDARD.**

7         Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

8    and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

9    to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

10   Civ. P. 56(c).  As to this rule, the Supreme Court has stated:

> In our view, the plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon
> motion, against the party who fails to make his showing to
> establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof.

14   See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

15        The moving party has the initial burden of showing the absence of a genuine issue of

16   material fact. See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982). An issue is

17   only "genuine" if the evidence is such that a reasonable jury, applying the applicable quantum of

18   proof, could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477

19   U.S. 242, 248 (1986).  Whether a fact is "material depends on the substantive law and whether

20   the fact affects the outcome of the lawsuit." Id.

21        The party moving for summary judgment has the initial burden of showing the absence of

22   a genuine issue of material fact.   Adickes v. S.H. Kress & Co., 398 U.S. (1970).  Once the

23   movant's burden is met by presenting evidence which, if uncontroverted, would entitle the

24   movant to a directed verdict at trial, the burden shifts to the respondent to set forth specific facts

25   demonstrating that there is a genuine issue for trial. Anderson at 250.  The court in Anderson

26   also held that the evidence presented in the opposing affidavits is of insufficient caliber or

27   quantity then no genuine issue of material fact is raised. Id. at 254.  Further, if the factual

28   context makes the respondent's claim implausible, then the party must come forward with more

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    persuasive evidence then would otherwise be necessary to show there is a genuine issue for trial.

2    Celotex at 324. The parties seeking to defeat summary judgment cannot stand on their pleadings

3    once the movant has submitted affidavits or other similar materials. Affidavits that do not

4    affirmatively demonstrate personal knowledge are insufficient. British Airways Bd. v. Boeing,

5    Co., 585 F. 2d 946, 952 (9th Cir. 1978).

6         Finally, the opposing party's burden is not excused by the fact that evidence to oppose

7    the motion is in possession of the moving party as long as there has been a full opportunity to

8    conduct discovery. Anderson, 477 U.S. at 249. It is insufficient to meet the non-moving

9    burden's party, where they have the burden to prove at trial, to show a mere metaphysical doubt

10   as to the material facts. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574

11   (1986). There must be evidence on which the jury could reasonably find for the party opposing

12   judgment. Anderson, 106 U.S. at 247.

13        **B.      THE PLAINTIFFS' SECTION 1983 CLAIMS FAIL ON THE MERITS.**

14        Individual suits against a police officer require proving that the official, acting personally

15   under color of state law, caused the constitutional deprivation. See Kentucky v. Graham, 473

16   U.S. 159 (1985). In addition, liability will only attach in an individual capacity suit if the

17   plaintiff pierces the officer's qualified immunity. See Anderson v. Creighton, 483 U.S. 635, 638

18   (1987). Section 1983 is not itself a source of substantive rights, but merely the procedural

19   vehicle by which to vindicate federal rights elsewhere conferred. See Albright v. Oliver, 510

20   U.S. 266, 271 (1994).

21        To make a prima facie case under § 1983, a plaintiff must show that the defendant: (1)

22   acted under color of law; and (2) deprived the plaintiff of a constitutional right. See Borunda v.

23   Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989). Here, it is not disputed Officers Schaier and

24   Scott acted under the color of law. Therefore, the primary task in evaluating the § 1983 claims is

25   to identify the specific constitutional right allegedly infringed. See Albright, 510 U.S. at 271.

26   The Plaintiffs admit they are suing for deprivation of their First, Fourth, Fourteenth Amendment

27   rights regarding free speech and expression and to be free from unreasonable searches and

28   seizures. (4th Amend. Compl. at pp. 20-30.)

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

1.    **Officers Schaier and Scott did not Infringe Upon the Plaintiffs' First Amendment Rights to Free Speech and Free Expression.**

As much as the Fourth Amended Complaint speaks of a violation of the Plaintiffs' First Amendment rights, the claims are truly a red-herring *vis a vis* the LVMPD Defendants. The LVMPD Defendants do not disagree that the First Amendment to the U.S. Constitution prevents unlawful or unreasonable restriction on free speech and free expression. An analysis of the First Amendment must begin with one bedrock principal: "The protections afforded by the First Amendment are nowhere stronger than in the streets and parks, both categorized for First Amendment purposes as traditional public fora." Berger v. City of Seattle, 569 F.3d 1029, 1035-36 (9th Cir. 2001). Despite the broad First Amendment protection accorded to expressive activity in public, certain restrictions on speech in the public are valid. Id. Specifically, a municipality may issue reasonable regulations governing the time, place or manner of speech. Id. To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content neutral; (2) it must be "narrowly tailored to serve a significant governmental interest"; and (3) it must "leave open ample alternative channels for communication of the information." Id. at 1036.

Here, there is absolutely no question the LVMPD Defendants are entitled to summary judgment on the Plaintiffs' First Amendment claims because there was never any restriction on the Plaintiffs' speech at the hands of the LVMPD Defendants. Indeed, both the Plaintiffs admitted the LVMPD Defendants were not present during the initial detention. Indeed, the LVMPD officers did not physically respond to the scene until *after* the Plaintiffs were detained by Venetian Security and brought into the Venetian Security office. (Exh. A at pp. 211:12-20; 212:19-24; 213:1-4; Exh. B at p. 36:8-10). Thus, there is absolutely no evidence to demonstrate the LVMPD Defendants restricted the Plaintiffs' speech on the sidewalk.

Furthermore, there is no evidence to demonstrate the actions of the LVMPD Defendants prevented any future opportunities to exercise free speech. Indeed, the Plaintiffs were not told by the LVMPD Defendants they could not engage in free speech on a public forum and, in fact, the LVMPD Defendants' conduct demonstrates the First Amendment rights of the Plaintiffs were

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  actually protected by virtue of the fact Ofc. Scott and Ofc. Schaier did not arrest or issue a

2  citation to the Plaintiffs. Instead, the Officers advised the Plaintiffs of the "tricky" issue with the

3  Venetian's sidewalk and determined no enforcement action was appropriate. There is simply no

4  evidence to suggest the LVMPD Defendants actually deprived the Plaintiffs of any right to free

5  speech and, as such, the Plaintiffs' claims fail as a matter of law.

6
7  **2.    Officers Schaier and Scott Are Entitled to Summary Judgment on Plaintiffs' Unlawful Search Claims.**

8      The Fourth Amendment mandates that searches and seizures be reasonably conducted.

9  U.S. Const. Amend. IV. "It is well settled under the Fourth and Fourteenth Amendments that a

10  search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject

11  only to a few specifically established and well-delineated exceptions.'" Schneckloth v.

12  Bustamonte, 412 U.S. 218 (1973)(quoting Katz v. United States, 389 U.S. 347, 357 (1967); see

13  also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, (1971); Chambers v. Maroney, 399

14  U.S. 42, 51 (1970)). One recognized exception to the warrant requirement is consent. U.S. v.

15  McWeeney, 454 F.3d 1030, 1033-34 (9th Cir. 2006)(citing Illinois v. Rodriguez, 497 U.S. 177,

16  250-251 (1990)). A person, however, is able to revoke or limit the scope of the consent at any

17  time during the encounter. Id. at 1034. Regarding pat-down searches or "frisks," officers are

18  permitted to conduct a limited search of the suspect to allow the officer to conduct his

19  investigation without the fear of violence. Adams v. Williams, 407 U.S. 143, 146 (1972).

20      Here, Ofc. Scott and Ofc. Schaier are entitled to summary judgment for the Plaintiffs'

21  unreasonable search claims because: (1) the Plaintiffs consented to the search; (2) never revoked

22  consent; and (3) the officer, nonetheless, had a reasonable suspicion to search the Plaintiffs.

23  First, Jason admits in the Fourth Amended Complaint that he consented to the search. (4th

24  Amend. Compl. at p. 17, ¶ 86). Jason never revoked his consent to the search. Sebastian was

25  unable to recall whether he consented to the pat-search, but recalled that he never told the

26  officers that they could not search his person. (Exh. B at p. 29:11-12). In the statement of facts

27  of the Amended Complaint, Sebastian does not even allege he was searched. Because the

28  Plaintiffs consented to the pat-search and never revoked their consent nor told the officers a

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

search of their person was not permitted, there can be no liability on the part of Ofc. Schaier or Ofc. Scott for the search.

Furthermore, the Officers had a reasonable suspicion to search the Plaintiffs by virtue of the fact the Officers observed replicas of swords and knives removed from Jason.  Indeed, as Ofc. Scott explained:

> A.    And the other thing was, one of the gentleman had numerous – you know, at the time, I didn't know if they were real weapons or prop weapons.  But, you know, for our safety, you know, we're going to make sure we pat search them down to see if he had anymore of these prop weapons on him.  It could have been that he was armed, because they're [Venetian Security] not trained like we are to conduct proper patdown for weapons.
>
> …
>
> Q.    Were they real swords?
>
> A.    I mean, I glanced at them.  I didn't like pick them up and examine them. But, I mean, some of them looked realistic and some of them looked fake.

(Exh. C at pp. 76:23-25; 77:1-5, 12-15).  Jason admitted that he typically carries between 3-5 swords and one, maybe two knives on his person when he performs.  (Exh. A at p. 102:8-24). Given the fact the Officers observed the weapons, *albeit* props, a reasonable suspicion was formed sufficient to allow the Officers to conduct a pat-search to ensure the Plaintiffs were not armed.  This search was reasonable, absent any consent, and as such, the LVMPD Defendants are entitled to summary judgment for any claim of an unreasonable search.

### 3.     The Plaintiffs' Claims for Unlawful Seizure/Arrest Fail as a Matter of Law.

The Officers are also entitled to summary judgment for any claim of unlawful seizure of the Plaintiffs. Nevada Revised Statute 171.123 provides:

**NRS 171.123  Temporary detention by peace officer of person suspected of criminal behavior or of violating conditions of parole or probation: Limitations.**

1.  Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.

2.  Any peace officer may detain any person the officer encounters under circumstances which reasonably indicate that the person has violated or is violating the conditions of his parole or probation.

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
1001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1

2

3

> 3. The officer may detain the person pursuant to this section only to ascertain his identity and the suspicious circumstances surrounding his presence abroad. Any person so detained shall identify himself, but may not be compelled to answer any other inquiry of any peace officer.

> 4. A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes. The detention must not extend beyond the place or the immediate vicinity of the place where the detention was first effected, unless the person is arrested.

6  Nev. Rev. Stat. 171.123. For nearly a half a century, courts have recognized that a police officer

7  may approach and detain a subject for the purpose of investigating possible criminal behavior,

8  even though probable cause may not exist to arrest the subject. See Terry v. Ohio, 392 U.S. 1,

9  22 (1968); Stuart v. State, 94 Nev. 721, 722, 587 P.2d 33, 34 (1978); Jackson v. State, 90 Nev.

10  266, 267, 523 P.2d 850, 851 (1974); Rusling v. State, 96 Nev. 778, 781, 617 P.2d 1302, 1303

11  (1980).

12      In Ramirez v. City of Reno, 925 F.Supp. 681 (D.Nev. 1996) the plaintiff brought claims

13  pursuant to 42 U.S.C. § 1983 for, *inter alia*, violation of his Fourth Amendment right to be free

14  from unreasonable seizures. Id. at 684. There, Reno police officers approached the plaintiff and

15  another man in a field after receiving information that a possible stabbing suspect was located in

16  the field. Id. The officers detained the plaintiff and another man and subsequently brought the

17  plaintiff to a patrol vehicle to ensure plaintiff was not "criminally connected to the stabbing." Id.

18  When the officers determined that the plaintiff was not a suspect to the stabbing crime, he was

19  released. Id. The detention of the plaintiff did not last longer than 15 minutes. Id.

20      The court in Ramirez held that "[b]y itself, a brief investigatory detention is not

21  unconstitutional." Id. Indeed, the court noted "a police officer may detain a person for the

22  purpose of investigating possible criminal behavior, even absent the existence of probable cause

23  to arrest that person." Id. (citing Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1922-

24  23 (1972)); Terry, 392 U.S. at 22; Pellegrino v. U. S., 73 F.3d 934 (9th Cir. 1996)).

25      Here, the LVMPD Defendants are entitled to summary judgment on any claim for

26  unreasonable seizure because, at most, the LVMPD Defendants' detention of the Plaintiffs

27  amounted to a statutorily permissive investigatory detention. Jason admitted that his total

28  interaction (detention) by LVMPD lasted for less than one hour and estimated his detention by

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    the LVMPD officers was approximately 15 minutes, and the Fourth Amended Complaint admits

2    the Plaintiffs left the Venetian property at the same time. (Exh. A at pp. 193:16-25; 194:1-2; 4th

3    Amend. Compl. at p. 18, ¶ 98).  Officers Schaier and Scott responded to a call for service that a

4    crime was committed.  The Plaintiffs were in the security room when the officers arrived and the

5    Venetian Security officers told the LVMPD officers the Plaintiffs were trespassing and refused

6    to leave.  The LVMPD officers spoke with Venetian Security, then with the Plaintiffs, and

7    determined they would not arrest or issue a citation to the Plaintiffs.  In short, the LVMPD

8    Officers conducted an investigation, within one hour, as to whether the crime of trespass had

9    occurred.  Such a detention is well-within the parameters of Nevada Revised Statute 171.123

10   and, therefore, the LVMPD Defendants are entitled to summary judgment on any unlawful

11   seizure claim.

12              **4.      The Officers Did Not Deny Plaintiffs Due Process.**

13          To argue violations of procedural and substantive due process, Plaintiffs must first meet

14   the threshold requirement of demonstrating a life, liberty or property interest protected by the

15   Constitution.  Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz, 24 F.3d 56, 66 (9th

16   Cir. 1994); Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998).  The Court need

17   not address the Plaintiffs' substantive due process claims, as those claims are adequately covered

18   by the Plaintiffs' First Amendment claims.  See Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th

19   Cir. 2001)(quoting Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir. 1996)( "If, in a § 1983

20   suit, the plaintiff's claim can be analyzed under an explicit textual source of rights in the

21   Constitution, a court should not resort to the 'more subjective standard of substantive due

22   process.'")).

23          The procedural component of the due process clause protects rights created by state law

24   and guarantees that no significant deprivation of life, liberty, or property will take place until

25   notice has been provided and the individual has a meaningful opportunity to be heard. Cleveland

26   Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The

27   fundamental elements of procedural due process are notice and an opportunity to be heard. See

28   e.g., Yellow Freight Systems, Inc. v. Martin, 954 F.2d 353, 357 (6th Cir.1992).

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    A plaintiff can make a procedural due process claim through one of two methods: "(1)

2    [by] demonstrating that he is deprived of [liberty or] property as a result of [an] established state

3    procedure that itself violates due process rights; or (2) by proving that [d]efendants deprived him

4    of [liberty or] property pursuant to a 'random and unauthorized act' and that available state

5    remedies would not adequately compensate for the loss." Macene v. MJW, Inc., 951 F.2d 700,

6    706 (6th Cir.1991). Essentially, a due process claim requires the deprivation of a constitutionally

7    protected liberty or property interest, and a denial of adequate procedural protection. Krainski v.

8    Nevada ex rel. Regents of Nevada Sys. Of Higher Educ., 616 F.3d 963, 970 (9th Cir.

9    2010)(citing Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th

10   Cir.1998)).

11       Here, the Plaintiffs' procedural due process claim fails because the Plaintiffs were not

12   denied adequate due process. Indeed, the Plaintiff were given an opportunity to explain their

13   version of the incident to the LVMPD Defendants and, based upon their statements, the LVMPD

14   Defendants chose not to take any enforcement action. As such, their liberty interest in engaging

15   in protected speech on a public forum was not abridged. Instead, and as explained herein, the

16   LVMPD Officers simply responded to a call for service, investigated the allegations, determined

17   no law enforcement action was necessary, then issued a warning that the Plaintiffs were

18   trespassed from Venetian property. Indeed, the actual warning does not state the Plaintiffs are

19   prevented from performing on the public sidewalk and, as such, it cannot be argued their liberty

20   interests were even violated. As such, the procedural due process claim fail.

21                    **5.    The Plaintiffs' Conspiracy Claim Fails.**

22       The Plaintiffs allege the LVMPD Defendants conspired with the Venetian Defendants to

23   deprive the Plaintiffs' of certain First Amendment rights by failing to make independent

24   determinations of probable cause to arrest, that there is a meeting of the minds that the Venetian

25   can regulate free speech on the sidewalk, and that LVMPD has a policy or practice to arrest or

26   cite individuals engaged in free speech at the request of the Venetian." (Fourth Amend. Compl.

27   p. 26, ¶¶ 144-145).

28   / / /

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    In order to establish a claim for conspiracy to deprive a person of his civil rights, a

2    plaintiff must prove *inter alia*, that a meeting of the minds occurred between two or more

3    persons to deprive Plaintiff of his civil rights. See <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir.

4    2002). Moreover, the plaintiff must demonstrate a deprivation motivated by some racial or other

5    class-based, discriminatory animus for the conspirators' conduct and the plaintiff must be a

6    member of the discriminated class. <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045 (9th Cir.

7    2002).

8                    **a.      The Plaintiffs failed to demonstrate a meeting of the minds.**

9    First, the Plaintiffs' conspiracy claim fails because there is absolutely no evidence that

10   the LVMPD Defendants had a "meeting of the minds" to deprive the Plaintiffs, or people

11   similarly situated, of their First Amendment rights. Indeed, neither Plaintiff could provide any

12   testimony as to this alleged meeting of the minds. (Exh. A at p. 181:16-25 and Exh. B at pp.

13   40:24-25; 41:1-22). Indeed, there has been absolutely no showing of any such meeting of the

14   minds or discussions in furtherance of any such conspiracy. In fact, LVMPD issued an opinion

15   to CCAC officers specifically noting that it will not take *any* enforcement action for such claims

16   of trespassing or other violations on the sidewalk unless it received a court order. (**Exhibit H**).

17

18                   **b.      The Plaintiffs failed to demonstrate any deprivation motivated
                     by some racial or class-based, discriminatory animus.**

19   Notwithstanding the fact the Plaintiffs failed to demonstrate a meeting of the minds, the

20   conspiracy claim fails fail because the Plaintiffs failed to demonstrate any racial or class-based

21   discriminatory animus. Indeed, the Plaintiffs have offered no admissible evidence that the

22   actions of the LVMPD Defendants were part of some class-based, discriminatory regime. Ofc.

23   Scott and Ofc. Schaier both testified they responded to the call for service, conducted an

24   investigation into the trespass claims, then made a determination that the Plaintiffs would neither

25   be arrested nor cited because of the uncertainty as to the location of the alleged trespass. The

26   Plaintiffs were issued a warning – not a citation – and therefore, were never deprived of

27   anything. If a conspiracy truly existed, the Plaintiffs would have been arrested or cited.

28   However, the LVMPD Defendants did exactly opposite of the allegations in the Fourth Amended

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

1  Complaint, in that they conducted an investigation and determined no enforcement action would

2  be taken.  Thus, there is simply no support for a civil conspiracy claim under Section 1983.

3        **C.**  **ALL CLAIMS AGAINST SHERIFF DOUGLAS GILLESPIE FAIL AS A**
       **MATTER OF LAW BECAUSE THE PLAINTIFFS FAILED TO**

4             **DEMONSTRATE PERSONAL PARTICIPATION.**

5       At the outset, the LVMPD Defendants assert the Plaintiffs failed to demonstrate personal

6  participation on the part of Sheriff Gillespie *vis a vis* the alleged constitutional violations and,

7  therefore, the claims must be dismissed.  It is undisputed that "[l]iability under section 1983

8  arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d

9  1040, 1045 (9th Cir. 1989) (citing Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)); see also

10  May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Monell v. Dept. of Soc. Serv., 436 U.S. 658

11  (1978).  Further, there is no respondeat superior liability under section 1983.  Monell, 633 F.2d

12  at 167.  Indeed, a supervisor can only be liable for violations caused by subordinates if the

13  "supervisor participated in or directed the violations, or knew of the violations and failed to act

14  to prevent them." Taylor, 880 F.2d at 1045.

15       In Taylor, a Nevada state prisoner filed a section 1983 claim against prison officials,

16  alleging various constitutional violations. 880 F.2d at 1042-43.  Specifically, the plaintiff named

17  the Attorney General for the State of Nevada and the Director of the Nevada State Department of

18  Corrections as defendants.  Id. at 1043-1045.  Upon review of the district court's grant of

19  summary judgment against the plaintiff for his section 1983 claims, the Ninth Circuit upheld the

20  district court' s dismissal of the Attorney General and Director.  Id. at 1045.  Because the

21  Attorney General and Director were not "directly responsible" for the alleged deprivation or

22  conduct, liability under section 1983 could not attach.  Id.  Though the plaintiff attempted to

23  raise an issue of fact in his affidavit opposing the motion for summary judgment, the Circuit

24  Court affirmed the district court's decision finding a "summary judgment motion cannot be

25  defeated by relying solely on conclusory allegations unsupported by factual data."  Id. (citing

26  Angel v. Seattle-First Natl. Bank, 653 F.2d 1293, 1299 (9th Cir. 1981)).

27  / / /

28  / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Here, the Plaintiffs have offered no evidence that Sheriff Gillespie personally participated

2  in any of the alleged constitutional deprivations.  In fact, both Plaintiffs admitted that Sheriff

3  Gillespie was never present during the interaction.  Sheriff Gillespie was never present during

4  the investigation or detention and, therefore, cannot be liable.  As such, all claims against Sheriff

5  Gillespie must be dismissed.

6
7  **D.    OFFICERS SCHAIER AND SCOTT, AT THE VERY LEAST, ARE ENTITLED TO QUALIFIED IMMUNITY.**

8  Notwithstanding any constitutional violations, government officials sued in their

9  individual capacities under § 1983 may raise the affirmative defense of qualified immunity,

10  which protects them in the course of performing the discretionary duties of their offices.  <u>See</u>

11  <u>Butler v. Elle</u>, 281 F.3d 1014 (9th Cir. 2002).  Traditionally, the court must determine whether a

12  constitutional violation occurred at the hands of governmental officials when initially analyzing a

13  claim of qualified immunity.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 203 (2001).  If a constitutional

14  violation did occur, the court must then determine: (1) whether the violated right was clearly

15  established; and (2) whether a reasonable public official would have believed that the particular

16  conduct at issue was lawful.  <u>See</u> <u>Butler</u>, 281 F.3d at 1021 (citing <u>Sondoa v. Cabrera</u>, 255 F.3d

17  1035, 1040 (9th Cir. 2001)).  Recently, the Supreme Court addressed the applicability of the

18  <u>Saucier</u> two-step analysis and determined that district courts have discretion to determine the

19  order the two-step analysis is evaluated:

20  [T]he district courts and the courts of appeals should be permitted to exercise their
21  sound discretion in deciding which of the two prongs of the qualified immunity
    analysis should be addressed first in light of the circumstances in the particular
22  case at hand.

23  <u>Pearson v. Callahan</u>, -- S. Ct. --, 2009 WL 128768 (Jan. 21, 2009).  If neither the right was

24  clearly established nor a reasonable officer would have believed the particular conduct was

25  unlawful, the defendant is then entitled to dismissal/summary judgment because the doctrine of

26  qualified immunity is immunity from suit rather than a mere defense to liability.  <u>See</u> <u>Lombardi</u>,

27  117 F.3d at 1122.

28  / / /

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Plaintiff must demonstrate that the officer's actions violated clearly established law.

2  "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the

3  right must be sufficiently clear that a reasonable official would understand that what he is doing

4  violates the right.'" Wilson v. Layne, 526 U.S. 603, 614-15 (quoting Anderson v. Creighton, 483

5  U.S. 635 (1987)).  This requires that the unlawfulness of the action "must be apparent." Hope v.

6  Pelzer, 536 U.S. 730, 739 (2002)(quoting Anderson, 483 U.S. at 640).  Thus, the salient question

7  is whether the state of the law in July 2005 gave the officers fair warning that their actions were

8  unconstitutional. See Hope, 536 U.S. at 741.  In the context of this case, the qualified immunity

9  inquiry requires this Court to consider whether, under the circumstances, it was reasonable for

10  the officers to conduct an investigation into the allegation of the crime of trespass and whether

11  the Plaintiffs' right to not receive a trespass warning was clearly established.  See Beier v. City

12  of Lewiston, 354 F.3d 1058, 1068 (9th Cir. 2004).

13    Officers Scott and Schaier are entitled to qualified immunity because Nevada law allows

14  police officers to conduct an investigatory detention and there is no question the officers had a

15  reasonable suspicion that the Plaintiffs committed the crime of trespass because when they

16  arrived on the property, the Plaintiffs were on the property of Venetian and the officers were

17  advised the Plaintiffs were trespassing.   To hold the officers liable for conducting an

18  investigatory detention would require this Court to prevent officers from conduct an

19  investigation and simultaneous investigatory detention unless the officers personally observed

20  the alleged criminal violation.   This is certainly not the desired conduct of Nevada's

21  investigatory detention statute and a ruling finding the officers' conduct unlawful would

22  unreasonably restrict law enforcement's ability to investigate crimes.   Likewise, there is no

23  controlling case law establishing a law enforcement officer cannot issue a warning to a suspect

24  for trespassing when the suspect was verbally trespassed by an agent of the land owner, in the

25  presence of the officer. As such, Ofc. Schaier and Ofc. Scott are entitled to qualified immunity.

26  / / /

27  / / /

28  / / /

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

E.    **THE PLAINTIFFS' MUNICIPAL CLAIMS FAIL AS A MATTER OF LAW.** [1]

Liability for Section 1983 claims against a municipality requires that a plaintiff who has suffered a violation of his rights as guaranteed by the United States Constitution demonstrate that the municipality promulgated a policy, practice, custom or scheme which is the actual cause of the allegedly underlying constitutional violation. See Monell, 436 U.S. 658.

As discussed above, the Plaintiffs cannot show they suffered any constitutional violation at the hands of the LVMPD Defendants. As such, their Section 1983 claims against LVMPD fail on this basis alone. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)("[i]f a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the department regulations might have authorized the use of constitutionally excessive force is quite beside the point."). However, even if the Plaintiffs did show a violation, they cannot establish that the violation was supported by a policy, practice, custom or scheme of LVMPD.

Under Monell, Plaintiffs' claims must satisfy a total of four conditions: (1) that Plaintiffs possessed a federal right which an officer, acting under the color of state law, violated; (2) that LVMPD had a policy; (3) that this policy "amounts to deliberate indifference" to Plaintiffs' constitutional rights; and (4) that the policy was the "moving force" behind the violation. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1987). There must be **significant** evidence to show that a policy existed specifically authorizing or condoning the alleged practice. Davis v. City of Ellensburg, 869 F.2d 1230 (9th Cir. 1989).

On the quantum of proof necessary for a municipal liability suit, the Supreme Court concluded that "considerably more proof than the single incident will be necessary to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." Nadell v. Las Vegas Metropolitan Police Dept., 268

---

[1] To the extent the Plaintiffs allege a "failed investigation" claim, the same is untenable. The Ninth Circuit has held that there is "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." Gomez v. Whitney, 757 F.2d 1005 (9th Cir. 1985). There is no constitutional right for a citizen to instruct a police officer on how to conduct an investigation.

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    F.3d 924 (9th Cir. 2001).  Such a policy must result from a deliberate choice made by a policy-

2    making official, and may be inferred from a widespread practice or "evidence of repeated

3    constitutional violations for which the errant municipal officers were not discharged or

4    reprimanded."  Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992).  "Only if a plaintiff

5    shows that his injury resulted from a 'permanent and well settled' practice may liability attach

6    for injury resulting from a local government custom."  McDade v. West, 223 F.3d 1135, 1141

7    (9th Cir. 2000)(quoting Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989)).

8         Here, Plaintiffs' Monell claims require the alleged deprivation come directly from a plan

9    or policy of LVMPD.  See Jones v. Smith, 784 F.2d 149 (2d Cir. 1986).  Plaintiffs cannot

10   recover from LVMPD without proof that some extant policy, custom or practice caused the

11   constitutional deprivation.  There is no such evidence in this case.  LVMPD has never

12   promulgated a policy whereby its officers are caused or encouraged to deprive others of their

13   civil rights in a manner alleged by the Plaintiffs.  Further, there is no evidence, short of

14   Plaintiffs' personal opinions, that LVMPD endured a practice or ratified a *de facto* policy

15   causing or encouraging unconstitutional practices.  In fact, Plaintiffs never identify, characterize,

16   or state a policy, practice, custom or scheme of LVMPD which caused the alleged constitutional

17   deprivation and, instead, rely on their nebulous assertions of such a policy, practice, custom or

18   scheme in the amended pleadings.  There is absolutely no evidence offered to indicate LVMPD

19   maintained an unconstitutional policy *vis a* vis the Plaintiffs' claims because no such policy or

20   practice exists.  In fact, the documents disclosed in this matter demonstrate LVMPD takes the

21   exact opposite position.  (Exh. H, LVMPD (Perez-Morciglio) 1139-1141).  Furthermore,

22   Plaintiff Jason admitted during his deposition LVMPD officers informed other casino security

23   personnel that persons engaged in free speech have a right to be on the public sidewalk. (Exh. A

24   at pp. 48:1-9).  Thus, Plaintiffs failed to establish a claim for municipal liability.  Since the

25   touchstone of municipal liability under Section 1983 is the existence of a custom or policy

26   responsible for the constitutional deprivation, and no such policy exists, Plaintiffs claims against

27   LVMPD are without merit and must be dismissed.

28   / / /

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM

1

IV.    **CONCLUSION**

2        Given the foregoing, the LVMPD Defendants respectfully request the Court grant

3  summary judgment on all claims in favor of the LVMPD Defendants and against the Plaintiffs.

4  There are no genuine issues of material fact and the LVMPD Defendants are entitled to judgment

5  as a matter of law.

6        Dated this 2 3 day of May, 2011.

7

8                                            MARQUIS AURBACH COFFING

9

10                                           By
                                                Nick D. Crosby, Esq.
11                                              Nevada Bar No. 8996
                                                10001 Park Run Drive
12                                              Las Vegas, Nevada  89145
                                                Attorney(s) for LVMPD Defendants
13

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

M&A:05166-462 1355989_1.DOC 5/23/2011 11:41 PM