Allen Lichtenstein, Bar No. 3992
lichtenstein@aclunv.org
Margaret A. McLetchie, Bar No. 10931
mcletchie@aclunv.org
ACLU OF NEVADA
601 South Rancho Dr. Suite B-11
Las Vegas, NV 89106

*Attorneys for Plaintiffs*
*Jason and Sebastian Perez-Morciglio*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jason A. Perez-Morciglio and Sebastian Perez-Morciglio,<br>           Plaintiffs,<br>   vs.<br><br>Las Vegas Metropolitan Police Department; Sheriff Douglas Gillespie (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); Las Vegas Metropolitan Police Department Officers T. Scott and S. Schaier, Sergeant Kendall Bell (in their individual capacities); Las Vegas Sands Corp., a Nevada Corporation; Venetian Casino Resort, LLC, a Nevada Limited Liability Company; Venetian Security Guard Eli Castro; Venetian Security Guard Linda Hagenmaier; Venetian Security Guard Ron Hicks; Venetian Security Guard William Lovegren; Venetian Security Guard Anthony Bronson; and Venetian Security Guard Kevin Neanover; Venetian Security Guard Kim Gorman; Venetian Security Guard Paul Tanner; and Executive Director of Security Tony Whiddon,<br>           Defendants. | Case No.:   2:10-CV-00899-PMP-RJJ<br><br>**OPPOSITION TO DEFENDANT LAS VEGAS SANDS' MOTION TO COMPEL AND PLAINTIFFS' CROSS MOTION FOR SANCTIONS** |

      Plaintiffs Jason Perez-Morciglio and Sebastian Perez-Morciglio by and through their counsel hereby file the following Opposition to Defendant Las Vegas Sands' Motion to Compel.

**INTRODUCTION**

Defendants Las Vegas Sands Corp. and Venetian Casino Resort, LLC (collectively, "LVS"), without first adequately meeting and conferring, moved this Court for an order compelling Plaintiffs "to produce a factual narrative drafted by Plaintiffs just a few hours after the occurrence of the incident upon which this case is based." (LVS Motion to Compel (Dckt. # 60) at p. 2). After Plaintiffs' counsel was finally able to reach counsel for LVS to discuss the issues, Plaintiffs produced the narrative sought in LVS's motion to compel. Additionally, they have also produced the portion of an ACLU of Nevada intake form that contains a factual narrative. Now, despite the fact that Plaintiffs have produced the document sought by the Motion to Compel, LVS has not yet agreed to withdraw the motion, making this opposition brief necessary.

While LVS refuses to withdraw the Motion to Compel, it has not explained what, if any, outstanding issues remain (and, indeed, it is hard to imagine what issues could). Plaintiffs produced documents in the spirit of cooperation and in the hopes of avoiding the expenditure of unnecessary resources. However, Defendants' Motion to Compel arguments that no attorney-client privilege applies to the factual narrative sought are contrary to established precedent. Defendants failed to satisfy the meet-and-confer requirement in Local Rule 26-7 before bringing discovery issues to this Court's attention. Even worse, LVS still refuses to cooperate by withdrawing their motion despite the fact that Plaintiffs have produced the document sought by the Motion to Compel – as well an additional narrative. For all these reasons, the Court should deny the Motion to Compel and sanction LVS.

**FACTUAL AND PROCEDURAL HISTORY**

**The Factual Narrative and ACLU of Nevada Intake Form**

Shortly after the incident at the Venetian that gave rise to this litigation, on January 15, 2011, Plaintiffs returned to the apartment they shared and submitted an online request for legal assistance from the ACLU of Nevada. The form is an online template which prospective ACLU of Nevada clients complete to request legal help. *See* attached Declaration of Margaret A. McLetchie at ¶ 1.

In addition to submitting the legal request form, Jason and Sebastian Perez-Morciglio created an email version in order to seek legal assistance to address the mistreatment they suffered on January 15, 2010, saving the summary they created by emailing it between each other. *See* Ex. M to McLetchie Decl. (Sebastian Perez-Morciglio Depo. Tr. at 64:6-66:18). As detailed below, the intake form and the email were both prepared for the purpose of seeking legal advice.

**History of Production and Communications Between Counsel**

On March 28, 2011, Plaintiffs produced responses and objections to LVS's request for production – along with the responsive documents and a privilege log. Plaintiffs do not dispute that the production and objections and responses were somewhat late; neither Plaintiffs nor Defendants have been strict about absolute technical adherence to discovery deadlines in this case. Indeed, LVS asked for and received an extension of the initial deadlines for requests for production, produced the *documents* actually sought by Plaintiffs' requests in trickling fashion, and only recently finally completed their production. *See* McLetchie Decl. at ¶ 2, Exs. A and B.

With respect to Plaintiffs' responses, Plaintiffs' counsel informed counsel for LVS ("LVS counsel") that there would be a delay in production. McLetchie Decl. at ¶ 3, Exs. C and D. LVS did not object to any delay. *Id.* Yet, suddenly, LVS now argues that because Plaintiffs did not

respond to its Requests for Production by the initial deadlines, Plaintiffs waived any privilege objections to the documents sought in LVS's Motion to Compel.

On April 15, 2011, during a meet and confer counsel Plaintiffs had arranged, and circulated an agenda regarding beforehand, counsel for LVS mentioned that they wanted the factual narrative Sebastain Perez-Morciglio mentioned during his testimony and raised questions for the first time regarding the dates of entries on the log.  McLetchie Decl. at ¶ 4, Ex. E.  Counsel for Plaintiffs surmised that perhaps there was an error on the privilege log, and agreed to look into it.  *Id.*

On May 2, 2011, Counsel for Plaintiffs emailed counsel for LVS explaining errors on the privilege and noting that, like the intake request form to the ACLU of Nevada, the subsequent email narrative was also privileged because it was prepared for the purpose of seeking legal advice.  McLetchie Decl. at ¶ 5, Ex. F.

Counsel for LVS never responded to the May 2, 2011 email and never initiated any actual discussion of the issue; instead the Motion to Compel was filed.  McLetchie Decl. at ¶ 6.

Plaintiffs then produced a revised log on May 7, 2011, correcting date errors and more fully describing documents, including the factual narrative sought by LVS, and the bases for withholding them.  McLetchie Decl. at ¶ 7, Ex. G.

Counsel for Plaintiffs has reached out to counsel for Plaintiffs numerous times to try to discuss the motion to compel.  *Id*. at ¶ 8.  However, one of LVS's attorneys stated that he could not address questions and the other, Mr. Lionel, was difficult to reach.  Finally, Plaintiffs' counsel was able to reach Mr. Lionel on May 17, 2011.  *Id*.  Counsel for Plaintiffs agreed to produce the narrative sought, and explained the nature of the intake form that was also withheld.  *Id.*

On May 18, 2011, Plaintiffs produced both the narrative email and a redacted version of the intake form, as well as updated privilege and confidentiality logs as well as a redaction log. *Id.* at ¶¶ 9-10; Exs. H, I, and J.  Counsel for Plaintiffs then contacted counsel for LVS asking them to confirm whether they would withdraw the Motion to Compel, given that the deadline was looming.  *Id.* at ¶ 11, Ex. K.  Again, Mr. Lionel was hard to reach and Mr. Hernquist could not make any agreement to withdraw the motion to compel, although he agreed to extend the deadline for the opposition while Mr. Lionel weighed whether to continue pursuing the Motion to Compel.  At this time, the narrative that was the subject of the motion to compel and the redacted intake form had already been produced.

On the morning of Monday, May 23, 2011, Counsel for Plaintiffs spoke with Mr. Lionel and again explained the recent production and asked Mr. Lionel to withdraw the now-moot motion.  *Id.* at ¶ 11.  Mr. Lionel said he would decide later that day.  *Id.*  However, later that day, he emailed directing counsel for Plaintiffs to file their opposition and refusing to decide about withdrawing his motion until after it was filed.  *Id.*, Ex. K.  No continuing concerns regarding Plaintiffs' production were detailed.

**ARGUMENT**

**The Motion to Compel Is Moot and Should Be Stricken**

As described fully above, the object of LVS's motion to compel has been produced, rendering it moot.  Other than to harass opposing counsel and waste time and resources, there is no conceivable reason for refusing to withdraw it.  As noted above, no continuing concerns by LVS have been raised.

**LVS Failed to Meet and Confer, and Refused to Withdraw the Motion to Compel in Bad Faith.**

"[I]n order to bring a proper motion to compel . . . a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170 (1996) (citing *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118 (D. Nev. 1993)) (Johnston, J.).  LVS never pursued meaningful discussion regarding the factual narrative that is the basis of the Motion to Compel.  If they had, the Motion would not have been necessary given Plaintiffs' willingness to compromise and their efforts to both correct errors on the privilege log and to produce contested documents.

The purpose of the meet-and-confer requirement is "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants."  *United States v. Davis*, 2006 WL 2987915 at *1 (D. Nev. 2006) (citing *Nevada Power*, 151 F.R.D. at 120).   Here, LVS's refusal to appropriately meet and confer and refusal to withdraw the Motion to Compel has created unnecessary burdens on Plaintiffs as well as this Court.

"[To satisfy the meet-and-confer requirement], the parties must present to each other the merits of their respective positions *with the same candor, specificity, and support* during informal negotiations as during the briefing of discovery motions.  Only after *all the cards* have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a 'sincere effort' to resolve the matter."  *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993) (emphases added).  For example, LVS did not present the concerns it laid out in the Motion to Compel regarding so-called discrepancies in Plaintiffs' recollections of the incident.  Had Defendant's counsel done so, motion practice would have been unnecessary.

All LVS did was ask for a document and alert Plaintiffs regarding concerns about a privilege log. In response, Plaintiffs agreed to produce a revised log and explained their position. What came next? No actual discussion – just a Motion to Compel. This is not the meaningful engagement that is necessary before demanding court intervention. In *Shuffle Master*, *supra*, Magistrate Judge Johnston found that a "series of facsimiles sent by [the moving party's] counsel [did] not satisfy" the meet-and-confer requirement. Magistrate Judge Johnston noted that the moving party had never "personally discussed with opposing counsel a reasonable resolution to their discovery dispute other than" once informing the opposing party that its discovery responses were incomplete. 170 F.R.D. at 172; *see also id.* at 173 (disapproving of the fact that the moving party, "rather than negotiat[ing] a reasonable solution, . . . merely demanded supplemental discovery"). No reasonable solution was ever discussed, although Plaintiffs bent over backwards to try to reach one – first by revising the log and then by producing the requested document.

**LVS Should Be Sanctioned.**

LVS's refusal to discuss the issues at hand, and to cooperate in their resolution is worthy of sanctions. Rather than engage in meaningful meet and confer, counsel for LVS played a cat-and-mouse game, first by refusing to inform counsel for Plaintiffs as to whether they would agree to withdraw the motion, and then by announcing—the day before the opposition was due under the stipulation—that no decision would be made until the opposition was filed. This appears to be a blatant attempt to waste resources, with Plaintiffs' counsel stuck between not wanting to waste resources on unnecessary motion work and not wanting to miss deadlines.

Under Federal Rule of Civil Procedure 11, a court should impose sanctions upon the signer of a paper if "the paper either is filed for an improper purpose or is frivolous." *Nugget*

*Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (citing *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). A filing is "frivolous" if it is baseless or "made without a reasonable and competent inquiry." *See Townsend*, 929 F.2d at 1362 ("Either the improper purpose or frivolousness ground is sufficient to sustain a sanction . . . .").

Here, LVS's filing of the Motion to Compel was done without "reasonable and competent inquiry." Even more egregious, LVS has refused to withdraw its motion after Plaintiffs produced the documents sought. This decision is baseless, as the Motion to Compel is now moot. It also has been in the service of an improper purpose—namely, harassing Plaintiffs' counsel and depleting its resources (which, as LVS counsel knows, are far more limited than its own resources).

As previously noted, if LVS counsel had followed Local Rule 26-7 and presented the concerns laid out in its Motion to Compel regarding so-called discrepancies in Plaintiffs' recollections of the incident and of when they contacted the ACLU, the motion would have been unnecessary. For that reason, LVS counsel's inquiry cannot be considered competent.

The mootness of LVS's Motion to Compel at this point renders its counsel's decision not to withdraw the motion improper, and the motion itself baseless. Once Plaintiffs' counsel produced the factual summaries sought, and provided a log demonstrating that redacted text in the produced documents was non-responsive, LVS counsel continued to refuse to inform Plaintiffs' counsel about whether it would withdraw the Motion to Compel—only to write the day before the opposition was due, "File your opposition and I will let you know whether I will withdraw our motion." *See* Ex. K to McLetchie Decl. Plaintiffs' counsel frankly did not expect to file the present Opposition because it did not expect LVS counsel to be so uncompromising—

particularly when it was not actually being *asked* to compromise.  Plaintiffs have produced every document, and every word, responsive to LVS's Motion to Compel, regardless of its status as privileged.  The only conceivable reason that Plaintiffs must still respond to LVS's Motion to Compel is because LVS counsel is committed to scorched earth litigation, no matter how wasteful it is of Plaintiffs' and the Court's time.

**The Materials Sought Were Justifiably Withheld.**

While Plaintiffs agreed to produce the factual narrative requested—and also the factual portions of an ACLU of Nevada intake form—the materials were covered by privilege.   Further, the materials that were redacted from the intake form are not only properly withheld, the ACLU of Nevada work product is not even responsive.[1]

Defendants' arguments detailed in the Motion to Compel are unavailing.  First, the email narrative sought is an attorney-client privileged request for legal assistance, as is the intake form to the ACLU of Nevada.  LVS mistakenly argues that such materials are not privileged because they were "drafted for the purpose of preserving the [Plaintiffs'] memory of the incident," and not "for the purpose of facilitating the rendition" of legal services.  Mot. to Compel, p. 8 (citations omitted).  To make this argument, Defendants rely on misconstruing the deposition testimony of one Plaintiff, Sebastian Perez-Morciglio ("Sebastian"), and ignoring the deposition testimony of the other Plaintiff, Jason Perez-Morciglio ("Jason").

LVS cites Sebastian's testimony for the claim that the email was drafted to help the Plaintiffs remember the incident.  Mot. to Compel, p. 8.  Specifically, it emphasizes the part of

---

[1] The remaining item on Plaintiffs' privilege log – the response to the request for legal assistance – is both privileged and non-responsive.

Sebastian's deposition testimony where he stated, "That's why I tried to write everything down as quickly as possible[,] so we wouldn't forget it." *Id.* at 4 (quoting Sebastian Perez-Morciglio Depo. Tr. at 121:1-3).  While Sebastian certainly wanted to write down his account of the incident as soon as possible (because, as he stated, "when time passes, you remember less"), the email was not a mere attempt to remember what happened, any more than going to an attorney's office immediately after an incident would constitute such a mere attempt.  The deposition of Plaintiff Sebastian Perez-Morciglio in fact makes clear that the purpose of the summaries was to get legal assistance.  In response to the question "When you wrote down the information on the date of the incident when you went home with your brother, was the information written down for the purpose of seeking legal help?," Sebastian answered "Yes" (over objection from LVS's counsel).

Jason's testimony is very clear about the purpose of the factual summaries.  He states that immediately after the event he "wrote an e-mail" to the ACLU because he "found out . . . that they would support people that had been unjustly treated, and they would protect them in their rights . . . ." Ex. L. to McLetchie Decl. (Jason Perez-Morciglio Depo. Tr. at 21:25-22:2, 29:21-23. The narratives were not written in a word processing program and intended as a journal entry.  They were written in the first instance as an electronic *communication* to the ACLU of Nevada to get legal help because the Plaintiffs felt that their rights had been violated.  The email was another version of that summary and another effort to preserve information to aid in seeking legal assistance.  Sebastain Perez-Morciglio Depo. Tr. at 64-6-66:18.

The intake form and the email summary both constitute a request for legal assistance, and is protected by the attorney-client privilege.  According to LVS, "[f]actual accounts of underlying events are not protected by the attorney client privilege." Mot. to Compel, p. 9.  For

this proposition, LVS relies on a Middle District of Pennsylvania case that fails to cite *any* supporting precedent for this assertion. *Id.* (citing *United States Fidelity & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992)). More salient than the strange theories of a single Middle District of Pennsylvania judge, for the purpose of evaluating Defendants' Motion to Compel, is the United States Supreme Court, which has stated: "[A] client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) (citation omitted). Here, Defendants are asking this court to compel Plaintiffs to disclose what they wrote to their attorneys. A clearer violation of the attorney-client privilege would be difficult to find.

Second, the tardiness of Plaintiffs' objections to LVS's requests for production does not constitute a waiver of privilege. Most fundamentally, as detailed above and in the supporting Declaration (at ¶¶ 1-2), the delays were par for the course and accepted by counsel for LVS. In any case, Plaintiffs produced responses, objections, documents, and logs in a timely fashion. LVS's own production has been far slower. Finally, any delay is entirely unlike the types of delays that have been found to constitute a waiver. *See, e.g., Buillon Monarch mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643 (D. Nev. 2010) (addressing a year-long delay).

Third, the inadvertent mistake on the privilege log does not constitute a waiver of privilege. The "harsh sanction" that a party must produce privileged documents during discovery is "reserved for cases of unjustified delay, inexcusable conduct, or bad faith." *Trustees of Electrical Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 9 n.8 (D.D.C. 2010); *see also Applied Sys., Inc. v. No. Ins. Co. of New York*, 1997

WL 639235 (N.D. Ill. 1997) (stating that waiver of privilege is a "serious sanction" reserved for "flagrant violations").  It is not appropriate for "inadvertent mistakes on a privilege log." *Vento v. IRS*, 714 F. Supp. 2d 137, 152 (D.D.C. 2010); *see also Chalimoniuk v. Interstate Brands Corp.*, 2002 WL 1048826, at *3 (S.D. Ind. 2002) ("[A] mere mistake by counsel . . . in a privilege log does not necessarily amount to a waiver of a privilege.").

The inadvertence of the error on Plaintiffs' counsel's privilege log militates against punishing its clients by requiring that their request for legal assistance be disclosed.  *Trustees of Electrical Workers* is instructive in this regard.  In that case, a party petitioned the court to order the production of documents held by the plaintiffs that "were not accurately described on plaintiffs' initial privilege log." *Id.*  However, the court held that because "[t]here was no assertion that the mistakes in plaintiffs' privilege log were due to bad faith," it would not order the production of the documents on the basis of those mistakes.  *Id.*  As in *Trustees*, Plaintiffs' counsel made an error on its privilege log—suggesting that the Plaintiffs' first contact with the ACLU of Nevada was six days after the incident—but its error was a typographical one and not due to bad faith. Decl. of Margaret A. McLetchie, ¶¶ 4-5, 7. Indeed, as soon as Plaintiffs' counsel discovered the mistake, it fixed the privilege log and promptly sent it to the LVS.  The good faith that Plaintiffs have shown goes against a finding that they have waived the attorney-client privilege.

*/s/ Margaret A. McLetchie*_____
Margaret A. McLetchie, Bar No. 10931
mcletchie@aclunv.org
ACLU OF NEVADA
601 South Rancho Dr. Suite B-11
Las Vegas, NV 89106

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of May, 2011, I caused to be served a true and correct copy of the OPPOSITION TO DEFENDANT LAS VEGAS SANDS' MOTION TO COMPEL AND PLAINTIFFS' CROSS MOTION FOR SANCTIONS to all of the interested parties through the courts CM/ECF filing system.

Lionel Sawyer Collins
Sam Lionel
Robert Hernquist
1700 Bank of America Plaza
Las Vegas, NV 89101

Marquis Aurbach Coffing
Nick Crosby, Esq.
10001 Park Run Dr.
Las Vegas, NV 89145

　　　　　　　　　　　　　　　　　　　　*/s/ Tamika Shauntee*
　　　　　　　　　　　　　　　　　　　　An Employee of the ACLU of Nevada