1   Samuel S. Lionel, Nevada Bar No. 1766
    *slionel@lionelsawyer.com*
2   David N. Frederick, Nevada Bar No. 1548
    *dfrederick@lionelsawyer.com*
3   Robert Hernquist, Nevada Bar No. 10616
    *rhernquist@lionelsawyer.com*
4   LIONEL SAWYER & COLLINS
    1700 Bank of America Plaza
5   300 South Fourth Street
    Las Vegas, Nevada 89101
6   Telephone: (702) 383-8888
    Facsimile:  (702) 383-8845
7
8   *Attorneys for Defendants Las Vegas Sands*
    *Corporation, Venetian Casino Resort, LLC,*
    *Eli Castro, Linda Hagenmaier, William Lovegren,*
9   *Anthony Bronson, Kevin Neanover, Kim Gorman,*
    *Paul Tanner and Tony Whiddon*
10

11

12                  **UNITED STATES DISTRICT COURT**

13                      **DISTRICT OF NEVADA**

14   JASON A. PEREZ-MORCIGLIO and
     SEBASTIAN PEREZ-MORCIGLIO,              Case No. 2:10-cv-00899-PMP-(RJJ)
15
16        Plaintiffs,

17   vs.

18   LAS VEGAS METROPOLITAN POLICE          **DEFENDANTS LAS VEGAS SANDS CORP.**
     DEPARTMENT; SHERIFF DOUGLAS            **VENETIAN CASINO RESORT, LLC, ELI**
19   GILLESPIE (individually and in his official   **CASTRO, LINDA HAGENMAIER,**
     capacity as Sheriff of the Las Vegas   **WILLIAM LOVEGREN, ANTHONY**
     Metropolitan Police Department); LAS   **BRONSON, KEVIN NEANOVER, KIM**
20   VEGAS METROPOLITAN POLICE             **GORMAN, PAUL TANNER AND TONY**
     DEPARTMENT OFFICERS T. SCOTT and S.   **WHIDDON'S REPLY IN SUPPORT OF**
21   SCHAIER (in their individual capacities); LAS  **THEIR MOTION FOR SUMMARY**
     VEGAS SANDS CORPORATION, a Nevada     **JUDGMENT AND OPPOSITION TO**
22   corporation; VENETIAN RESORT HOTEL &   **PLAINTIFFS' COUNTERMOTION**
     CASINO, LLC, a Nevada limited liability
23   company; ELI CASTRO; LINDA
     HAGENMAIER; RON HICKS; WILLIAM
24   LOVEGREN; ANTHONY BRONSON;
     KEVIN NEANOVER; KIM GORMAN;
25   PAUL TANNER; and TONY WHIDDON

26        Defendants.

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

## I.   PRELIMINARY STATEMENT

The ACLU marches to its own drumbeat.  On June 16, 2011, Plaintiffs concurrently filed their Opposition and Countermotion to the defendants' (other than Metro) motion for summary judgment along with a separate motion for leave to file a brief not to exceed 60 pages (which stated that LVS would not oppose that motion).  (Docs. 92 & 95).  Plaintiffs' Motion for Leave to File Excess Pages was approved by the Court.  (Doc. 98).  The Opposition contains 73 pages, not 60.  (Docs. 95 & 97).

On May 23, 2011, the Court denied Plaintiffs' request to extend the deadline for dispositive motions.  (Doc. 79).  Notwithstanding, the Opposition also contains a countermotion for summary judgment under the rationale that Rule 56(f) permits the Court to grant summary judgment *sua sponte* and that good cause exists to retroactively extend the dispositive motion deadline.[1]  (Doc. 97 at 35:25-36:3).  It is apparent that the ACLU wishes to have the last word in the form of a reply brief.  Since the Opposition speaks to the same issues presented in LVS's motion for summary judgment, the Court should not permit it.

In their effort to make this a First Amendment case, and dispute the fact that Jason was soliciting and that he did not deny it, Plaintiffs cite (but do not quote) Jason's testimony.  The portion of Jason's deposition testimony cited by the ACLU to support this claim reads as follows:

Q.     What happened? What did he say, what did you say, what happened to you?
        Tell me your story.  Counsel calls it a narrative, but you can go ahead.

[Objection]

A.     Well, *his intentions* was for me to leave because I was in costume.

BY MR. LIONEL:
Q.     I don't mean to interrupt you. What did he say?

A.     Oh, what did he say?

---

[1]  If Rule 56(f) justifies filing untimely dispositive motions, then scheduling orders mean nothing.  Further, the ACLU also cites the wrong standard, arguing that "good cause" justifies their late filing.  Because the dispositive motion deadline had already passed at the time the Opposition was filed, in addition to establishing "good cause" the ACLU must also establish "excusable neglect" for why Plaintiffs failed to obtain an extension prior to the deadline.  FED. R. CIV. P. 6(b); LR 6-1(b).  *See also Jones v. Neven*, 2011 U.S. Dist. LEXIS 57548 at *3-4 (D. Nev. May 26, 2011).  The ACLU has not attempted to establish excusable neglect.  The countermotion should not be considered.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   Q.   Please.

2   A.   *I don't remember exactly what he said*.

3   Q.   I understand.

4   A.   But *I do know that his intention was* for me to leave because I was in costume.

Q.   But do you remember anything that he said to you at that time?

A.   Yes, I was dressed like—I was wearing a costume and that I was on private property and that I was not allowed to be—*that was what he was trying to say*. I was not allowed to be on public—on private property of the Venetian Hotel performing or dressed—a mask or dressed like a character.

(Jason Perez-Morciglio Depo. Tr. at 120:1-24, Doc. 93-3) (emphasis added).

Plaintiffs do not dispute their own declarations. (Doc. 97 at 15:6-7). Jason's declaration states:

On Friday, January 15, 2010, around 6:20 p.m., *I was dressed up as Zorro but was not performing* as I passed in front of Venetian Hotel & Casino.

(Doc. 80-3 at ¶ 4) (emphasis added). Similarly, the declaration of Plaintiff Sebastian Perez-Morciglio ("Sebastian") provides:

On Friday, January 15, 2010, around 6:20 p.m., I was accompanying my brother who was performing as Zorro on the sidewalk along Las Vegas Blvd. I was walking five to seven feet in front of him as we were passing the Venetian. As we passed the Venetian, *my brother was not performing as Zorro and I was not in costume*. We were just passing by.

(Doc. 80-6 at ¶ 3) (emphasis added).

## II.   LAW AND ARGUMENT

### A.   PLAINTIFFS' FIRST AMENDMENT CLAIMS SHOULD BE DISMISSED

The ACLU argues at length that Plaintiffs were engaged in "free expression" because Jason's black mask and cape was a "costume" and, after testifying he was "not performing" at the time in question, he then testified that his "performance" starts the moment he puts the "costume" on. (Doc. 97 at 53-60). However, the Ninth Circuit has recognized what common sense dictates, *i.e.* that a person does not have a First Amendment right to wear whatever attire they choose, merely because their "performance" occurs in a public forum. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 956 n.3 (9th Cir. 2008), citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

3

1    *Group of Boston*, 515 U.S. 557, 579 (1995).  Hence, it is hardly surprising the ACLU cites no

2    authority holding Jason's wearing of a black mask and cape during the evening hours on a "public"

3    sidewalk frequented by residents and tourists from around the world is protected by the First

4    Amendment.

5           Moreover, as the ACLU admits, Venetian security personnel asked Jason to leave only

6    after Lovegren personally observed Jason receiving money—which Jason calls a "tip"—after

7    giving a sword to a small boy on the "public" sidewalk.  (Doc. 97 at 9:1-8).  Both the Supreme

8    Court and the Ninth Circuit have long recognized that neither generic commercial transactions nor

9    the immediate receipt of money (including donations) on a public pedestrian thoroughfare is

10   conduct protected by the First Amendment.  *Helfron v. Int'l Soc'y For Krishna Consciousness*, 452

11   U.S. 640 (1981); *United States v. Kokinda*, 497 U.S. 720, 737-39 (1990) (Kenney, J. concurring);

12   *Int'l Soc'y For Krishna Consciousness v. Lee*, 505 U.S. 672, 703-709 (1992) (Kennedy, J.

13   concurring); *NMI Perry v. Los Angeles Police Dep't*, 121 F.3d 1365 (9th Cir. 1997); *One World

14   One Family Now v. City & County of Honolulu*, 76 F.3d 1009 (9th Cir. 1996); *Goudiya Vaishnava

15   Soc'y v. City & County of San Francisco*, 952 F.2d 1059 (9th Cir. 1991).[2]

16          In short, much of the ACLU's 73-page opposition to Venetian's summary judgment motion

17   has nothing to do with this case.  Unlike many First Amendment cases, this case does <u>not</u> concern

18   the validity of statutes, rules, regulations or ordinances, or the policies, practices and procedures of

19   the Venetian (or Metro) in other circumstances.  *See Sanders v. City of Seattle*, 156 P.3d 874, 886-

20   87 (Wash. 2007) (plaintiffs alleging interference with their First Amendment rights pursuant to an

21   oral directive on one specific occasion could not litigate validity of written regulations governing

22   location in question under "overbreadth" doctrine).  This case concerns one incident involving two

23   individuals—one in costume, one not—who claim they were "just passing by" Venetian on the

24

25          [2]  Supreme Court Justice Kennedy's concurring opinions in *Lee* and *Kokinda* are
     particularly important in light of the Ninth Circuit's reliance on his analysis in recent decisions
     recognizing that the First Amendment does not protect certain conduct associated with
26   solicitation (including the physical exchange of money) in a public forum.  *See Comite De
     Jornaleros De Redondo v. City of Redondo Beach*, 607 F.3d 1178, 1185-86 (9th Cir. 2010),
27   discussing the Ninth Circuit's reliance on Justice Kennedy's concurring opinion in *Lee* in *Berger
     v. City of Seattle*, 569 F.3d 1029, 1050-51 (9th Cir. 2009) (en banc) and *Am. Civil Liberties
28   Union of Nevada v. City of Las Vegas*, 466 F.3d 784, 794 & n.10, 795 (9th Cir. 2006).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

4

1  "public" sidewalk but nevertheless refused to leave Venetian's private property after Jason's

2  conduct exceeded First Amendment protections.

3      Long ago the Supreme Court rejected the ACLU's meritless notion that one cannot be cited

4  for trespass on a public sidewalk. (Doc. 97 at 64-70).  In *Adderley v. State of Florida*, 385 U.S. 39

5  (1966)—a case cited in Justice Kennedy's concurring opinion in *Kokinda*—the Supreme Court

6  affirmed criminal trespass convictions of demonstrators who defied an order to disperse after the

7  Supreme Court concluded their conduct was not protected by the First Amendment, emphasizing

8  that the state has the very same right to control the use of its own property for its own lawful

9  nondiscriminatory purposes as a private landowner.  Here, the ownership is reversed, but the legal

10  principle remains the same.

11      In the prior litigation, the Ninth Circuit held that the provisions of the 1999 Agreement

12  "constitute a dedication of the sidewalk to the public use" and "deprive the Venetian of its private

13  property right to block or otherwise impede public access to the sidewalk,"  thereby giving the

14  State of Nevada "a property interest in a portion of the Venetian's land, the purpose of which is to

15  guarantee unrestricted public passage along Las Vegas Boulevard." *Venetian Casino Resort LLC*

16  *v. Local Joint Executive Bd. of Las Vegas*, 257 F.3d 937, 946-47 (9th Cir. 2001).  But the Ninth

17  Circuit then recognized, what the ACLU now steadfastly ignores, *i.e.* that "the Venetian retains a

18  property interest other than that dedicated to the public" by the 1999 Agreement.  *Id.*  Thus

19  regardless of whether the State's property interest is characterized as a servitude, an easement, a

20  right of way, a restrictive covenant, or in some other fashion, once Jason engaged in conduct <u>not</u>

21  protected by the First Amendment and then both Jason and Sebastian (who was not in costume and

22  thus not "performing") refused to use the sidewalk for its dedicated public purpose, *i.e.* public

23  passage along Las Vegas Boulevard, they became subject to Nevada's trespass statutes, defeating

24  their claims in this litigation.[3] *Adderly v. State of Florida*, *supra*; *Sanders v. City of Seattle*, *supra*,

25

26  _____
    [3]    The ACLU also argues at length that plaintiffs' assertion of their alleged First
27  Amendment rights during the incident was protected expression.  (Doc. 97 at 60-63).  However,
    Jason asserted his alleged First Amendment rights after he was observed engaging in conduct not
28  protected by the First Amendment, i.e. collecting money on the "public" sidewalk and Sebastian
    (who was not in costume and thus was not "performing") not only confronted Venetian security
    personnel and refused to back off while they were attempting to secure the scene, but then both

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5

156 P.3d at 882-83 ("Trespass occurs upon the misuse or overburdening of an easement.").

**B.   PLAINTIFFS' CIVIL RIGHTS CLAIMS SHOULD BE DISMISSED AS AGAINST THESE DEFENDANTS**

The ACLU argues that Venetian and its personnel are state actors, invoking the "public function" and "joint action" bases for characterizing private parties as state actors.  (Doc. 97 at 41-52).

"To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental."  *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002).  There, the Ninth Circuit held that a lessee of city-owned land was a state actor in promulgating policies regulating speech on the leased land because regulating free speech activities on city-owned land is a traditionally and exclusively governmental function.  However, less than six years later, the Ninth Circuit held that a private association responsible for running a festival generally open to the public in a city park was <u>not</u> a state actor in securing the assistance of the city police in escorting members of a motorcycle club claiming to have a First Amendment right to be on city-owned land out of such a traditional public forum because of their "colors," *i.e.* their club insignia.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008).

The ACLU relies on this Court's declaration in the earlier litigation that:

> Thoroughfare sidewalks parallel to the main public street in a city that allow citizens to move from one part of the city to the next, have traditionally been exclusively owned and maintained by the government.  Consequently by owning and maintaining the particular sidewalk at issue in this case, the Venetian is performing a public function.

*Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas*, 45 F. Supp. 2d 1027, 1035 (D. Nev. 1999), *affirmed* 257 F.3d 937 (9th Cir. 2001).  However, the earlier litigation was instituted by the Venetian, seeking a determination as to its rights regarding the private walkway in question; state action and the Venetian's potential liability on civil rights claims were not at issue in the earlier litigation.

---

Jason and Sebastian refused to use the "public" sidewalk for its dedicated public purpose, i.e. public passage along Las Vegas Boulevard.  Not surprisingly, the ACLU cites no authority holding that asserting one's alleged First Amendment rights after engaging in conduct not protected by the First Amendment precludes being cited for the earlier conduct.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

6

1    In *Caviness v. Horizon Community Learning Ctr.*, 590 F.3d 806 (9th Cir. 2010), the Ninth

2    Circuit observed that merely because a private entity performs a function which serves the public

3    does not make its acts state action under 42 U.S.C. §1983.  *Caviness*, 590 F.3d at 815.  Indeed, the

4    ACLU's notion—that Venetian is a state actor simply because its private sidewalk performs a

5    public function—would make every homeowner with a public sidewalk running across its property

6    a state actor!  Rather, as *Caviness* discusses at considerable length, one must identify the specific

7    conduct of which the plaintiff complains and then ascertain whether there is such a close nexus

8    between the state and the challenged action that seemingly private behavior may be fairly treated

9    as that of the state itself.  *Caviness,* 590 F.3d at 812-18.

10    A private landowner may be subject to liability for injuries occurring on private property

11    that is part of a public sidewalk.  *See Herndon v. Arco Petroleum Co.*, 91 Nev. 404, 536 P.2d 1023

12    (1975) (owner of private driveway that is part of a public sidewalk responsible for maintaining that

13    portion of public sidewalk in a reasonably safe condition for pedestrians); *cf.*, *Wiseman v.*

14    *Hallahan*, 113 Nev. 1266, 945 P.2d 945 (1997).  Hence, as the facts of this case confirm, the

15    management, maintenance and control of private property used as a public sidewalk is <u>not</u>

16    traditionally and <u>exclusively</u> a governmental function; it is a function that must be performed by

17    the private landowner as well.  *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1228-29,

18    925 P.2d 1175, 1182-83 (1996) (landowner has duty to take reasonable precautions against

19    foreseeable injuries to persons on the land).  As a result, the court decisions holding that the

20    portion of Venetian's private property in question has been dedicated to "public use" no more make

21    Venetian a state actor in providing security for that portion of Venetian's private property than the

22    Arizona statutes declaring charter schools to be "public" schools could make the private parties

23    operating those schools state actors in *Caviness*.

24    The ACLU also relies on the "joint action" rationale for finding private parties to be state

25    actors, quoting *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), where the Ninth

26    Circuit asserted that:  "Joint action … exists where a private party is a willful participant in joint

27    action with the State or its agents."  *Id.* (internal quotation marks omitted).  Not surprisingly,

28    however, the ACLU totally <u>ignores</u> the holding in *Collins*—that employees of a private health

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1  facility who made a "citizens' arrest" of antiabortion picketers were <u>not</u> state actors, even though,

2  after the "citizens' arrest," the police detained the protesters long enough to issue misdemeanor

3  citations for violating the injunction that was the basis for the "citizens' arrest."  *Id.*, 878 F.2d at

4  1146, 1154-56.

5        Here, as in *Collins*, but <u>unlike</u> the cases relied upon by the ACLU—including *Howerton v.*

6  *Gabica*, 708 F.2d 380 (9th Cir. 1983) which is expressly distinguished in *Collins*—Metro played

7  <u>no</u> part in Venetian's initiation of trespass proceedings against plaintiffs.  Venetian personnel

8  called Metro at <u>Plaintiffs'</u> insistence, and once Metro arrived, Metro determined what actions to

9  take with respect to Plaintiffs.  While Metro talked to Venetian security personnel as part of its

10  investigation, there is <u>no</u> evidence that Venetian personnel had any input regarding Metro's

11  decisions, much less that Venetian personnel requested or insisted upon any particular actions by

12  Metro.  Consequently, the ACLU's lengthy complaints about Metro's actions may—or may not—

13  give Plaintiffs claims against Metro personnel, but they do <u>not</u> make Venetian personnel state

14  actors.  *See Wilson v. McRae's, Inc.*, 413 F.3d 692 (7th Cir. 2005); *Youngblood v. Hy-Vee Food*

15  *Stores Inc.*, 266 F.3d 851 (8th Cir. 2001).

16        The ACLU also asserts that a conspiracy made Venetian and Metro personnel joint actors

17  because they supposedly "shared a common objective of excluding plaintiffs from the sidewalk"

18  and engaged in "frequent and close collaboration" (with other casino security officials) on security

19  matters. (Doc. 97 at 50-51).  However, conclusory assertions of a conspiracy without specific facts

20  are wholly insufficient.  *George v. Pacific - CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir.

21  1996).  In *Villegas v. Gilroy Garlic Festival Ass'n*, *supra*, the Ninth Circuit made it clear that

22  public and private security personnel working together to exclude persons claiming to have a First

23  Amendment right to be on public property from a traditional public forum due to their attire did

24  <u>not</u> make the private parties state actors, regardless of whether the question is addressed in terms of

25  "joint action" (or other distinct tests) or more general standards under which distinct tests (such as

26  "joint action") are merely factors to be considered.  *Id.*, 541 F.3d at 955-57 and footnotes 3 and 4.

27  Hence the ACLU's conclusory assertion that a "conspiracy" resulted in "joint action" making

28  Venetian personnel state actors is wholly insufficient to avoid summary judgment.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

8

1    Finally, Plaintiffs' civil rights claims fail for another reason—the allegedly wrongful

2    conduct upon which the ACLU relies does not rise to the level of <u>constitutional</u> violations

3    sufficient to sustain civil rights claims.  In *Johnson v. Barker*, 799 F.2d 1396 (9th Cir. 1986),

4    persons who had attempted to film the Mt. St. Helens volcanic eruption brought civil rights claims

5    and state-law claims (including claims for false arrest, malicious prosecution, abuse of process,

6    and negligence) against county law enforcement personnel based upon citations issued by a county

7    sheriff for entering a restricted access zone.  The Ninth Circuit reviewed the claims alleged and

8    then affirmed summary judgment against the plaintiffs, holding that the wrongful conduct alleged

9    did not result in a deprivation of due process and emphasizing that civil rights claims require

10   deprivation of a constitutionally protected interest, not violations of duties of care arising out of

11   state tort law.  *Id.*, 799 F.2d at 1398-1401.

12   Here, as discussed above, Plaintiffs' First Amendment claims fail, and the ACLU has failed

13   to provide evidence, argument or authority that Venetian personnel deprived Plaintiffs of due

14   process, subjected them to an <u>unreasonable</u> search and seizure or otherwise deprived them of

15   constitutionally-protected rights in invoking Nevada's trespass statute.  *See*, *e.g. Heibel v. Sixth*

16   *Judicial District Court*, 542 U.S. 177 (2004) (Nevada plaintiff's arrest for refusal to identify

17   himself did not violate either Fourth or Fifth Amendment); *Alexis v. McDonald's Restaurants of*

18   *Massachusetts*, 67 F.3d 341 (1st Cir. 1995) (affirming summary judgment for restaurant and its

19   manager on civil rights claims based on African-American customer's removal from restaurant at

20   manager's request under state criminal trespass statute, despite evidence creating genuine issue of

21   material fact as to whether police officer's arrest of customer for violating the statute included

22   violent, unreasonable and discriminatory conduct precluding summary judgment for police

23   officer).

24   Since the ACLU has failed to provide evidence, argument or authority that Venetian

25   personnel deprived plaintiffs of rights protected by the United States Constitution, Plaintiffs' civil

26   rights claims should be dismissed as against these defendants.

27   / / /

28   / / /

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

9

**C.  PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED BECAUSE LVS'S ACTIONS ARE PROTECTED BY NEVADA STATUTE**

Plaintiffs have not met their evidentiary burden, and consequently summary judgment should be entered dismissing their common law tort claims.  It is well settled that upon the moving party's showing that there is an absence of evidence supporting the non-movant's claims, the burden then shifts to the non-movant to establish a genuine issue of material fact as to each element for which it has the burden of proof.  *See Celotex v. Cattrett*, 477 U.S. 317, 322-25 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  Plaintiffs have failed to meet this burden—their Opposition has no argument or authority substantiating that anything LVS personnel did once they invoked the trespass statute constitutes any common law tort, and there is nothing in the Opposition that creates a genuine issue of material fact making such conduct tortious.  The ACLU's vague, conclusory assertions regarding the use of "force" wholly fail to provide competent admissible evidence of specific facts sufficient to avoid summary judgment on Plaintiffs' state-law tort claims.  *Compare Billingsley v. Stockmen's Hotel, Inc.*, 111 Nev. 1033, 1038, 901 P.2d 141, 145 (1995) ("a proprietor is permitted to use reasonable force to eject a trespasser.").

**D.  PLAINTIFFS' CLAIMS FOR EMOTIONAL DISTRESS SHOULD BE DISMISSED**

In their Opposition, Plaintiffs' have agreed to voluntarily dismiss their claims for intentional and negligent emotional distress.  (Doc. 97 at 10 n.3).  Judgment should be entered accordingly.

**III.  CONCLUSION**

For the foregoing reasons, as well as those presented in the LVS Defendants' Motion for Summary Judgment (Doc. 80), this Court should enter summary judgment against Plaintiffs and in favor of LVS on the following:

a.  Plaintiffs' First Cause of Action for violation of First and Fourteenth Amendments to the U.S. Constitution (free speech and expression);

b.  Plaintiffs' Second Cause of Action for violation of Fourth and Fourteenth Amendments of the U.S. Constitution (unlawful arrest);

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1   c.   Plaintiffs' Third Cause of Action for violation of Fourth and Fourteenth

2   Amendments of the U.S. Constitution (unreasonable search and seizure);

3   d.   Plaintiffs' Fourth Cause of Action for violation of Fourth and Fourteenth

4   Amendments of the U.S. Constitution (unlawful detention);

5   e.   Plaintiffs' Fifth Cause of Action for civil conspiracy to violate civil rights;

6   f.   Plaintiffs' Sixth Cause of Action for violation of Fourteenth Amendment of the U.S.

7   Constitution (substantive due process);

8   g.   Plaintiffs' Eighth Cause of Action for  false imprisonment;

9   h.   Plaintiffs' Ninth Cause of Action for battery;

10   i.   Plaintiffs' Tenth Cause of Action for intentional infliction of emotional distress;

11   j.   Plaintiffs' Eleventh Cause of Action for negligent infliction of emotional distress;

12   and

13   k.   Plaintiffs' Twelfth Cause of Action for negligent training, supervision and retention.

14                    LIONEL SAWYER & COLLINS

15
                 By:   /s/ Samuel S. Lionel
16                    Samuel S. Lionel, Bar No. 1766
                    David N. Frederick, Bar No. 1548
17                    Robert W. Hernquist, Bar No. 10616

18                    *Attorneys for Defendants Las Vegas Sands*
                    *Corporation, Venetian Casino Resort, LLC,*
19                    *Eli Castro, Linda Hagenmaier, William Lovegren,*
                    *Anthony Bronson, Kevin Neanover, Kim Gorman,*
20                    *Paul Tanner and Tony Whiddon*

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Lionel Sawyer & Collins, and that on the 5th day of July, 2011, I caused to be served a true and correct copy of the foregoing *Defendants Las Vegas Sands Corp., Venetian Casino Resort, LLC, Eli Castro, Linda Hagenmaier, William Lovegren, Anthony Bronson, Kevin Neanover, Kim Gorman, Paul Tanner And Tony Whiddon's Reply In Support Of Their Motion For Summary Judgment And Opposition To Plaintiffs' Countermotion* in the following manner:

(ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Allen Lichtenstein
Margaret A. McLetchie
ACLU OF NEVADA
3315 Russell Rd., Suite H 222
Las Vegas, NV 89120

*Attorneys for Plaintiffs Jason A. Perez-Morciglio and Sebastian Perez-Morciglio*

Nicholas Crosby
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, NV 89145

*Attorney for Defendants Las Vegas Metropolitan Police Department, Sheriff Douglas Gillespie, Officer S. Schaier and Officer T. Scott*

/s/  Robert Hernquist
LIONEL SAWYER & COLLINS