**Marquis Aurbach Coffing**
NICK D. CROSBY, ESQ.
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
ncrosby@maclaw.com
Attorneys for LVMPD Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JASON A. PEREZ-MORCIGLIO and SEBASTIAN PEREZ-MORCIGLIO,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE (individually and in his official capacity as Sheriff of The Las Vegas Metropolitan Police Department); LAS VEGAS METROPOLITAN POLICE DEPARTMENT OFFICERS T. SCOTT AND S. SCHAIER, SERGEANT KENDALL BELL (in their individual capacities); LAS VEGAS SANDS CORP., a Nevada Corporation; VENETIAN CASINO RESORT, LLC, a Nevada Limited Liability Company; VENETIAN SECURITY GUARD ELI CASTRO; VENETIAN SECURITY GUARD LINDA HAGENMAIER; VENETIAN SECURITY GUARD RON HICKS; VENETIAN SECURITY GUARD WILLIAM LOVEGREN; VENETIAN SECURITY GUARD ANTHONY BRONSON; AND VENETIAN SECURITY GUARD KEVIN NEANOVER; VENETIAN SECURITY GUARD KIM GORMAN; VENETIAN SECURITY GUARD PAUL TANNER; AND EXECUTIVE DIRECTOR OF SECURITY TONY WHIDDON,<br><br>Defendant. | Case No.:    2:10-cv-00899-PMP-RJJ<br><br>**LVMPD DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO COUNTERMOTION FOR SUMMARY JUDGMENT** |

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

**LVMPD DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO COUNTERMOTION FOR SUMMARY JUDGMENT**

Defendants, the Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Douglas Gillespie ("Gillespie"), Officer T. Scott ("Scott"), Officer S. Schaier ("Schaier"), and Sergeant Kendall Bell ("Bell")(collectively "LVMPD Defendants") by and through their attorney of record, Nick D. Crosby, Esq., with the law firm of Marquis Aurbach Coffing herby file their Reply in Support of Motion for Summary Judgment and Opposition to Countermotion for Summary Judgment.

This Reply and Opposition are made and based upon the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, and any oral argument allowed at the time of the hearing.

Dated this ⎯⎯ day of August, 2011.

MARQUIS AURBACH COFFING

By ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Nick D. Crosby, Esq.
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for LVMPD Defendants

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  THE LVMPD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDMENT CLAIMS**

Despite the assertions and arguments to the contrary, the LVMPD Defendants are entitled to summary judgment regarding the Plaintiffs' First Amendment claims. In order to establish a claim for a First Amendment violation, the Plaintiffs must prove "by [their] actions [the Defendants] deterred or chilled [the Plaintiffs'] political speech and such a deterrence was a substantial or motivating factor in [the Defendants'] conduct." Mendocino Envir. Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)(quoting Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994)(further citations omitted)). The Plaintiffs need not show their speech

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

was actually suppressed, but they must show the LVMPD Defendants intended to interfere with the Plaintiffs' First Amendment rights. Id. (Citation omitted). In evaluating this issue, the Court must inquire "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id. (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir. 1996), *vacated on other grounds*, 520 U.S. 1273 (1997)). The Plaintiffs are permitted to demonstrate an intent to inhibit speech through direct or circumstantial evidence. See Magana v. Commonwealth of N. Mariana Islands, 107 F.3d 1436, 1448 (9th Cir. 1997).

The Plaintiffs' cite to White v. Lee, 227 F.3d 1214 (9th Cir. 2000) for support that the LVMPD Defendants' investigatory actions operated to chill the protected speech of the Plaintiffs. White, however, demonstrates the same is unpersuasive.

In White, neighbors in Berkley, California sought to preclude an attempt by a non-profit group to convert a motel into a multi-family housing project for homeless persons. Id. at pp. 1220-21. Based upon the public statements distributed by the neighbors, the Department of Housing and Urban Development ("HUD") initiated an investigation to determine whether the neighbors violated the Fair Housing Act. Id. at 1222-23. During the investigation, the neighbors were threatened with legal sanctions for non-compliance with document disclosure requests. Id. at 1228-29. The requests for documents, according to the appellate court, were "extremely broad." Id. at 1223. Furthermore, a conciliation proposal was made which, for all intents and purposes, asked the neighbors to cease the exercise of their First Amendment rights *vis a vis* the proposed project. Id. at 1229. One of the defendants also stated to a major news publisher that the neighbors had violated the law. Id. Finally, the investigation took over 8 months – much longer than the presumptive 100-day time limit established by the federal statute. Id. at 1228.

Here, it cannot be said the conduct of the LVMPD Defendants would chill or otherwise deter a person of ordinary firmness. First, there was no LVMPD employee present during Venetian Security Officers' detention and removal of the Plaintiffs from the public sidewalk. Instead, the record unquestionably demonstrates (and the Plaintiffs do not argue to the contrary) that Officers Schaier and Scott did not arrive on the property until after the Plaintiffs were escorted into the Venetian. (Exh. A at pp. 211:12-20; 212:19-24; 213:1-4; Exh. B at p. 36:8-

Page 3 of 20

1   10).¹ Thus, the inquiry must be one of the officers' actions while in the Security Office, not any
2   actions by the Venetian Defendants. The record proves the officers spoke with at least one
3   Venetian Security representative, as well as the Plaintiffs, during their investigation into the
4   Venetian Defendants' call for service. (Exh. D at pp. 46:12-16; 47:12-16; 48:8-23; 53:25; 54:1).
5   The total duration of the LVMPD Defendants' investigatory detention was approximately 15
6   minutes – well within the 60 minutes outlined in Nev. Rev. Stat. 171.123. (Exh. A at pp. 193:16-
7   25; 194:1-2; 4th Amend. Compl. at p. 18, ¶ 98).

8   At the conclusion of their investigation, the Officers determined they would not arrest the Plaintiffs or issue a citation because of the conflict accounts as to where the Plaintiffs were actually located outside the casino. (Exh. D at p. 49:10-20). While the Plaintiffs were issued a misdemeanor warning, the warning is not law enforcement action. (Exh. G). The Plaintiffs were not required to answer to a court or pay any fine. The Plaintiffs' arguments that because the warning is entered into the SCOPE database somehow transformed the warning into a citation or arrest are misplaced. Numerous pieces of information are entered into SCOPE that do not address law enforcement action (i.e. Sheriff cards, work permits, etc.) Indeed, the Plaintiffs' unsupported accusation and incorrect assumption that such an entry will "probably cause officers to be less lenient" with the Plaintiffs is wholly unsupported by the record. It is improper for the Plaintiffs to reach this conclusion when they fully know there is absolutely no evidence to support the accusation. Also, this Court has held that the issuance of an actual citation does not "alone amount to a constitutional deprivation." Tate v. Lau, 865 F. Supp. 681, 690 (D. Nev. 1994) (citing Bell v. Brennan, 570 F. Supp. 1116, 1119 (E.D.Pa.1983)).

Moreover, the warning does not, on its face or in any conceivable application, preclude the Plaintiffs from engaging in expressive speech on the public sidewalk. (Exh. G). Indeed, the plain language of the warning states the Plaintiffs are not welcome on the Venetian Defendants' private property and, as this Court previously held, the sidewalk in front of the Venetian is a public thoroughfare. Thus, the suggestion that the warning operates to chill the Plaintiffs' speech

---

¹ Unless noted otherwise, all references to exhibits are to those attached to the LVMPD Defendant's Motion for Summary Judgment.

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

cannot reasonably be entertained, given the record, when the very document relied upon by the Plaintiffs does not contain an implicit or express prohibition of the Plaintiffs' use or enjoyment of the public sidewalk.

Furthermore, the Plaintiffs' assertion that LVMPD "backed" Venetian by stating the sidewalk is private property and that Venetian had the right to eject the Plaintiffs is not supported by the record. (Opp. at p. 17:24-25). Although the Officers advised the Plaintiffs that the Venetian had the right to restrict access to its private property, at no time did the officers state the Plaintiffs were not able to walk, use or perform on the sidewalk in front of the Venetian. Indeed, the issue at the time of the detention was whether the Plaintiffs were actually on the sidewalk, which is a public forum, or on the interior portion of the Venetian's property which does not appear to be a traditional sidewalk. While LVMPD certainly recognizes the Ninth Circuit's affirmation of this Court's decision in Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas, 257 F.3d 937 (9th Cir. 2001), the holding of that case dealt with the replacement sidewalk constructed after an agreement was reached between the Venetian and NDOT. Id. at p. 939-40. The case did not deal with the interior property adjacent to the public sidewalk. Id. at 940 (noting the Venetian agreed to construct at least 10 feet of sidewalk for public use). The sidewalk abutting the Venetian property is separated by planters, then an interior walkway, then a water feature/fountains. (**Exhibit I**, attached hereto). The Venetian Security Officers apparently wanted some enforcement action, based upon the Plaintiffs' proximity to the fountains and not the public sidewalk,[2] and the Plaintiffs said they were on the public sidewalk. Given the confusion, the Officers elected not to honor the Venetian's requests. Thus, it cannot be said the Officers "backed" the Venetian.

Moreover, the record is littered with evidence LVMPD does not, in fact, "back" the Venetian or any other casino. Even as far back as the Venetian II case, the Ninth Circuit recognized LVMPD did not honor Venetian's request to arrest and/or cite the labor workers. See Venetian II, 257 F.3d at 940 ("The Venetian also requested that the Las Vegas Metropolitan

---

[2] The LVMPD Defendants agree, after review of the surveillance video produced in this action, that the Plaintiffs were, in fact, on the public sidewalk.

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

Police Department ("Police Department") remove the demonstrators from its property as trespassers. The Police Department, upon advice of the Clark County District Attorney's Office, *declined to issue citations or make any arrests.*")(Emphasis added). In the instant matter, the record clearly demonstrates the LVMPD Defendants did not "back" the Venetian, as the Plaintiffs were not arrested or cited. Also, LVMPD produced an email from General Counsel which provided very clear direction regarding the sidewalk discussed in Venetian II:

> The agreement between the Venetian and NDOT was for a 10 foot wide sidewalk from back of curb; however, case law suggests that if it looks like a traditional sidewalk to the public then it is one. So if there is an area that exceeds 10 feet in width but it is indistinguishable from the rest of the sidewalk we should not be trespassing pedestrians exercising their First Amendment rights or otherwise. I agree with [Deputy Chief Gary Schofield's] comments regarding a court order. We should not trespass anyone from areas that look like a sidewalk unless the Venetian secures a specific court order that gives us specifics on enforcement.
>
> As to Bally's, I know that their matter was litigated but I cannot find a published case. I do not know the ownership of the underlying property. Without any further direction from a court, we need to treat them like the Venetian and use the same reasoning of the Venetian 9th Circuit case. If it looks like a sidewalk and is indistinguishable from the sidewalk to the north and south, it is a public forum subject to the protection of the First Amendment.

(Exh. 17, LVMPD (Perez-Morciglio) 01136, attached to Pls. Opp.). This email was authored and distributed on May 21, 2010, before the Plaintiffs' filed their Complaint. Further, on May 20, 2010, LVMPD officers refused to enforce Bally's security officers' request to take enforcement action against street performers because the officer was not sure the area identified by the security officer was private property or a public forum. (**Exhibit J**, pp. LVMPD (Perez-Morciglio) 01137-38, attached hereto).

The Plaintiffs' argue the LVMPD Defendants' deterred their speech and that this deterrence was a substantial or motivating factor in the LVMPD Defendants' conduct in issuing the warning. (See Opp. at p. 19:26-28). The Plaintiffs rely on Sloman v. Tadlock, 21 F.3d 1462 (9th Cir. 1994) for the premise that the LVMPD Defendants violated the Plaintiffs' speech because the Plaintiffs subjectively feel their free speech rights were chilled. (Id. at p. 20:1-13). However, the Plaintiffs' analysis fails to demonstrate either direct or circumstantial evidence that the free speech deterrence was a substantial or motivating factor for the LVMPD Defendants. For example, the Plaintiffs reference a statement by an LVMPD sergeant wherein the sergeant

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

said he personally dislikes street performers on the Strip. (Opp. at p. 22:5-22). However, what is not said in the Plaintiffs' Opposition, but is evident from the record, is the sergeant was never deposed, not a party, and his statements were not made on behalf of LVMPD or the LVMPD Defendants. Instead, it is an opinion of the sergeant and, in any event, is hearsay. Thus, the Plaintiffs cannot use inadmissible evidence in support of their Motion or Opposition. This is the only evidence offered by the Plaintiffs in support of their burden to demonstrate deterrence was a substantial or motivating factor and the same is insufficient to demonstrate an issue of fact.

Finally, Plaintiff Sebastian Perez-Morciglio ("Sebastian") was not even engaged in expressive speech at the time of the detention. Sebastian admitted he was not in costume and was not performing. (Exh. B at p. 22:5-9, 19-21; 4th Amend. Compl. at p. 3:17-18). As such, Sebastian does not even have a First Amendment claim *vis a vis* free speech because he was not engaged in expressive speech at the time the Venetian Defendants detained Sebastian. In short, aside from the Plaintiffs' subjective, self-serving statements, there is no evidence in the record to demonstrate the LVMPD Defendants violated the Plaintiffs' First Amendment rights.

## II. THE PLAINTIFFS' UNLAWFUL SEARCH CLAIMS FAIL AS A MATTER OF LAW

The Plaintiffs' Opposition/Motion attempts to argue the Officers knew the Plaintiffs did not violate any laws prior to applying handcuffs or searching the Plaintiffs. Indeed, Plaintiffs rely on the testimony of Ofc. Schaier in support of this position. (Opp. at p. 25:10-13). However, a closer look at the testimony cited by the Plaintiffs reveals Ofc. Schaier did not say the Plaintiffs did not commit a crime; he said after speaking with Venetian Security officers, he did not think the Plaintiffs had committed a crime based upon what Venetian Security said:

> Q.   Based upon what they told you, did you think any crimes had been committed?
>
> A.   Based on what they had told us at the time, no.
>
> Q.   Why didn't you think any crime had been committed?
>
> A.   Because of the area that it occurred was a gray area. It wasn't within their actual structure, so it made it a little more of a difficult decision, if you will.

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

Q.   So you think they did the wrong thing when they told them they had to leave that area?

A.   I don't want to say that because I wasn't there, I didn't interact with them, so I didn't know what their attitude was like or what their demeanor was, if they were argumentative, if they were aggressive. I don't know because I wasn't there with them. I didn't know if it was a safety issue or why they detained them or not. I don't know.

Q.   But what they told you – the reason they told you that they detained them and first interacted with them is that they were on their property, right?

A.   Correct.

Q.   And that was incorrect.

A.   *At the time, I didn't know. They told me they were by their fountain.*

Q.   And you determined that that area was not an area that they had a right to eject people from, right?

A.   *At the end of the call, correct. That's why we didn't do anything.*

(Exh. D at pp. 51:14-25; 52:1-17). Plaintiffs conveniently omitted page 52 of Ofc. Schaier's deposition transcript because it unquestionably demonstrates the officers conducted an investigation before making the determination to not take enforcement action.

### III.   THE LVMPD DEFENDANTS DID NOT VIOLATE THE PLAINTIFFS' FOURTH AMENDMENT RIGHTS

The Officers' search and temporary detention of the Plaintiffs during the investigatory detention did not run afoul of the Fourth Amendment. First, Jason Perez-Morciglio ("Jason") consented to the search and never revoked his consent or expressed any concern that he was under duress until the instant litigation. (4th Amend. Compl. at p. 17, ¶ 86). Although Sebastian did not recall whether he consented to the search or not, he admitted during his deposition that he never told the Officers that he could not be searched. (Exh. B at p. 29:11-12). While LVMPD recognizes that whether consented to search is generally a question of fact, Jason admitted in his Fourth Amended Complaint that he consent to the search. (4th Amend. Compl. at p. 17, ¶ 86). It was not until his counsel rehabilitated his testimony during his deposition that he suddenly asserted his consent was coerced or somehow given under duress. Further, despite the fact the Jason stated during his December 2010 deposition that his consent was now coerced, he never corrected his complaint to include this vital fact, despite amending the complaint twice since the

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

completion of his deposition. Had Jason truly believed his consent was not voluntary, he would have certainly amended his complaint to correct his prior, judicial admission. Plaintiff did not and, therefore, no issue of fact exists – just an attempt by Jason to shore-up his prior admissions. Similarly, Sebastian never said he did not give consent, only that he does not recall whether or not he gave consent and that he knows he did not revoke any consent. Again, this is not an issue of fact. For these reasons alone, the LVMPD Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claims as they relate to the search.

Moreover, the officers had a reasonable suspicion to pat-search the Plaintiffs because of the prop weapons in their possession. Ofc. Scott testified that he observed the weapons, but did not inspect them to confirm they were, in fact, props and conducted a pat-search for his safety. (Exh. C at pp. 76:23-25; 77:1-5, 12-15). Given the fact the Officers observed the weapons, *albeit* props, a reasonable suspicion was formed sufficient to allow the Officers to conduct a pat-search to ensure the Plaintiffs were not armed, as officers are permitted to conduct a limited search of a suspect to allow officers to conduct their investigation without the fear of violence. Adams v. Williams, 407 U.S. 143, 146 (1972). This search was reasonable, absent any consent, and as such, the LVMPD Defendants are entitled to summary judgment for any claim of an unreasonable search.

IV. **THE PLAINTIFF'S UNLAWFUL SEIZURE/DETENTION CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT.**

Despite the Plaintiffs' efforts to fabricate an issue of fact or otherwise demonstrate the temporary detention of the Plaintiffs by LVMPD was unlawful, the facts and the law are clear. Specifically, Nev. Rev. Stat. 171.123 permits officers to temporarily detain a person for up to one hour in order to investigate whether the person has committed or is about to commit a crime. Nev. Rev. Stat. 171.123(1) and (4). The statute does not require probable cause – only that the circumstances reasonably indicate that the person has committed, is committing or is about to commit a crime. Id. This Court noted "a police officer may detain a person for the purpose of investigating possible criminal behavior, even absent the existence of probable cause to arrest that person." Ramirez v. City of Reno, 925 F. Supp. 681, 684 (D.Nev. 1996) (citing Adams v.

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1922-23 (1972)); Terry v. Ohio, 392 U.S. 1, 22 (1968); Pellegrino v. U. S., 73 F.3d 934 (9th Cir. 1996)).

Here, the Officers responded to a call for service. The Venetian Defendants asserted the Plaintiffs were trespassing, which is a crime. The Plaintiffs were in the security holding room in handcuffs when they arrived. The Plaintiffs were detained for approximately 15 minutes while the Officers conducted their investigation to determine whether a crime had been committed. The Officers concluded no enforcement action would be taken and released the Plaintiffs. This is the exact type of investigatory detention contemplated by Nev. Rev. Stat. 171.123. The duration of the detention was not in excess of the 60 minutes permitted by the statute and, given the facts known to the Officers during the encounter, it was not unreasonable to detain the Plaintiffs for 15 minutes to investigate the call for service. Thus, it cannot be said the Officers unlawfully detained the Plaintiffs and, as such, the LVMPD Defendants are entitled to summary judgment on these claims.

V. **THE PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.**

The LVMPD Defendants are entitled to summary judgment on the Plaintiffs' substantive due process claims because the Plaintiffs failed to identify a constitutional deprivation. The LVMPD Defendants' assertion that the Plaintiffs' substantive due process claims fail because their Fourth Amendment claims fails is accurate, despite the Plaintiffs' assertions to the contrary. First, the Plaintiffs admit that in order to demonstrate a substantive due process claim, they must prove a constitutional deprivation. (Opp. at p. 28:26-28); see Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006). As set forth in the Motion for Summary Judgment and *supra*, the Plaintiffs' failed to demonstrate a constitutional deprivation. As such, the Plaintiffs' substantive due process claim fails on this basis alone. Id.

Second, because other constitutional amendments adequately and more accurately encompass and address the Plaintiffs' alleged constitutional infringements, the Plaintiffs are precluded from asserting a substantive due process claim. The Ninth Circuit recently reaffirmed its position regarding the preclusion of substantive due process claims in certain contexts:

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

> The Supreme Court has long held that certain substantive due process claims might be precluded if the same claims could be decided under an "explicit textual source of constitutional protection" rather than under the "generalized notion of 'substantive due process....'" Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In other words, under the Graham rule, a substantive due process claim will be preempted if the asserted right can be vindicated under a different – and more precise – constitutional rubric.

Action Apart. Assoc., Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1024-25 (9th Cir. 2007). Here, the basis for the Plaintiffs' alleged substantive due process claim stems from their assertion that the LVMPD Defendants' detention violated their right to liberty (i.e. locomotion, freedom to move, etc.) (Opp. at p. 29:6-25). However, this claim is no different than the Plaintiffs' Fourth Amendment unlawful/unreasonable seizure claims. Because the Plaintiffs' Fourth Amendment claims more adequately and precisely vindicate the alleged harm, the Plaintiffs are precluded from asserting a substantive due process claim.

To the extent the Plaintiffs: (1) are not precluded from asserting a substantive due process claim; and (2) suffered a constitutional deprivation, the LVMPD Defendants are, nonetheless, entitled to summary judgment because the Plaintiffs failed to demonstrate the LVMPD Defendants' actions were "constitutionally arbitrary" and "conscience-shocking." Brittain, 451 F.3d at 991. "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008) (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). Unless the offending conduct surrounds a "split-second" decision and did not afford the officer an opportunity deliberate, then the inquiry as to whether the conduct violated the plaintiff's substantive due process rights must be whether the officer's conduct was deliberately indifferent to the plaintiff's constitutional rights. Id. at 1137-41. "Conduct that 'shocks the conscience' is 'deliberate indifference to a known or so obvious as to imply knowledge of danger.'" Tamas v. Dept. of Social & Health Servs., 630 F.3d 833, 844 (9th Cir. 2010) (citing Kennedy v. City of Ridgefield, 439 F.3d 1055, 1064 (9th Cir.2006)). Generally speaking, deliberate indifference incorporates both an objective and subjective analysis, in that the court must determine whether an objective risk existed and that the officer as "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he ... also dr[e]w the inference.'" Id. at 844-45 (citing and quoting Conn v. City

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010); Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010). The Ninth Circuit also requires that the officer actually draw the inference or that a "reasonable officer would have been compelled to draw that inference." Id. at 845. Further, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 144 (1979).

Here, there are no facts to prove the Officers acted with deliberate indifference to a substantial risk of serious harm. Again, the Officers responded to call for service from the Venetian Defendants, investigated the facts as articulated by both parties, and elected not to take any law enforcement action. The total time of detention was roughly 15 minutes and well-within the investigatory detention statute discussed *supra*. The Plaintiffs did not identify any substantial risk of injury and, therefore, cannot withstand summary judgment on this basis alone. Moreover, the Plaintiffs failed to allege any facts which demonstrate the Officers were aware of any substantial risk and drew any inference or acted with indifference toward the Plaintiffs' constitutional rights. Instead, the Officers detained the Plaintiffs for less than 15 minutes while they investigated whether a crime had actually been committed. There are simply no facts in the record to lead a reasonable jury to conclude the Officers acted with deliberate indifference and, therefore, the LVMPD Defendants are entitled to summary judgment.

## VI. THE LVMPD DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS

In opposition to the LVMPD Defendants' Motion for Summary Judgment regarding the procedural due process claims, the Plaintiffs appear to rest their claims on the misguided and unsupported assumption that the Officers did not conduct an independent investigation and assisted the Venetian Defendants in abridging the Plaintiffs' First Amendment rights through continued detention and unlawful seizure. (Opp. at p. 31:12-21). This premise is misguided because, again, the LVMPD Defendants did not deprive the Plaintiffs of any constitutional right by virtue of the detention. See *supra*. Second, several courts, including the Ninth Circuit, have

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

held that once a police officer has the statement of the victim and/or an eyewitness, the officer is under no further duty to investigate. See <u>Gerald M. v. Conneely</u>, (7th Cir.1988) 858 F.2d 378, 381; <u>Gramenos v. Jewel Companies, Inc.</u>, (7th Cir.1986) 797 F.2d 432, 439; <u>United States v. Mahler</u>, (9th Cir.1971) 442 F.2d 1172, 1174-1175; <u>Daniels v. United States</u>, (D.C.Cir.1968) 393 F.2d 359, 361). Here, the Plaintiffs admit the Officers spoke with both the victim (Venetian) and the Plaintiffs. Thus, it cannot be said the officers conducted a constitutionally unlawful or incomplete investigation. Third, despite the Plaintiffs' assertions to the contrary, the LVMPD Defendants never excluded the Plaintiffs from the sidewalk. (Opp. at p. 31:12-13). Again, it is undisputed that the LVMPD Officers were not present during the Venetian Defendants' removal of the Plaintiffs from the sidewalk. Further, Jason admitted that the warning issued by the Officers did not prevent any future use or enjoyment of the public sidewalk. (Exh. A at p. 192:1-3). Jason also admitted that, at no time, did any LVMPD Officer tell him he could not use or enjoy the public sidewalk. (Id. at p. 192:21-25). Finally, the actual warning, by its plain language, does not prevent the Plaintiffs from using or enjoying the public sidewalk. (Exh. G).

Given the foregoing, there can be no question the LVMPD Defendants are entitled to summary judgment on the Plaintiffs' procedural process claims, as no genuine issues of material fact exist and the LVMPD Defendants are entitled to a judgment as a matter of law.

## VII. THE PLAINTIFFS CANNOT DEMONSTRATE A CONSPIRACY EXISTED BETWEEN THE VENETIAN DEFENDANTS AND THE LVMPD DEFENDANTS.

The Plaintiffs' attempts to demonstrate a conspiracy to violate their constitutional rights fall short, as the evidence presented clearly demonstrates the LVMPD Defendants never reached any meeting of the minds with the Venetian Defendants to violate the Plaintiffs' constitutional rights and, moreover, the Plaintiffs failed to demonstrate any concerted act in furtherance of any such "conspiracy." In order to prove their conspiracy claim, the Plaintiffs must demonstrate the LVMPD Defendants and the Venetian Defendants had an agreement to violate the Plaintiffs' constitutional rights and that the Defendants, "by some concerted action, intend[ed] to accomplish some unlawful objective for purposes of harming another which results in damage." <u>Mendocino</u>, 192 F.3d at 1301 (quoting <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856 (9th

1    Cir. 1999) (quoting <u>Vieux v. East Bay Reg'l Park Dist.</u>, 906 F.2d 1330, 1343 (9th Cir. 1990)).
2    Although the inquiry into whether a "meeting of the minds" existed is generally a factual issue to
3    be resolved by a jury, there must exist the "possibility that the jury can 'infer from the
4    circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached a
5    (sic) understanding' to achieve the conspiracy's objectives.'" <u>Id.</u> at 130-02 (quoting <u>Hampton v.
6    Hanrahan</u>, 600 F.2d 600, 621 (7th Cir. 1979) *reversed in part on other grounds*, 446 U.S. 754
7    (1980) (quoting <u>Adickes v. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)). Furthermore, the
8    Plaintiffs must demonstrate that the individuals each shared a "common objective" in furtherance
9    of the alleged conspiracy. See <u>Crowe v. County of San Diego</u>, 608 F.3d 406, 440-41 (9th Cir.
10   2010) (citing <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002)(affirming District Court's grant
11   of summary judgment where Plaintiff failed to demonstrate defendant shared a common
12   objective of the "larger" conspiracy asserted by plaintiffs)).

13   Here, the evidence clearly proves there was no conspiracy between the Venetian
14   Defendants and the LVMPD Defendants. In fact, the evidence demonstrates LVMPD
15   Defendants expressly refused to abridge the Plaintiffs' constitutional rights. First, none of the
16   witnesses deposed had any knowledge of any alleged meeting of the minds. (<u>See eg.</u>, Exh. A at
17   p. 181:16-25; Exh. B at pp. 40:24-25; 41:1-22; **Exhibit K**, Depo. Trans. Whiddon, p. 269:1-9;
18   **Exhibit L**, Depo. Trans. Castro, p. 178:7-23; **Exhibit M**, Depo. Trans. Hagenmaier, p. 159:15-
19   25; **Exhibit N**, Depo. Trans. Tanner, p. 55:8-22; **Exhibit O**, Depo. Trans. Lovegren, pp. 185:7-
20   10, 188:15-18). Second, the documents provided by LVMPD clearly demonstrate LVMPD
21   instructed its officers to not take any enforcement action requested by the Venetian regarding the
22   public sidewalk. (Exh. H) Third, the fact the Officers did not take any enforcement action
23   against the Plaintiffs, as requested by the Venetian Defendants, cannot be summarily ignored as
24   suggested by the Plaintiffs. While the LVMPD Defendants certainly recognize circumstantial
25   evidence can be used in establishing a conspiracy, the fact the Officers ignored the Venetian
26   Defendants' wishes clearly indicates no agreement existed. Indeed, if such an agreement existed,
27   why would the Officers not arrest or issue a citation to the Plaintiffs? If an agreement existed,
28   why would LVMPD's General Counsel instruct its executive staff and bureau commander to not

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

take any enforcement action *vis a vis* the sidewalk in front of the Venetian? The answer is that LVMPD would not have taken such steps if an agreement existed.

Moreover, the Plaintiffs' use of other *allegations* of street performer harassment by LVMPD officers, though citations to active lawsuits, is unpersuasive. (Opp. at p. 36:1-7). Indeed, the case cited by Plaintiffs in support of this allegation, Banasik et al. v. Clark County et al., Case No. 2:09-cv-012420LDG GWF, is hotly contested by LVMPD. The fact a plaintiff has made an allegation against LVMPD does not suffice as circumstantial evidence of a conspiracy. Similarly, the Plaintiffs attempt to use an independent opinion of an LVMPD sergeant to support a conspiracy claim cannot serve as circumstantial evidence of a conspiracy, as it is hearsay and, in any event, indicates any opinion of one officer regarding street performers and makes no mention of any collusion between the Venetian and LVMPD. Finally, Jason admitted during his deposition that he had two separate encounters with casino security regarding his presence on the sidewalk and on both occasions, LVMPD officers refused to take any enforcement action and told Jason he was "fine." (Exh. A at pp. 188:21-25; 189:1-5).

Certainly Plaintiffs' "Cloak and Dagger-like" conspiracy theory makes for a sexy news story, but is simply not supported by the record. There is no direct or circumstantial evidence sufficient to support the Plaintiffs' conspiracy theory and certainly no genuine issues of fact to preclude summary judgment.

## VIII. THE INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

As set forth in the Motion for Summary Judgment and reiterated herein, the Plaintiffs did not suffer a constitutional deprivation at the hands of the LVMPD Defendants and, therefore, the individual officers would be entitled to qualified immunity on this basis alone. Notwithstanding, the individual Officers are entitled to qualified immunity because a reasonable officer would have believed the actions of the individual Officers (Scott, Schaier and Bell) were reasonable. Nevada law allows police officers to conduct an investigatory detention and there is no question the officers had a reasonable suspicion that the Plaintiffs committed the crime of trespass because when they arrived at the Venetian, the Plaintiffs were inside the Venetian and the Officers were advised the Plaintiffs were trespassing. There is no doubt people have a

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

constitutional right to use and enjoy public sidewalks under the First Amendment. Likewise, free citizens have a Fourth Amendment right to be free from unreasonable searches and seizures. However, there is no clearly established law that an officer responding to a call for service from a potential victim cannot, upon conducting an investigation and personally witnessing a verbal trespass from private property, issue a warning that the person has been trespassed from the property owners' private property. As set forth above, the Officers did not trespass the Plaintiffs from the sidewalk – they issued a warning that the Plaintiffs were not permitted to enter the Venetian Defendants' private property. The Officers were not present when the Plaintiffs were actually detained on the sidewalk and, therefore, relied upon the statements of the parties in reaching their conclusion to issue the warning. As Ofc. Schaier explained, because the Venetian said the Plaintiffs were not on the sidewalk and, instead, were in the interior fountain area, the issue was "more difficult" as it was a "gray area." In fact, the Plaintiffs have failed to establish the interior fountain area is, in fact, a public thoroughfare under <u>Venetian II</u>. This fact, in and of itself, warrants a grant of qualified immunity to the individual officers.

## IX. **GILLESPIE IS ENTITLED TO SUMMARY JUDGMENT.**

The Plaintiffs do not dispute Sheriff Douglas Gillespie ("Gillespie") did not personally participate in the alleged constitutional deprivations. (Opp. at p. 41:11-12). Instead, the Plaintiffs assert Sheriff Gillespie is liable, as the head of LVMPD, for his "failure to enact policies and training in order to correct the constitutionally inadequate procedures" that resulted in the alleged constitutional deprivations at issue in this case. (Opp. at p. 41:13-16). Essentially, the Plaintiffs assert Sheriff Gillespie is liable under a failure to train theory.

The Plaintiffs correctly cite to <u>Cunningham v. Gate</u>, 229 F.3d 1271, 1292 (9th Cir. 2000) for the basis upon which a supervisor can be held personally liable for the constitutional deprivations of his subordinates. However, the Ninth Circuit also held:

> In a section 1983 action in this circuit, *respondeat superior*, or vicarious liability, may not be imposed in the absence of a state law imposing such liability....In the absence of such a law, the state official must play a personal role in the constitutional deprivation to be liable....

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

    Nonetheless, our inquiry does not end here. "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)(emphasis in original, internal citations omitted). Absent personal participation in the constitutional deprivation, a plaintiff must demonstrate the official "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Id. (Quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). The Ninth Circuit refers to this as "direct liability" and in order to prevail on this theory of liability, the Plaintiff must show a breach on the part of the official which was the proximate cause of the injury. Id. at 1447 (citing McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979)). To demonstrate this causal connection, the plaintiff must establish a series of acts were set in motion that the official "knows or reasonably should know would cause others to inflict the constitutional injury." Id. (Quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

    Here, there is not sufficient evidence to find Sheriff Gillespie liable for the complained-of constitutional deprivations. First, Sheriff Gillespie was not present for the alleged acts and, therefore, is entitled to summary judgment on this basis alone. Second, Sheriff Gillespie is entitled to summary judgment on a negligent/failure to train theory because: (1) LVMPD did provide training regarding First Amendment rights, generally (**Exhibit P**, LVMPD (Perez-Morciglio) 0095-111, 571-587); and (2) the alleged deficient policies did not actually cause the alleged injury or constitutional deprivation and, in any event, were not so deficient to serve as a repudiation of the Plaintiffs' constitutional rights. Since the Plaintiffs' only challenge in this regard encompasses the First Amendment rights of the Plaintiffs' *vis a vis* the sidewalk, the Court need not address any of the Plaintiffs' Fourth amendment rights as they pertain to Sheriff Gillespie. (Opp. at p. 42:12-23). With respect to the First Amendment claim, LVMPD's training discusses citizens' First Amendment rights (Id.), though it does not specifically break down the various individual public sidewalks in Clark County or the Venetian sidewalk in particular. Nonetheless, the Officers testified that the Plaintiffs (and citizens in general) are free to use the

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

sidewalk to express their First Amendment rights and, more particularly, street performers have a right to perform on the public sidewalk. (Exh. D at pp. 35:13-17; 105:16-25; 106:1-14; Exh. C at p. 134:6-20). Thus, the Plaintiffs' assert that their claim in this regard lies with inadequate or lack of training regarding First Amendment rights as they relate the to the sidewalk in front of the Venetian. (Opp. at p. 42:12-23). Indeed, the entire argument section of the Opposition is directed solely at Sheriff Gillespie's failure to train his officers regarding this very small section of public sidewalk. There is no law or duty on the part of the Sheriff to ensure his training addresses each specific location in town for various specific constitutional rights. To find Sheriff Gillespie under such a theory would require Sheriff Gillespie/LVMPD to roll out training in every facet of law, tailored specifically to a small geographic feature or area. This is not a duty, it is the Plaintiffs' wish list.

The Plaintiffs do not provide evidence that the alleged deficient training, inadequate policies, or negligent training were causally connected to the alleged constitutional deprivations and, therefore, Sheriff Gillespie is entitled to summary judgment on this basis. Furthermore, to the extent Sheriff Gillespie should have implemented such a policy or training, there was no clearly established constitutional right to have a law enforcement agency train its officers in such a manner, or alternatively, a reasonable officer would not have concluded Sheriff Gillespie's actions in this regard were unreasonable and, therefore, Sheriff Gillespie is entitled to qualified immunity.

X. **THE PLAINTIFFS FAILED TO ESTABLISH A CLAIM FOR MUNICIPAL LIABILITY.**

The Plaintiffs' allegations regarding municipal liability against LVMPD cannot withstand summary judgment for the very reasons articulated in the Motion for Summary Judgment and set forth *supra*. Plaintiffs base their municipal liability theory on an alleged: (1) unconstitutional policy of "rubberstamping" casino security's wishes through failed, biased investigations; and (2) a failure to train "street level" officers on First Amendment law. In response, and in an effort to avoid a redundant recitation of arguments asserted herein, the LVMPD Defendants direct the Court to the arguments in opposition set forth herein and in the Motion for Summary Judgment.

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

1  LVMPD also asserts (again) the Plaintiffs' reliance on an officer's personal, hearsay statements
2  cannot be used in a summary judgment proceeding. Further, LVMPD does not work "closely"
3  with security personal to deprive citizens of their constitutional rights or to "rubberstamp" the
4  actions of casino security officers. Instead, LVMPD has a professional relationship with casinos,
5  much like it has with many other businesses and citizens in town, which is fostered to help battle
6  crime in Clark County. The evidence clearly establishes LVMPD does not "rubberstamp" casino
7  security wishes, as evidenced in this very case. Again, Plaintiffs' sensationalized conspiracy
8  theory is just that – a theory – unencumbered by any admissible evidence. LVMPD has no
9  policy or custom which is unconstitutional or aimed at depriving people of their constitutional
10 rights. As such, the Plaintiffs' municipal liability claims fail as a matter of law.

## XI. THE PLAINTIFF'S RULE 56(F) MOTION FOR SUMMARY JUDGMENT IS UNTIMELY AND, THEREFORE, SHOULD NOT BE CONSIDERED.

Although LVMPD recognizes Courts are granted broad discretion in controlling their dockets and entertaining pretrial matters, the Ninth Circuit has held "[a] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" Johnson v. Mammoth Rec., Inc., 975 F.2d 604, 610 (9th Cir. 1992) (quoting Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me. 1985)).

Here, the deadline to file dispositive motions was May 23, 2011. (Docket #52). The Venetian and LVMPD Defendants both filed timely dispositive motions. The Plaintiffs did not file their dispositive motion until July 15, 2011 (Docket #196). The Motion offers no explanation as to why the Plaintiffs failed to comply with the Court's order in this regard and, therefore, this Court should not entertain the Plaintiffs' Rule 56(f) motion.

///
///
///
///
///
///

M&A:05166-462 1412496_1 8/12/2011 11:36 AM

## XII. CONCLUSION

Given the foregoing, the LVMPD Defendants respectfully request the Court grant this Motion for Summary Judgment against the Plaintiffs. There are no genuine issues of material fact and the LVMPD Defendants are entitled to judgment as a matter of law. Further, the Plaintiffs' Motion should not be considered, as it is untimely, but if it is entertained, the same should be denied.

Dated this 12 day of August, 2011.

MARQUIS AURBACH COFFING

By /s/
Nick D. Crosby, Esq.
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for LVMPD Defendants

M&A:05166-462 1412496_1 8/12/2011 11:36 AM