Allen Lichtenstein
Nevada Bar No. 3992
General Counsel, ACLU of Nevada
3315 Russell Road, No. 222
Las Vegas, NV 89120
(702) 433-2666
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Jason A. Perez-Morciglio and Sebastian Perez-Morciglio,

          Plaintiffs,

vs.

Las Vegas Metropolitan Police Department; Sheriff Douglas Gillespie (individually and in his official capacity as Sheriff of the Las Vegas Metropolitan Police Department); Las Vegas Metropolitan Police Department Officers T. Scott and S. Schaier, Sergeant Kendall Bell (in their individual capacities); Las Vegas Sands Corp., a Nevada Corporation; Venetian Casino Resort, LLC, a Nevada Limited Liability Company; Venetian Security Guard Eli Castro; Venetian Security Guard Linda Hagenmaier; Venetian Security Guard Ron Hicks; Venetian Security Guard William Lovegren; Venetian Security Guard Anthony Bronson; and Venetian Security Guard Kevin Neanover; Venetian Security Guard Kim Gorman; Venetian Security Guard Paul Tanner; and Executive Director of Security Tony Whiddon,

          Defendants.

Case No.:     2:10-CV-00899-PMP-RJJ

**PLAINTIFFS' REPLY TO LVMPD DEFENDANTS' RESPONSE TO PLAINTIFFS' COUNTERMOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the federal Rules of Civil Procedure, Plaintiffs Jason Perez-Morciglio and Sebastian Perez-Morciglio, by and through their counsel Allen Lichtenstein of the ACLU of Nevada, hereby file this Reply to the Response to their Counter Motion for Summary Judgment filed by Las Vegas Metropolitan Police Department (LVMPD), Sheriff Gillespie, and Officers Scott and

Schaier (collectively, the "Metro Defendants"). This Reply is based upon the pleadings and papers

on file in this case, Exhibits of record, and any arguments by counsel at the time of hearing.

Dated this 6th day of September 2011,

Respectfully submitted by:


ACLU of Nevada

/s/ Allen Lichtenstein
Allen Lichtenstein
Nevada Bar No. 3992
General Counsel, ACLU of Nevada
3315 Russell Road, No. 222
Las Vegas, NV 89120
(702) 433-2666
Attorney for Plaintiffs

ii

1

**TABLE OF CONTENTS**

2

I.       Introduction                                                                        1

3

II.      Argument                                                                          2

4

        A       Plaintiffs are Entitled to Summary Judgment as to Their First          2
                Amendment Claims Because the Sidewalk in Front of the Venetian,
                Where Metro Defendants Schaier and Scott Told Plaintiffs That
                they Could Not Return or Face Arrest, Is a Public Forum From
                Which Metro Does Not Have the Lawful Authority to Exclude
                Individuals For Exercising Their First  Amendment Rights.

        B       The Metro Defendants Violated Plaintiffs Fourth Amendment Rights.      4

        C       Plaintiffs' are Entitled to Summary Judgment on Plaintiffs' Substantive   7
                Due Process Claims Because Metro Officers Deprived Plaintiffs of
                Constitutional Rights in an Arbitrary and Conscience Shocking
                Manner.

        D.      Plaintiffs' Procedural Due Process Claims Must Survive Summary         9
                Judgment Because Metro Deprived Them of Constitutional Rights
                Without Adequate Process.

        E.      Metro's Summary Judgment Motion Must Be Denied As To Plaintiffs'      12
                Conspiracy Claims Because There is Extensive Evidence that
                The Police Department Worked In Concert To Deprive Plaintiffs of
                Their Constitutional Rights.

        F.      The Individual Officers are Not Entitled to Qualified Immunity Because  14
                Their Conduct Violated Clearly Established Constitutional Rights.

        G.      Sheriff Gillespie is Not Entitled to Summary Judgment Because He is    16
                Responsible For the Police Department's Policies and Customs that
                Injured Plaintiffs.

        H.      Plaintiffs' Municipal Liability Claims Must Survive Summary            17
                Judgment because the Police Department has a Custom and
                Practice of Working With Casinos to Deprive People of Their Civil
                Liberties and Because the Sheriff Failed to Enact Policies to
                Adequately Protect Civil Rights.

        I.      Plaintiff's Countermotion for Summary Judgment Should Be              19
                Considered for Judicial Economy.

III.    Conclusion                                                                     19

iii

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Adickes v. S. H. Kress & Co*., 398 U.S. 144, (1970)     17

4

*Anderson v. Creighton*, 483 U.S. 635 (1987)     14

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242  (1986)     7

6

*Banasik et al. v. Clark County et al.*, Case No. 2:09-cv-01242-LDG-GWF     13

7

*Beck v. Ohio*, 379 U.S. 89  (1964)     4,5

8

*Berger v. City of Seattle*, 569 F.3d 1029, 1034 (9th Cir. 2009)     9,10,14

9

*Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971     11
    (9th  Cir. 1998)

10

*Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)     8,9

11

*City of Canton v. Harris,* 489 U.S. 378 (1989)     18

12

*City of Chicago v. Morales*, 527 U.S. 41, 53-54 (1999)     8

13

*Collins v. City of Harker Heights*, 503 U.S. 115  (1992)     18

14

*Cunningham v. Gates*, 229 F.3d 1271  (9th Cir. 2000)     16

15

*Dunaway v. New York*, 442 U.S. 200 (1979)     6

16

*Florida v. Jimeno*, 500 U.S. 248, 250 (1991)     4

17

*Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983)     12

18

*Hafer v. Melo*, 502 U.S. 21  (1991)     16

19

*Hayes v. Florida*, 470 U.S. 811  (1985)     5

20

*Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177 (2004)     6

21

*I.N.S. v.Delgado*,  466 U.S. 210  (1984)     6

22

*Kaupp v. Texas*, 538 U.S. 626 (2003)     4

23

*Kennedy v. City of Ridgefield*, 439 F.3d 1055  (9th Cir. 2006)     9

24

*Kolob Heating and Cooling v. Insurance Corp. of New York*, 154 Fed. Appx. 569     19
    (C.A.9   2005)

25

26

27

28

*Mathews v. Eldridge*, 424 U.S. 319  (1976)                                         11

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999)         3,12

*Meredith v. Erath*, 342 F.3d 1057  (2003)                                          15

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658  (1978)                              17

*Monroe v. Pape*, 365 U.S. 167 (1961)                                               4

*Norse v. City of Santa Cruz*,   629 F.3d 966  (9th Cir. 2010)                       19

*Ouzts v. Maryland Nat. Ins. Co.*, 505 F.2d 547  (9th Cir. 1974)                     4

*Pearson v. Callahan*, 129 S.Ct. 808  (2009)                                         14

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993)                    10

*Redman v. County of San Diego*, 942 F.2d 1435  (9th Cir. 1991)                     17

*Saucier v. Katz*, 533 U.S. 194 (2001)                                              14

*Schneckloth v. Bustamonte*, 412 U.S. 218  (1973)                                   7

*Shanks v. Dressel*, 540 F.3d 1082  (9th Cir. 2008)                                 10

*Skrocki v. Caltabiano*, 511 F.Supp 651  (D.C. Pa. 1981)                            4

*Sloman v. Tadlock*, 21 F.3d 1462  (9th Cir. 1994)                                  3

*S.O.C., Inc. v. County of Clark*, 152 F.3d 1136,  (9th Cir. 1998)                  2,10,14

*Tamas v. Dept. of Social & Health Servs.*, 630 F.3d 833 (9th Cir. 2010)           8

*Terry v. Ohio*, 392 U.S. 1 (1968)                                                  6

*United States v. Brignoni–Ponce*, 422 U.S. 873 (1975)                             6

*United States v. Mendenhall*, 446 U.S. 544,  (1980)                               5

*United States v. Place*, 462 U.S. 696 (1983)                                       6

*United States v. Sharpe*, 470 U.S. 675  (1985)                                     6

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539                   12,13
      (9th Cir. 1989)

*Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas ("Venetian I")*,      2,9,10,
      45 F.Supp.2d 1027  (D.Nev. 1999                                                14

v

*Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas ("Venetian II")*,     2,3,9,
   257 F.3d 937  (9th Cir 2001)     10,14

*Webber, et al. v. Clark County, et al.*, Case No. CV-06-181-RLH-RJJ     13

*Williams v. Fears*, 179 U.S. 270  (1990)     8

*Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002)     19

**Statutes**

42 U.S.C. § 1983     4,12,
    16,17

Nev. Rev. Stat. 171.123     5,6,15

U.S. Const., art. VI, § 2     5

U.S. Const. Amend. IV     4,15

**Secondary Sources**

David G. Schwartz, Freaks and Felons, LAS VEGAS SEVEN, June 2, 2011     17

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Metro Defendants' Motion for Summary Judgment must be denied in its entirety, whereas Plaintiffs are entitled to summary judgment with respect to their First Amendment claims, their unlawful search and seizure claims, substantive  and procedural due process claims, and their conspiracy claims.  Moreover, Plaintiffs are entitled to summary judgment because none of the Metro Defendants are entitled to immunity.

The Metro Defendants' liability stems from their failure to obey this Court's and the Ninth Circuit Court of Appeal's decisions that the sidewalk in front of the Venetian Resort and Casino is a public thoroughfare and  public forum, for which the Casino has no right to regulate.  On January 15, 2010, Metro officers Schaier and Scott, arrived at a detention room on the Venetian property, where Venetian Security personnel claimed they were detaining both Plaintiffs, allegedly because one of the brothers, while portraying Zorro, sold a novelty sword to a young tourist.  (Lovegren Depo. Tr., Ex. 6 at 42:12-14; 49:13-25; Scott Depo. Tr., Ex. 9, at 92:13-93:1).[1] Plaintiffs dispute the allegation of any sale.  Rather than follow the Courts' repeated directives that the casinos do not have the authority to regulate the public  sidewalks as they repeatedly claim, Officers Schaier and Scott, conducted a one-sided, cursory investigation into the facts, decided to rubber-stamp the casino's actions, and issued misdemeanor trespass warning citations to the brothers.  Those misdemeanor warnings, in addition to the Officers verbal threats, falsely cautioned the brothers that if they return to Venetian property (which also referred to the public sidewalk), they could be arrested for trespassing, and as intended, deterred the brothers from exercising their First Amendment rights and additionally prevented them from lawfully being present on the public sidewalk. (Schaier Depo. Tr.,

---

[1] To avoid unnecessary duplication, all references to Exhibit Numbers are references to the Exhibits attached to Plaintiffs' July 14, 2011 Response Brief.

Ex. 8, at 63:25-64:6; Ex. 25 (Misdemeanor Warnings) at Bates No. LVMPD 001; Sebastian Decl,

Ex. 16.at ¶¶ 18-19; Jason Decl., Ex. 14 at ¶¶ 17-21; JPM Depo. Tr., Ex. 6 at 226:20-227:8).

## II   Argument

### A.   Plaintiffs are Entitled to Summary Judgment as to Their First Amendment Claims Because the Sidewalk in Front of the Venetian, Where Metro Defendants Schaier and Scott Told Plaintiffs That they Could Not Return or Face Arrest, Is a Public Forum From Which Metro Does Not Have the Lawful Authority to Exclude Individuals For Exercising Their First Amendment Rights.

Even when the evidence is viewed in the light most favorable to the Metro Defendants, and even assuming that Plaintiff Perez-Morciglio was in fact selling novelty swords before the Venetian security personnel stopped him and his brother, detained the pair, and with Metro's support issued trespass warnings to them, summary judgment must be denied to the Defendants and should be granted to the Plaintiffs with respect to their First Amendment claims.

It has been over a decade since there has been any question as to whether the sidewalk in front of the Venetian is a public forum as a matter of law.  In fact, it was this Court that determined that it was.  *Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas ("Venetian I")*, 45 F. Supp.2d 1027, 1035 (D.Nev. 1999)("[I]f ever there was a  case where protections of the First Amendment to the United States Constitution should be applied to private property used for a particular public function, this is the case.").  Reviewing this Court's decision in *Venetian I*, the Ninth Circuit Court of Appeals reached the same conclusion and affirmed this Court's judgment. *Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas ("Venetian II")*, 257 F.3d 937, 948 (9th Cir 2001)("[W]e conclude that the Venetian's sidewalk constitutes a public forum subject to the protections of the First Amendment."), *cert. denied*, 535 U.S. 905 (2002).  *See also S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1144 (9th Cir. 1998) (holding that "the public streets and sidewalks located within the Las Vegas Resort District" are public fora.).

2

Despite these clear rulings, the Venetian behaved as if—and continues to insist—that it had the authority to regulate the sidewalks, and Metro officers collaborated with the Venetian to ensure that the Plaintiffs would not return.  In *Venetian II*, the Ninth Circuit, speaking of the very sidewalk in question here, made painfully clear that:

> property that is dedicated to public use is no longer truly private. Although the owner of the property retains title, **by dedicating the property for public use, the owner has given over to the State or the public generally "one of the most essential sticks in the bundle of rights that are commonly characterized as property," the right to exclude others.**

*Venetian II*, 257 F.3d at 945-46 (internal citation omitted) (emphasis added).  When Officers Schaier and Scott arrived at the Venetian, they either ignored the Ninth Circuit's mandate or were inexplicably unaware of it.  Instead of releasing the brothers and admonishing the Venetian for unlawfully attempting to regulate the sidewalks by detaining the Plaintiffs, the Officers issued a misdemeanor trespass warning, falsely cautioning them that they could be arrested if they even returned to the sidewalk in front of the Venetian.  (Sebastian Decl., Ex 16 at ¶18; Jason Decl., Ex. 14 at ¶ 20).

In order to prevail on their First Amendment claims against the Metro Defendants, Plaintiffs need not demonstrate that they were engaged in expressive conduct when Metro officers arrived.  They must only demonstrate that the Metro Defendants "deterred or chilled " the plaintiffs' speech and that chilling speech substantially motivated the defendants' conduct.  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (internal quotations omitted).

Here, the analysis could not be more cut and dry: Officers Schaier and Scott issued Plaintiffs misdemeanor trespass warnings specifically instructing them not to return to the sidewalk in front of the Venetian or face arrest.  (Sebastian Decl., Ex 16 at ¶18; Jason Decl., Ex. 14 at ¶ 20).  The warnings had their intended effect.  To avoid arrest the brothers avoided the sidewalk in front of the

Venetian for at least four months.  (Sebastian Decl., Ex. 16, at ¶ 19; Jason Decl., Ex. 14, at ¶ 17- 21).

Moreover, the brothers were so fearful of even walking on the sidewalk, let alone exercising their

First Amendment rights there, that they bought a van, so they could get to locations on the strip

without walking by the Venetian.  (JPM Depo. Tr., Ex. 6 at 226:20-227:8).   Simply put, the

misdemeanor trespass warnings eliminate any question as to Metro's motives. Metro issued

misdemeanor trespass warnings intended to dissuade Plaintiffs from returning to the sidewalk in

front of the Venetian[2], and for four months that is exactly what happened as a result.  Because

Plaintiffs have so clearly met their burden to establish their First Amendment claims, the Metro

Defendants' Motion for Summary Judgment with respect to those claims must be denied, and

Plaintiffs' countermotion must be granted.

### B.  The Metro Defendants Violated Plaintiffs Fourth Amendment Rights.

The Metro Defendants are not entitled to summary judgment on Plaintiffs' Fourth

Amendment Claims because Officers Schaier and Scott illegally searched and seized the brothers.

Under the Fourth Amendment, a person has the right to be free from unreasonable searches and

seizures. U.S. Const. Amend. IV. A cause of action exists for violation of the Fourth Amendment

under 42 U.S.C. § 1983 where a "person's right to be free from illegal searches and seizures of

himself and his property have been violated." *Skrocki v. Caltabiano*, 511 F.Supp 651, 653 (D.C. Pa.

1981) (citing *Monroe v. Pape*, 365 U.S. 167 (1961) (overruled on other grounds); *see also Ouzts v.*

*Maryland Nat. Ins. Co.*, 505 F.2d 547, 561 (9th Cir. 1974) (Section 1983 provides cause of action

to remedy violations of the Fourth Amendment).  Searches and seizures must both be effectuated

reasonably.  *Florida v. Gagman*, 500 U.S. 248, 250 (1991); *Krupp v. Texas*, 538 U.S. 626, 629

(2003).  Moreover, arrests are illegal, unless justified by probable cause. *Beck v. Ohio*, 379 U.S. 89,

---

[2]It's impossible to engage in expressive conduct at a location if one is not even permitted to be there.  Accordingly, Metro's misdemeanor trespass warning not only chilled speech, but also curtailed Plaintiffs' liberty interest in being able to freely travel the public sidewalk, in contradiction to this Court's and the Ninth Circuits earlier rulings.

91 (1964) ("Whether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."); *Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("[A]rrests may constitutionally be made only on probable cause.").

Metro's search of Plaintiffs, their arrest, and their continued detention were unreasonable because the arresting officers were aware that the Plaintiffs had engaged in no wrongdoing, yet the officers continued their detention and searched the pair *after* determining that no wrongdoing had occurred.   There can be no mistaking that Officers Shaier and Scott detained Plaintiffs.  Plaintiffs were placed in Metro handcuffs, and were clearly not free to leave.  Jason Decl., Ex. 14, at ¶ 12; Sebastian Decl., Ex. 16, at ¶ 10; Scott Depo. Tr., Ex. 9, at 79:1-80:5.  In fact, Officer Scott conceded that the brothers were not free to leave.  Scott Depo. Tr., Ex. 9, at 80:2-5. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").

Here, Metro tries to justify its actions by citing Nev. Rev. Stat. 171.123(1) and (4) which provides that an officer may temporarily detain an individual "whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime."  Of course, no state statute can justify a constitutional violation, or define the contours of a constitutional right.  U.S. Const., art. VI, § 2.  It is irrelevant that the Nevada statute does not require probable cause to detain suspects because the Fourth Amendment does. *Beck*, 379 U.S. at 91; *Hayes*, 470 U.S. at 816.  Moreover, and more to the point, Officers Schaier and Scott arrested, searched, and continued the Plaintiffs detention, despite not believing that any crime took place, and therefore conducted those activities without reasonable suspicion or probable cause.  Scott

Depo. Tr., Ex. 9, at 100:11-101:7; 125:6-127:17; Schaier Depo. Tr., Ex. 8, at 64:7-9, 69:11-12 ("no trespass had occurred").  Indeed, whether the officers "conducted an investigation" by speaking exclusively to Venetian Security personnel before issuing the unwarranted misdemeanor trespass warnings, as argued on page 8 of Metro's Reply Brief is beside the point.  At no point, did Metro officers have reasonable suspicion or probable cause.  Metro's conduct therefore violated, not only the Fourth Amendment, but also the very statute it claims justified its actions.

The United States Supreme Court, *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177 (2004) upheld the constitutionality of Nev. Rev. Stat. 171.123 based on its limited nature.

> Beginning with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further. *I.N.S. v.Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758 (1984); *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited. The officer's action must be " 'justified at its inception, and ... reasonably related in scope to the circumstances which justified the interference in the first place.' " *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (quoting *Terry, supra*, at 20, 88 S.Ct. 1868). For example, the seizure can not continue for an excessive period of time, see *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), or resemble a traditional arrest, see *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

542 U.S. at 185-186. The officers had no reasonable suspicion that either brother had committed, was committing or was about to commit a crime. Instead the officers merely rubber stamped the actions of Venetian security – none of whom is authorized to initiate a *Terry* stop. Moreover, the Metro officers issued trespass warnings to the Plaintiffs, prohibiting them from walking again on the sidewalk in front of the Venetian. This is not an action that can be justified by either the language of Nev. Rev. Stat. 171.123, or by *Hiibel*.

There is also ample evidence that Metro violated Plaintiff's Fourth Amendment rights when the officers searched them. In their Brief Metro argues that Jason Perez-Morciglio consented to the search and that in the Fourth Amended Complaint he failed to allege that he was under duress when he offered consent to be searched.  This, however, does not defeat Jason's illegal search claim.  The

Amended Complaint certainly put Metro on notice that Jason is asserting that he was unlawfully searched, and there is certainly evidence on the record that supports Jason's claim. (JPM Depo. Tr., Ex. 6, at 225:21-226:7; Jason Decl., Ex. 14, at ¶ 12; Sebastian Decl., Ex. 16, at ¶ 10; Scott Depo. Tr., Ex. 9, at 79:1-80:5; and SUF ¶¶ 17-18). Whether the search was consensual or whether Jason's consent was offered under duress is clearly a genuine question of disputed fact that cannot be decided on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (holding that consent is only valid if it is freely and voluntarily given.). Because Sebastian was also strapped down during the search, it is irrelevant as to whether he remembers giving his consent, as the consent could hardly be considered voluntary under the circumstances. Additionally, Jason and his brother were both strapped down and handcuffed when the Metro Officers arrived, thus the officers cannot justify pat-searching the brothers, as the officers have no credible claim that they feared violence from the brothers in their restrained state. In fact, evidence on the record shows that the brothers were well behaved even when they were not restrained. (Bronson Depo. Tr., Ex. 1, at 68:14-18).

Plaintiffs' Fourth Amendment claims are all supported by facts on the record. Furthermore, the absence of reasonable suspicion that the brothers had committed any wrongdoing, yet alone the absence of probable cause, requires that the Defendants' Motion for Summary judgment on these claims be denied.

### C. Plaintiffs' are Entitled to Summary Judgment on Plaintiffs' Substantive Due Process Claims Because Metro Officers Deprived Plaintiffs of Constitutional Rights in an Arbitrary and Conscience Shocking Manner.

Plaintiffs' substantive due process claims must also survive summary judgment. The Metro Defendants' assertion that Plaintiffs have not proven a constitutional deprivation is without merit. As Plaintiffs have repeatedly asserted, Metro's actions prevented the brothers from returning to a public sidewalk they had every constitutional right to access. Jason and Sebastian could not exercise their rights and return to the sidewalk because of their fear of the police and arrest. The officers'

7

support for the Venetian as well as their own actions chilled Plaintiffs' speech. (Sebastain Decl, Ex. 16.at ¶¶ 18-19; Jason Decl., Ex. 14 at ¶¶ 20-21).  The officers threatened to arrest Plaintiffs if they stopped on the sidewalk in front of the Venetian. (Sebastian Decl., Ex. 16 at ¶ 18; Jason Decl., Ex. 14 at ¶ 20).  After they were released, Jason and Sebastian left the area and did not return that day. (Sebastian Decl., Ex. 16, at ¶ 18; Jason Decl., Ex. 14, at ¶ 20). Further, they did not return to the sidewalk in front of the Venetian for at least four months. (Sebastian Decl., Ex. 16, at ¶ 19; Jason Decl., Ex. 14, at ¶ 17- 21). They had to buy a van so they could get to the Strip without having to walk by the Venetian.  (JPM Depo. Tr., Ex. 6 at 226:20-227:8) (testifying that arriving by bus would require them to cross the sidewalk in front of the Venetian).

By issuing the misdemeanor trespass warnings and telling Plaintiffs that they could be arrested if they returned to the sidewalk in front of the Venetian, the Metro Defendants deprived Plaintiffs of their rights to free movement, and did so in a conscience-shocking and arbitrary fashion. *See, e.g.*, *Williams v. Fears*, 179 U.S. 270, 274 (1990) ("Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution."); *see also*, *City of Chicago v. Morales*, 527 U.S. 41, 53-54 (1999) ("[T]he freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment.  We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. ") (internal citations omitted).

In order to prevail on their substantive due process claims, Plaintiffs must demonstrate that they were deprived of a Constitutional right in a conscience shocking, arbitrary fashion. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  As the Metro Defendants point out on page 11of their August 12, 2011 Reply Brief, "[c]onduct that 'shocks the conscience' is 'deliberate indifference to a known [constitutional right] or so obvious as to imply knowledge of danger.'" *Tamas v. Dept. of*

8

*Social & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006).

Officers Schaier, Scott, and Bell certainly acted arbitrarily when they issued misdemeanor trespass warnings to Plaintiffs despite their own doubts that the brothers had engaged in any wrongdoing, and despite the fact that it was the Venetian that unlawfully kidnapped the Plaintiffs. Scott Depo. Tr., Ex. 9, at 100:11-101:7; 125:6-127:17; Schaier Depo. Tr., Ex. 8, at 64:7-9, 69:11-12 ("no trespass had occurred").  Moreover, issuing the misdemeanor trespass warning to Plaintiffs prohibiting them from returning to the sidewalk demonstrated that the officers were deliberately indifferent to whether the warning would cause the brothers Constitutional injuries, as it was well established that street performers have First Amendment rights, even on the sidewalks in front of the Venetian.  *See Berger v. City of Seattle*, 569 F.3d 1029, 1034 (9th Cir. 2009) (holding that street performers have First Amendment rights); *Venetian I*, 45 F. Supp. at 1035, (holding explicitly that the sidewalk in front of the Venetian is a public forum; *Venetian II*, 257 F.3d at 945-46, ("by dedicating the property to public use, the [Venetian] has given over to the State or the public generally…the right to exclude others.").

Further demonstrating their indifference to Plaintiffs' rights, the officers, including Sergeant Bell who approved of the other officers' plan to handle the situation, did not even contemplate taking any action against the Venetian security officials who had just unlawfully detained the brothers. (Scott Depo. Tr., Ex. 9, at 66:14-68:3; 73:10-75:2, 93:22-94:22).  Because there is evidence that the officers knew that no trespass occurred, knew that the brothers had a right to be on the public sidewalk, knew that the Venetian unlawfully kidnapped the brothers and held them against their will, but took action only against the brothers, Plaintiffs' substantive due process claims meet all of the requirements set forth in *Brittain*, and therefore must survive summary judgment.

**D. Plaintiffs' Procedural Due Process Claims Must Survive Summary Judgment Because Metro Deprived Them of Constitutional Rights Without Adequate Process.**

The Metro Defendants' Motion for Summary Judgment on Plaintiffs' Procedural Due Process Claims must fail because evidence on the record establishes all of the elements of procedural due process violation.  As stated on page 20 of Plaintiffs' Response Brief, liability for deprivation of due process rights exists wherever a plaintiff can show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the Government; [and] (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Plaintiffs have a property interest in accessing and using the sidewalk, as detailed by this Court in *Venetian I*, and the Ninth Circuit in *Venetian II*, 257 F.3d at 946-947; *Berger*, 569 F.3d at 1034; and *S.O.C.*, 152 F.3d at 1144.  Clearly, Metro officers deprived Plaintiffs of their right to access and utilize the sidewalks in front of the Venetian when they unlawfully issued misdemeanor trespass warnings designed to deter the brothers from returning there.

Moreover, there is considerable evidence on the record that the deprivation would not have occurred if Metro had adequate procedural safeguards in place.  Sheriff Gillespie acknowledged during his deposition he was aware that the sidewalk in front of the Venetian was a public forum and that issuing the misdemeanor trespass warning to Plaintiffs was against Metro's policy. (Gillespie Depo. Tr., Ex. 3, at 42:15-43:16, 81:9-82:7).  Gillespie also acknowledged that officers were confused about whether to enforce businesses' complaints against patrons on the Las Vegas Boulevard, but it wasn't until May 10, 2010—nearly five months after the incidents giving rise to this litigation—that Metro's leadership issued an email instructing officers to not trespass or cite pedestrians on the sidewalk along the Strip unless they receive a court order and informing the officers that a training on the topic was in development. (Gillespie Depo. Tr., Ex. 3, at 16:24-17:22, 42:15-43:16, 52:2-13); Ex. 17 at Bates No. LVMPD 00136; Ex. 18 at Bates No. LVMPD 01142-45).  Testifying at his deposition, Officer Schaier, agreed that clarity is needed with regard to the Venetian sidewalk and he conceded that, if he had been given clear information, it would have helped him

10

handle the January 15, 2010 events. (Schaier Depo. Tr., Ex. 8, at 100:23-101:9). According to

Officer Schaier, if he had received proper training, he would have acted differently. (*Id*. at 72:2-14).

To determine what process is "due" the Supreme Court outlined a context specific balancing

test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). *See also Brewster v. Board of*

*Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 983-85 (9th Cir. 1998). The test consists of

three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk

of erroneous deprivation of such interest through the procedures used, and the probable value, if any,

of additional or substitute procedural safeguards; and finally, the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirements would entail." *Mathews*, 424 U.S. at 321.

As demonstrated above, the lack of proper training regarding First Amendment rights on the

Strip not only risked that an officer would erroneously deprive individuals of those rights, but in fact

caused such a deprivation during the incident giving rise to this litigation.  Furthermore, Officer

Schaier specifically testified that if he had been trained properly he would not have violated

Plaintiffs' civil rights and Metro's policy by issuing the trespass misdemeanor warnings. (Schaier

Depo. Tr., Ex. 8, at 100:23-101:9, 72:2-14).  In fact, Metro has demonstrated that providing the

proper training would not cause a prohibitive fiscal and administrative burden on the department by

issuing an email to officers on the subject and by starting the process of developing a training on

proper procedures when responding to situations involving First Amendment rights on the strip.

In their Reply Brief, the Metro Defendants argue that the Officers satisfied their procedural

obligations by talking with the Venetian Security guards and then the brothers.  Metro Reply Brief

at p. 13.  This argument is misleading because the evidence on the record demonstrates that not only

did the Officers fail to speak to the brothers until they had decided to support the Venetian by issuing

the misdemeanor trespass warnings against the Plaintiffs, but they also never checked where the

incident allegedly took place or whether the Venetian had any right to control the sidewalk. (Schaier

Depo. Tr., Ex. 8, at 51:14-51:22; Scott Depo. Tr., Ex. 9, at  66:14-68:3, 70:18-71:7, 73:10-75:2, 99:8-23).  Of course the fiscal and administrative burden associated with taking any of those steps is nonexistent.

Metro's argument that the warnings did not prevent the brothers from accessing the sidewalks or from exercising their First Amendment rights on the sidewalk is completely contradicted by the record.  *Supra.* at p. 8.  In either event, at the very least, the effect of the warning gives rise to a genuine issue of material fact, making it inappropriate for the Court to grant Metro's Summary Judgment Motion as to the procedural due process claims.

**E. Metro's Summary Judgment Motion Must Be Denied As To Plaintiffs' Conspiracy Claims Because There is Extensive Evidence that The Police Department Worked In Concert To Deprive Plaintiffs of Their Constitutional Rights.**

Entering Summary Judgment against Plaintiffs on their conspiracy claims is inappropriate here because there is ample evidence that the police department worked in concert with casinos like the Venetian, to protect the Casino's interests instead of the rights of ordinary citizens like the Perez-Morciglio brothers.  As Metro acknowledges on page 14 of its Reply Brief, whether a "meeting of the minds" and therefore a conspiracy existed is generally a factual issue to be resolved by a jury, provided only that there is a "possibility that a jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds'…". *Mendocino Envir. Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotations and citations omitted).  To be liable under § 1983 under a conspiracy theory, "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (citing *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)).

Each participant need only share common objectives, so it is irrelevant that the Metro Officers issued misdemeanor trespass warnings instead of arresting or citing Plaintiffs.  Clearly the misdemeanor warnings and verbal threats were sufficient to scare the brothers from returning to the

sidewalk and to effectuate the shared goal of enforcing the casino's goal of running off "undesirables". The coordinated action between Officers Scott and Schaier and Venetian security officers, coupled with the Officers' failure to conduct an independent investigation, support an inference of conspiracy. That inference alone is enough to defeat summary judgment.

In addition to the inference created by the Officers' one-sided investigation and their actions against the brothers, Metro's failure until recently to train officers on the well-settled status of the sidewalks as public forums, despite repeated accusations and litigation alleging harassment of street performers by Metro Officers on the Las Vegas Strip is further evidence that the police department and the Casino were working together to curtail Constitutional rights. *See Banasik et al. v. Clark County et al*., Case No. 2:09-cv-01242-LDG-GWF (alleging that Metro officers chilled expressive speech by using inapplicable laws to exclude street performers from public sidewalk); *see also Webber, et al. v. Clark County, et al*., Case No. CV-06-181-RLH-RJJ (suit claiming Metro officers chilled religious speech by arresting street preachers for obstructive use of public sidewalk, then later dropping or suspending the charges). These accusations are all evidence of a pattern and practice of Metro officers conspiring with casinos, like the Venetian, to clamp down on First Amendment Activity on the strip. The fact that these suits are at this stage still accusations, does not deprive them of their evidentiary value. *See Phelps Dodge*, 865 F.2d at 1542) (inference need not be most likely but merely a 'rational' or 'reasonable' one). Nor does Metro's May 21, 2010 email directing officers to refrain from trespassing individuals for activity on sidewalks on the strip absent a court order, negate the strong evidence that prior to that directive, the police and casinos were working together to suppress free speech.

As the record contains abundant evidence that the Metro Defendants were working in concert with the casinos to curtail the exercise of Constitutional Rights on the strip, the conspiracy claims cannot be dismissed on summary judgment.

**F.  The Individual Officers are Not Entitled to Qualified Immunity Because Their Conduct Violated Clearly Established Constitutional Rights.**

Qualified immunity does not protect officers when their conduct violates clearly established statutory or Constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (internal citation omitted).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Courts must look at the question of whether qualified immunity should be granted in the light most favorable to the plaintiff.  *Saucier v. Katz*, 533 U.S. 194, 213 (2001).[3]  Determining whether a reasonable officer should have known an act is unlawful, is by nature, a fact-intensive inquiry.  *Id*. at 201. Thus, if there are triable issues of fact as to whether a defendant is entitled to qualified immunity, the question must go to a jury.

Officers Scott, Schaier, and Bell's actions violated Plaintiffs' clearly established rights.  It has been settled for over a decade that the sidewalks on the Strip, and specifically the sidewalks in front of the Venetian comprise a public forum.  *See, e.g. S.O.C., Inc. v. County of Clark*, 152 F.3d at1144; *Venetian* I, 45 F.Supp. 2d at 1036; *Venetian II*, 257 F.3d at 939-43. As Metro itself was a party to the earlier *Venetian* cases, any excuse on the part of police relying on a lack of knowledge about this fact is not credible. Moreover, a street performer's right to access and exercise free speech rights on public sidewalks is also clearly established in the Ninth Circuit. *Berger v. City of Seattle*, 569 F.3d at 1034-35.   Sheriff Gillespie and Captain Hank both testified that they were aware that the sidewalk in front of the Venetian was a public sidewalk where the First Amendment applies. (Hank Depo. Tr., Ex. 5 at 114:4-22; Gillespie Depo. Tr., Ex. 3, at 42:15-43:16, 57:16-58:1, 34:3-8).

---

[3] *Pearson* overruled *Saucier's* holding that the two-step inquiry of determining: (1) whether the defendant's conduct violated a constitutional right; and (2) if so, whether the right was clearly established must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation. Otherwise, *Saucier* is good law.

Sheriff Gillespie, Captain Hank, and Officer Schaier all testified that they were aware of the prior and ongoing litigation surrounding Free Speech rights on the Strip.  (Gillespie Depo. Tr., Ex. 3, at 54:3-9, 56:4-8 and16:24-17:22; Hank Depo. Tr., Ex. 5, at 55:20-56:13; Schaier Depo. Tr., Ex. 8, at 96:13-97:15). Reasonable Officers in Scott, Schaier, and Bell's position would have known that they could not issue trespass misdemeanor warnings cautioning Plaintiffs that if they even returned to the sidewalks outside the Venetian they could be cited or arrested.  Moreover, reasonable officers in their position would have taken action against the Venetian personnel for unlawfully detaining  Plaintiffs.

It is equally well established that officers do not have the right to search and detain individuals that the officer knows did not engage in any wrongdoing as unreasonable searches and seizures are explicitly prohibited by both Nev. Rev. Stat. 171.123 and the Fourth Amendment.  See U.S. Const., Amend. IV.  In fact, the officers should have known that even handcuffing the brothers for an alleged trespass violation was a violation of their civil rights.  *See Meredith v. Erath*, 342 F.3d 1057, 1061 (2003) (holding that handcuffing an individual while their home is being searched for IRS infractions constituted excessive force because IRS infractions are nonviolent offenses).  The alleged trespass violations, like the IRS infractions in *Meredith*, were non-violent offenses that did not warrant the use of any restraints.  Furthermore, the record shows that Plaintiffs were "well-behaved" even when out of handcuffs. (Bronson Depo. Tr., Ex. 1, at 68:14-18).  Nevertheless, Officers Schaier, Scott, and Bell left Plaintiffs strapped to chairs, placed them in Metro handcuffs, and searched them—all without reasonable suspicion or probable cause.  (Jason Decl., Ex. 14, at ¶ 12; Sebastian Decl., Ex. 16, at ¶ 10; 80:5; JPM Depo. Tr., Ex. 6, at 145:16-146:5; Schaier. Depo. Tr., Ex. 8, at 64:7-9, 69:11-12 ("no trespass had occurred"); Scott Depo. Tr., Ex. 9, at 79:1-80:5, 100:11-101:7 (he just gave a "warning" because he did not think Jason had done anything wrong.)).  Reasonable officers in Officers Scott, Schaier or Bell's position would have known that it is clearly unconstitutional to handcuff Plaintiffs and detain them.

Finally, there is nothing new or novel about the due process rights that Officers Scott, Schaier, and Bell violated.  Few rights can be more basic or better established than the right to be free from arbitrary law enforcement action when there is no reasonable suspicion of wrongdoing, yet alone probable cause.   As argued in Sections C and D, *supra*., the officers on the scene failed to adequately protect Plaintiffs' rights and in fact acted deliberatively indifferent towards their rights.  Instead of protecting Plaintiffs' rights, the officers arbitrarily took action against them, despite their doubts that the men had engaged in any wrongdoing.  By doing so, without even investigating any of the facts, the officers violated Plaintiffs' clearly established due process rights.  Accordingly, Officers Schaier, Scott, and Bell are not entitled to qualified immunity.

### G.   Sheriff Gillespie is Not Entitled to Summary Judgment Because He is Responsible For the Police Department's Policies and Customs that Injured Plaintiffs.

Contrary to the Metro Defendants' assertion, Sheriff Gillespie is not entitled to summary judgment.  Although Plaintiffs concede that the sheriff was not on the scene giving rise to this litigation, his actions—more specifically his inactions, created a police culture that caused the Constitutional violations.

The Supreme Court has held that state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). "[P]ersonal-capacity suits… seek to impose individual liability upon a government officer for actions taken under color of state law." Id. at 25. The Ninth Circuit has held that police supervisors can be held liable for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Sheriff Gillespie had specific knowledge of the First Amendment rights on the Las Vegas Strip, the efforts of the casinos to curtail those rights, and he knew, or should have known, that his

16

officers were actively searching for ways to get around protecting those rights, as one of his sergeants publicly boasted in a recent media interview. (Hank Depo. Tr., Ex. 5 at 114:4-22; Gillespie Depo. Tr., Ex. 3. at 42:15-43:16; Ex. 17 at Bates No. LVMPD 01131 (Ex. 62 to Hank Depo. Tr. whereby Deputy Chief Gary Schofield acknowledged that the Venetian believes it can control the public sidewalk.)). Despite this knowledge, Sheriff Gillespie admits that he failed to adequately train his force to handle speech issues on the Strip. (Gillespie Depo. Tr., Ex. 3 at 16:24-17:22, 54:3-9, 56:4-8, 52:2-13); David G. Schwartz, Freaks and Felons, LAS VEGAS SEVEN, June 2, 2011.) Sheriff Gillespie's inaction through his continued failure to adequately train his officers amounts to acquiescence in the deprivation of the Constitutional rights of those on the Strip, and also demonstrates his reckless or callous indifference to those rights. This lack of leadership caused the harm to Plaintiffs as Officer Schaier candidly stated that had he been trained adequately, he would have acted differently towards Plaintiffs. (Schaier Depo. Tr., Ex. 8, at 72:2-14, 100:23-101:9). Accordingly, there is a sufficient connection between Sheriff Gillespie's failures and the constitutional violation suffered by Plaintiffs, and the claims against the Sheriff must survive summary judgment. *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (Requiring connection between supervisor's wrongful conduct and the Constitutional violation).

### H. Plaintiffs' Municipal Liability Claims Must Survive Summary Judgment because the Police Department has a Custom and Practice of Working With Casinos to Deprive People of Their Civil Liberties and Because the Sheriff Failed to Enact Policies to Adequately Protect Civil Rights.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978), the Supreme Court held that local government organizations and municipalities are liable under § 1983 for their policies or customs that injure a plaintiff's civil rights. In addition to being held liable for a formally enacted policy, a municipal entity, including a police department "may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels." *Id*. at 690-91; *see also Adickes v.*

17

*S. H. Kress & Co*., 398 U.S. 144, 167-168 (1970).  The Metropolitan Police Department, is liable under *Monell* because the record is replete with evidence that the Sheriff failed to enact policies aimed at protecting First Amendment rights on the Strip, and because the Department had a custom and practice of cooperating with the casinos to deprive people of their civil rights.  *See* Whiddon Depo. Tr., Ex. 11, at 75:2-13; 77:25-78:5; 78:12-79:24, 266:19-267:5 (Tony Whiddon, the Executive Director of Venetian Security characterizing the Venetian's relationship with the police department as a formal partnership and stating that the Venetian Security worked with Metro to develop their policies); Gillespie Depo. Tr., Ex. 3 at 90:2-94:17 (discussing various meetings that regularly occur between him and casino personnel); LVSCA 000005 (Las Vegas Security Chiefs' Ass'n Meeting Minutes, Ex. 30).  During his deposition, Whiddon testified that when responding to calls from Venetian Security, the LVMPD supports the Casino's actions.   According to Whiddon, Metro has never told the Venetian Security that they "got it wrong." (Whiddon Depo. Tr, Ex. 11, at 250:4-6 ).

The Supreme Court has held that a failure to properly train constitutes a policy or custom that gives rise to municipal liability.  *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992).  *See also City of Canton v. Harris,* 489 U.S. 378, 390 (1989) (inadequacy of police training creates liability where it constitutes deliberate indifference to constitutional rights).   Sheriff Gillespie acknowledged that Metro officers on the strip were confused about the applicability of First Amendment rights on the Strip. (Gillespie Depo. Tr., Ex. 3, at 16:24-17:22).  He also acknowledged that he failed to adequately train his officers about this issue. (Gillespie Depo. Tr., Ex. 3 at 54:3-9, 56:4-8, 52:2-13.).  Moreover, one of the arresting officers conceded that if he were given adequate training he would have handled the January 15, 2010 incident differently.  (Schaier Depo. Tr., Ex. 8, at 72:2-14, 100:23-101:9).  Because there is extensive evidence that Metro's leadership was aware of First Amendment issues on the strip, the failure to train officers how to handle those frequent issues demonstrates the requisite indifference, and thus gives rise to municipal liability. Accordingly, these claims cannot be dismissed on summary judgment.

**I.  Plaintiff's Countermotion for Summary Judgment Should Be Considered for Judicial Economy.**

The Court should consider Plaintiffs' countermotion for Summary Judgment because it is in no one's interests to proceed to trial on claims for which there is no genuine question of material fact.  The Metro Defendants acknowledge that Courts have broad discretion in controlling their dockets.  *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002); Metro Reply Brief p. 19. Here, it is appropriate to consider Plaintiffs' countermotion because doing so will ensure that this litigation proceeds in an orderly fashion and because entertaining the countermotion will not prejudice the Defendants, as they have exhaustively briefed the issues.  *See Kolob Heating and Cooling v. Insurance Corp. of New York*, 154 Fed.Appx. 569, 570, (C.A.9 (Nev.) 2005) ("The district court did not abuse its discretion by considering … late-filed motion for summary judgment" because the opposing party was not prejudiced by the untimeliness of the motion).  Moreover, the Court has authority to rule on claims on summary judgment *sua sponte*.  *See Norse v. City of Santa Cruz*,  629 F.3d 966, 972 (9th Cir. 2010) (internal quotation and citation omitted) ("Sua sponte grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue.").  The Metro Defendants have had reasonable notice that there is a lack of genuine issues of material facts to support their defenses.  Accordingly, considering Plaintiffs' countermotion is therefore appropriate.

**III.     CONCLUSION**

The Metro Defendants' Motion for Summary Judgment must be denied because there is extensive evidence supporting each of Plaintiffs' claims.  In contrast, the Metro Defendants have conceded that the Plaintiffs should not have been issued misdemeanor trespass warnings since they were in fact on public sidewalk when they were accosted by the Venetian security, and that the trespass warnings have consequences.  Moreover, the Metro Defendants have also conceded that officers were not properly trained regarding First Amendment issues on the Strip and that the

arresting officer would have handled the situation differently had he received the proper training. As all of the rights violated by the Metro Defendants were clearly established prior to the incidents giving rise to this litigation, their summary judgment motion cannot be granted.

Dated this 6th day of September, 2011

Respectfully submitted by:

ACLU of Nevada

/s/ Allen Lichtenstein
Allen Lichtenstein
Nevada Bar No. 3992
General Counsel, ACLU of Nevada
3315 Russell Road, No. 222
Las Vegas, NV 89120
(702) 433-2666
Attorney for Plaintiffs

20

1

2                                 **CERTIFICATE OF SERVICE**

3          I hereby certify that on the day of September 6, 2011, I caused to be served a true and correct

4  copy of Plaintiffs' Reply to Metro's Opposition to Countermotion Summary Judgment to all of the

5  interested parties through the Court's Case Management and Electronic Case Filing (CM/ECF) filing

6  system to all parties listed below:

7

8  Nick Crosby, Esq.
   Marquis Aurbach Coffing
9  10001 Park Run Drive
   Las Vegas, NV 89145
10 Lionel Sawyer Collins

11
   Sam Lionel, Esq.
12 Robert Hernquist, Esq.
   Lionel Sawyer & Collins
13 1700 Bank of America Plaza
   Las Vegas, NV 89101
14

15                                                     /s/Allen Lichtenstein

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             21