Case 2:10-cv-00899-PMP -RJJ   Document 119   Filed 10/25/11   Page 1 of 16

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASON A. PEREZ-MORCIGLIO and SEBASTIAN PEREZ-MORCIGLIO,<br><br>Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE; SERGEANT KENDALL BELL; OFFICER T. SCOTT; OFFICER S. SCHAIER; LAS VEGAS SANDS CORPORATION; VENETIAN CASINO RESORT, LLC; ELI CASTRO; LINDA HAGENMAIER; RON HICKS; WILLIAM LOVEGREN; ANTHONY BRONSON; KEVIN NEANOVER; KIM GORMAN; PAUL TANNER; and TONY WHIDDON,<br><br>Defendants. | 2:10-CV-00899-PMP-RJJ<br><br>ORDER |

Presently before the Court is Defendants Las Vegas Sands Corp.; Venetian Casino Resort, LLC; Eli Castro; Linda Hagenmaier; William Lovegren; Anthony Bronson; Kevin Neanover; Kim Gorman; Paul Tanner; and Tony Whiddon's ("Venetian Defendants") Motion for Summary Judgment (Doc. #80), filed on May 23, 2011. Plaintiffs filed an Opposition and Counter-Motion for Summary Judgment (Doc. #95) on June 17, 2011. Venetian Defendants filed a Reply (Doc. #103) on July 12, 2011. The Court held a hearing on these motions on September 27, 2011. (Mins. of Proceedings (Doc. #118).)

///

///

## I. BACKGROUND

Plaintiff Jason Perez-Morciglio ("Jason") is a street performer who dresses up as a masked bandit like Zorro and performs as this character on the sidewalks along the Las Vegas Strip. (Venetian Defs.' Mot. Summ. J. (Doc. #80) ["VMSJ"], Ex. 3 at 1.) When he performs, he applies his knowledge from theater and dancing, and uses his "artistic charm" to entertain tourists and locals. (LVMPD Defs.' Mot. Summ. J. (Doc. #81) ["LVMPD MSJ"], Ex. A at 12.) Jason has been performing as Zorro on the Las Vegas Strip since January 2010, and previously did so on Hollywood Boulevard for over seven years. (VMSJ, Ex. 3 at 1.) Jason avers that when he is performing, he does not ask people for money, but he will accept tips if offered to him. (Id.) Jason carries plastic swords and knives with him so he can do play sword fights with audience members, or to use as props when posing in pictures with tourists, but he denies selling anything. (Id.; LVMPD MSJ, Ex. A at 15.) Plaintiff Sebastian Perez-Morciglio ("Sebastian") is Jason's brother, and also a street performer who performs as Darth Vader. (VMSJ, Ex. 6 at 1.)

On Friday, January 15, 2010, Jason was dressed up as Zorro and went to the Las Vegas Strip to perform. (Id.) Sebastian was with his brother, but was not dressed as any character. (Id.) Plaintiffs were passing the Venetian to get to the Paris or Bellagio hotels. (VMSJ, Ex. 4 at 125.) Jason was near the fence between the sidewalk and Las Vegas Boulevard. (VMSJ, Ex. 3 at 1; Notice of Manual Filing (Doc. #82).) Sebastian paused at the fence to watch the Mirage Hotel volcano show taking place across the street. (VMSJ, Ex. 6 at 1; Notice of Manual Filing.) Jason walked up to a trash can to throw away a tissue when Defendant William Lovegren ("Lovegren"), a private security guard with the Venetian, approached him. (VMSJ, Ex. 3 at 1; Notice of Manual Filing.)

Jason and Lovegren dispute what occurred during their initial encounter. According to Lovegren, he observed Jason from a distance of approximately fifty to sixty feet give a sword to a tourist, and the tourist gave Jason money. (VMSJ, Ex. 10 at 43-44.)

1  Although Lovegren could not hear any conversation between Jason and the tourist,
2  Lovegren concluded that Jason had solicited the tourist to purchase the sword. (Id. at 44-
3  45.) According to Lovegren, he then approached Jason and told Jason soliciting was not
4  permitted on the property. (Id. at 49.) Jason responded that Lovegren was violating his
5  First and Fourteenth Amendment rights. (Id. at 50.)
6       Jason denies that he sold anything prior to the time Lovegren approached him.
7  (VMSJ, Ex 4 at 124.) According to Jason, Lovegren told him that he was on private
8  property and had to leave immediately. (VMSJ, Ex. 3 at 1.) Jason told Lovegren he was on
9  a public sidewalk, and thus was not trespassing; Lovegren was violating his constitutional
10 rights; and Lovegren should call the police if Lovegren truly believed Jason was
11 trespassing. (VMSJ, Ex. 3 at 2.) When Jason would not leave, Lovegren's supervisor,
12 Defendant Anthony Bronson ("Bronson"), advised Lovegren via the radio to trespass Jason
13 by reading him Nevada Revised Statutes § 207.200 and by telling Jason that he was being
14 trespassed for soliciting, and Lovegren did so. (Id., Ex. 10 at 53-55, 62-64.) Bronson
15 acknowledges that soliciting is not illegal, but asserts it is a violation of an unwritten
16 Venetian policy, and that policy applies to the sidewalk in front of the Venetian. (Decl. of
17 Margaret A. McLetchie in Supp. of Pls.' Opp'n to Mot. Summ. J. of Venetian Defs. (Doc.
18 #93) ["Opp'n to VMSJ"], Ex. 1 at 44, 81.)
19      Both Jason and Lovegren agree that Lovegren asked Jason to leave and read him
20 the trespass card several times, but Jason refused to leave and continued to assert his right
21 to be on the sidewalk. (VMSJ, Ex. 4 at 146, Ex. 10 at 54-56.) According to Lovegren, he
22 told Jason that the Venetian owned the property up to the curb, and although there is a
23 public walk-through, Jason could not solicit in that area. (VMSJ, Ex. 10 at 56.)
24      Four more Venetian security guards, Defendants Linda Hagenmaier
25 ("Hagenmaier"), Ron Hicks ("Hicks"), Eli Castro ("Castro"), and Kevin Neanover
26 ("Neanover"), then arrived on the scene. (VMSJ, Ex. 3 at 1.) According to Lovegren, after

3

he had read Jason the trespass statute three times and Jason still refused to leave, Bronson told Lovegren to bring Jason to the back of the hotel.  (VMSJ, Ex. 10 at 58-60.)  Jason states that after he told the security guards to call the police, they placed him in handcuffs.  (VMSJ, Ex. 3 at 1.)   Although there is some dispute in the record as to who made the decision to place Jason in handcuffs,[1] Lovegren and Castro put Jason in handcuffs.  (VMSJ, Ex. 10 at 61; Notice of Manual Filing.)

       As the security guards were placing Jason in handcuffs, Sebastian approached Hagenmaier and asked what Jason had done wrong.  (VMSJ, Ex. 3 at 1, Ex. 6 at 1.)  Sebastian had a cigarette in one hand and a soda bottle in the other hand.  (Opp'n to VMSJ, Ex. 4 at 63.)  Hagenmaier told Sebastian to leave or she would arrest him, but he did not leave, instead he asked her why she did not call the police.  (VMSJ, Ex. 3 at 1, Ex. 6 at 4, Ex. 7 at 25; Opp'n to VMSJ, Ex. 1 at 60.)  Hagenmaier and Neanover then placed Sebastian in handcuffs as well.  (VMSJ, Ex. 3 at 1, Ex. 6 at 4, Ex. 7 at 25; Opp'n to VMSJ, Ex. 1 at 60; Notice of Manual Filing.)

       The security guards walked Jason and Sebastian across Venetian property and into the Venetian casino security office holding area.  (VMSJ, Ex. 3 at 2; Notice of Manual Filing.)  In the office, Jason continued to tell the officers that he had done nothing wrong and they were violating his First and Fourteenth Amendment constitutional rights.  (VMSJ, Ex. 3 at 2-3.)  Lovegren searched Jason, removed objects from his bag, and asked Jason for his identification.  (Id.)  Jason avers he refused to give his identification, and demanded to talk to a police officer and an attorney.  (Id.)  After searching him, the security guards fastened Jason to a bench with a seatbelt while he was still in handcuffs.  (Id.; Notice of Manual Filing.)  Sebastian also was searched and left in handcuffs.  (Opp'n to VMSJ, Ex. 24

---

[1] According to Lovegren, either Bronson or Hagenmaier told Lovegren to put Jason in handcuffs.  (VMSJ, Ex. 10 at 60-65.)  According to Bronson, Lovegren was the person who decided to place Jason in restraints.  (Opp'n to VMSJ, Ex. 1 at 37.)

at 2; Notice of Manual Filing.)

Approximately twenty minutes after the security guards brought Jason and Sebastian to the holding area, two LVMPD officers, Defendants Scott Schaier ("Schaier") and Terry Scott ("Scott"), arrived. (Notice of Manual Filing.) Schaier took off the Venetian's handcuffs and put his own handcuffs on Jason. (Id.; VMSJ, Ex. 3 at 3.) Schaier requested Jason's consent to search Jason's satchel, and Jason consented, but indicated the Venetian security officers did not request a consent to search him. (Notice of Manual Filing.) According to Jason, Schaier responded that the security guards could "do whatever they wanted because [Plaintiffs] were on private property." (VMSJ, Ex. 3 at 3; see also Notice of Manual Filing.)

Scott subsequently advised Jason and Sebastian that the police were not going to arrest them, but that the officers were going to give them a trespass warning to sign.[2] (VMSJ, Ex. 3 at 3-4.) Sebastian did not want to sign the warning because it said he was trespassing on private property and Sebastian believed that was not true. (VMSJ, Ex. 7 at 30.) However, Sebastian eventually signed the warning. (Id.)

Jason refused to sign the warning because he contended he was on a public sidewalk and he believed he had not been trespassing. (VMSJ, Ex. 3 at 4.) Schaier told Jason that if he did not sign the warning, Schaier would take him to jail and he could talk to a judge about it. (Id.) Scott then called Schaier away, and when they returned to the holding room, Schaier removed the handcuffs and told Jason to sit with his hands above his head. (Id.) The officers did not require Jason to sign the warning, but advised him that it

---

[2] Plaintiffs have presented evidence that the misdemeanor warning was issued in violation of LVMPD policy. Defendant Sheriff Douglas Gillespie testified that the misdemeanor warning should not have been given in the case of a trespass warning because no offense had been committed. (Opp'n to LVMPD Defs.' Mot. Summ. J. (Doc. #105), Ex. 3 at 81-82.) LVMPD policy provides that a misdemeanor warning should be given only for misdemeanor offenses committed in the officers' presence. (Id., Ex. 27 at 554.)

5

1   did not matter if he refused to sign, he still was not welcome on the Venetian's property.
2   (Notice of Manual Filing.)
3         Venetian security officers re-read trespass cards to Plaintiffs.  (VMSJ, Ex. 3 at 4.)
4   The security officers also advised Plaintiffs not to come back to the Venetian or the Palazzo
5   or they would be arrested.  (Id.)  When asked whether Plaintiffs could use the public
6   sidewalk in front of the property, the security officers responded that Plaintiffs could use
7   the sidewalk to pass in front of the property, but if they stopped they would be arrested.  (Id.
8   at 5.)  However, in Bronson's opinion, Plaintiffs would be trespassing if they came back to
9   the sidewalk.  (Opp'n to VMSJ, Ex. 1 at 88.)  The security officers then escorted Plaintiffs
10  out of the casino.  (Id.)
11        Plaintiffs aver that following this incident they were afraid to go back to the
12  sidewalk in front of the Venetian for fear of being arrested.  (VMSJ, Ex. 3 at 5, Ex. 7 at 46,
13  103.)  Plaintiffs state they purchased a vehicle so they would not have to pass in front of the
14  Venetian on foot again.  (VMSJ, Ex. 7 at 46.)
15        Based on this incident, Plaintiffs filed suit in this Court, asserting claims against
16  Venetian Defendants for violation of Plaintiffs' First Amendment rights (count one);
17  violation of Plaintiffs' Fourth Amendment rights against unlawful arrest (count two);
18  violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches
19  (count three); violation of Plaintiffs' Fourth Amendment right to be free from unlawful
20  detention (count four); civil conspiracy (count five); violations of Plaintiffs' substantive due
21  process rights under the Fourteenth Amendment (count six); false imprisonment (count
22  eight); battery (count nine); intentional infliction of emotional distress (count ten); negligent
23  infliction of emotional distress (count eleven); and negligent training, supervision, and
24  retention against the Venetian only (count twelve).  (Fourth Am. Compl. (Doc. #59).)
25  Venetian Defendants now move for summary judgment on all claims against them.
26  Plaintiffs oppose and counter-move for summary judgment.

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

### A. Section 1983 Constitutional Claims - Counts One to Six

Venetian Defendants move for summary judgment on Plaintiffs' § 1983 constitutional claims against them because Venetian Defendants are not state actors. Plaintiffs respond by arguing Venetian Defendants acted under color of state law because they performed the inherently public function of regulating a public forum by policing the public sidewalk in front of the Venetian. Alternatively, Plaintiffs argue Venetian Defendants engaged in joint action or conspired with state actors in regulating the sidewalk.

"To state a claim under [42 U.S.C.] § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001). A defendant acts under color of law if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988) (quotation omitted). "Action under color of state law normally consists

of action taken by a public agency or officer." Taylor v. First Wyo. Bank, N.A., 707 F.2d 388, 389 (9th Cir. 1983).

However, under some circumstances, private individuals may be liable as governmental actors. See Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003); Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338, 1340 (9th Cir. 1997). Conduct by a private individual constitutes state action when (1) the claimed deprivation "'resulted from the exercise of a right or privilege having its source in state authority,'" and (2) under the facts of the particular case, the private party appropriately may be characterized as a state actor. Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 955 (9th Cir. 2008) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 (1982)).

The courts have identified several tests to determine whether a private entity acts under the color of state law, including when the private entity engages in conduct that is traditionally exclusively reserved to the State ("Public Function Test") or when the private entity acts jointly with the State ("Joint Action Test"). Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997). Although these tests and other such tests are helpful in determining state involvement, "'there is no specific formula for defining state action.'" Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 836 (9th Cir. 1999) (quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983) (quotation omitted)). Rather, a court should look to whether a sufficiently close nexus between the state and the challenged conduct exists to fairly attribute the conduct to the state. Id. The inquiry is fact specific. Id. The Court begins with the presumption that private conduct does not constitute governmental action. Id. at 835.

                1.  Public Function Test

Under the public function test, a private actor performs a public function if his activities traditionally have been the State's exclusive prerogative. Brunette v. Humane Soc'y of Ventura Cnty., 294 F.3d 1205, 1214 (9th Cir. 2002). For example, holding

elections, governing a town, or serving as an international peacekeeping force are traditionally exclusively the State's prerogative, and a private actor engaged in such activities will be held to be a state actor.  Id.

The United States Court of Appeals for the Ninth Circuit has addressed the issue of whether a private actor becomes a state actor by performing the traditional state function of operating a public forum.  For example, in Lee v. Katz, the Ninth Circuit stated that by "regulating free speech" in a public forum, a private actor "performs an exclusively and traditionally public function within a public forum."  276 F.3d 550, 554 (9th Cir. 2002). However, in Lee, the Ninth Circuit stated that " the [private actor] became a State actor when the City delegated . . . regulation [of a public forum] to the [private actor]."  Id. at 556 & n.6 (noting that the lease required the private actor to allow free speech on the Commons as required by law).  The Ninth Circuit specifically noted that a private actor does not become a state actor "when the State maintains the ultimate power to regulate activities in the forum."  Id. at 556.

Following on that premise, the Ninth Circuit held that a festival organizer does not become a state actor merely because it reserves public property, such as a park or streets and sidewalks, to conduct its activities.  Villegas, 541 F.3d at 955-56.  Critical to this holding was the fact that the private actor needed a permit to operate the festival, thereby "showing that the City retained control of the park and provided security services."  Id. at 956.

The state actor inquiry is focused on whether the source of the private actor's power comes from the State.  Lugar, 457 U.S. at 937 (explaining that to show state action, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible").  If the private actor is merely claiming power derived from the State with no actual delegation or abdication by the State, the private actor's mere attempts to perform

9

traditional public functions do not suffice to make the private actor a state actor. In Lee, the State delegated the power to control a public forum to the private actor, whereas in Villegas the city specifically declined to delegate its authority, leading to the conclusion that the festival organizer was not a state actor.

Here, there is no question that the sidewalk in front of the Venetian is a traditional public forum, as this Court and the Ninth Circuit already made this determination ten years ago. Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd. of Las Vegas, 257 F.3d 937, 948 (9th Cir. 2001) (holding "the Venetian's sidewalk constitutes a public forum subject to the protections of the First Amendment"); Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd. of Las Vegas, 45 F. Supp. 2d 1027, 1036 (D. Nev. 1999) ("The public may use the Venetian's sidewalk for First Amendment purposes to the same degree that it may use any other public sidewalk subject to content neutral and reasonable time, place, and manner restrictions"); see also Am. Civil Liberties Union of Nev. v. City of Las Vegas, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks."). Consequently, the only question here is whether Venetian, by attempting to police what activity may occur on the sidewalk, is performing a public function.

In the prior Venetian case, this Court stated that "by owning and maintaining the particular sidewalk at issue in this case, the Venetian is performing a public function." 45 F. Supp. 2d at 1035. However, the Court was not tasked in that case with deciding whether Venetian was a state actor. While operating and policing a public forum is traditionally exclusively a public function, this case is more like Villegas than Lee, and the Venetian Defendants are not state actors as a matter of law. There is no evidence the State or County have delegated, either expressly or by acquiescence, any authority to the Venetian to regulate the public sidewalk. Rather, the evidence is to the contrary. For example, the prior litigation involving the Venetian's sidewalk resulted from a union seeking a protest permit

from the County, which the County granted.  <u>Venetian Casino Resort, L.L.C.</u>, 45 F. Supp. 2d at 1031.  When the Venetian warned the protesters they were on private property and must leave, the LVMPD consulted with the district attorney and refused to make any arrests.  <u>Id.</u>  Consequently, the governmental authorities asserted the power to control the sidewalk, both through the permitting process and through the decision about whether to make arrests on the sidewalk.

The facts of the instant case likewise support this conclusion.  The Venetian Defendants took Plaintiffs into their custody, but when LVMPD officers arrived, the police officers refused to make an arrest.  Additionally, evidence in the record shows that LVMPD has taken the position that it will not enforce the trespass law on the public sidewalk in front of casinos on the Strip without a court order.  (LVMPD MSJ, Ex. H; Opp'n to LVMPD MSJ, Exs. 17, 18.)  Consequently, Venetian Defendants do not have any authority deriving from the State to police the public forum on the Venetian's private property.  The Venetian Defendants therefore are not state actors under the public function test as a matter of law.

### 2.  Joint Action Test

"To be engaged in joint action, a private party must be a willful participant with the State or its agents in an activity which deprives others of constitutional rights." <u>Brunette</u>, 294 F.3d at 1211.  The joint action test is satisfied if "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.  This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." <u>Kirtley</u>, 326 F.3d at 1093 (quotation omitted).  There must be a "substantial degree of cooperation" between the private actor and the state to support finding a private actor jointly acted with the state. <u>Franklin v. Fox</u>, 312 F.3d 423, 445 (9th Cir. 2002).

If a plaintiff can show the police condoned a private party's activity that the police knew to be illegal, a question of fact will exist as to whether the private party and the

state actors acted jointly. Peng v. Mei Chin Penghu, 335 F.3d 970, 980 (9th Cir. 2003) (citing Soldal v. Cook Cnty., 506 U.S. 56, 58-60 & n.6 (1992)). Alternatively, if the plaintiff can show the police substantially cooperated with the private actor on multiple occasions, that may suffice to support state action. Howerton, 708 F.2d at 381. However, merely complaining to the police or the police standing by to keep the peace do not amount to joint action. Peng, 335 F.3d at 980 (A "single request to the police, without more, [is] not sufficient to establish a claim against a private actor pursuant to § 1983."); Collins v. Womancare, 878 F.2d 1145, 1155-56 (9th Cir. 1989).

Here, there is no evidence raising a genuine issue of material fact that Scott and Schaier knew Venetian Defendants were engaging in illegal conduct. Scott and Schaier indicated they did not know where Plaintiffs were located at the time Venetian Defendants intercepted them, and therefore Scott and Schaier did not know whether Venetian Defendants properly were asserting Plaintiffs were on private property. Scott and Schaier testified in their depositions they thought it was a gray area as to the competing legal rights on the sidewalk, and where the boundary line was between public and private property at the Venetian. (LVMPD MSJ, Ex. C at 67-68, Ex. D at 49-51.) Because Scott and Schaier were not sure whether Venetian Defendants properly trespassed Plaintiffs from private property, they did not know Venetian Defendants' conduct was illegal and therefore Scott and Schaier did not condone illegal conduct.

Additionally, no genuine issue of material fact remains that Venetian Defendants are not state actors under the joint action test by virtue of their interaction with the police officers. A single instance of police officers standing by to keep the peace while Venetian Defendants read the trespass warning to Plaintiffs does not amount to joint action. Venetian Defendants effected the citizen's arrests prior to the police officers' arrival, and Plaintiffs were taken into custody solely at the impetus of the private actors. When Scott and Schaier arrived and talked to the security personnel and Plaintiffs, they refused to arrest Plaintiffs.

There is no evidence of a prearrangement between Scott, Schaier, and the Venetian security guards. Venetian Defendants are not state actors under the joint action test as a matter of law.

### 3.  Joint Action Test - Conspiracy

"A conspiracy between the State and a private party to violate another's constitutional rights may also satisfy the joint action test." Brunette, 294 F.3d at 1211.  To establish a conspiracy, the plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (quotation omitted).  "To be liable as co-conspirators, each participant in a conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 445.  The alleged co-conspirators therefore must share "the goal of violating a plaintiff's constitutional rights." Id.

Plaintiffs have failed to present evidence raising a genuine issue of material fact that there was a meeting of the minds to violate Plaintiffs' constitutional rights. Venetian Defendants made the decision to remove Plaintiffs from the sidewalk and to detain them without any participation by the police officers. When Scott and Schaier arrived, they declined to arrest Plaintiffs despite Venetian Defendants' request they do so. Plaintiffs present no evidence Scott or Schaier acted with the goal of violating Plaintiffs' constitutional rights. Scott testified that he was called out to the Venetian in a similar incident, determined the individual who allegedly was trespassing was on the public sidewalk, and advised the Venetian security officer that he would not be taking any law enforcement action. (LVMPD MSJ, Ex. C at 42-43.)  There is no evidence raising a genuine issue of material fact that LVMPD police officers generally, or Scott and Schaier in particular, had a meeting of the minds with the Venetian security guards to violate the constitutional rights of street performers generally or Plaintiffs specifically.

Venetian Defendants are not state actors as a matter of law under any theory. The Court therefore will grant summary judgment in favor of Venetian Defendants and will deny Plaintiffs' Counter-Motion on all of Plaintiffs' § 1983 constitutional claims.

**B. State Law Tort Claims - Counts Eight to Twelve**

Venetian Defendants assert that Nevada Revised Statutes § 651.020 permits them to use force to eject trespassers from their property and their conduct therefore was privileged. Venetian Defendants also move for summary judgment on the emotional distress claims, arguing there is no evidence of emotional distress or outrageous conduct.

Plaintiffs respond by agreeing to voluntarily dismiss the emotional distress claims. (Opp'n to VMSJ at 10 n.3.) As to the other state law claims, Plaintiffs argue Venetian Defendants have no right to eject members of the public from a traditional public forum. Plaintiffs also contend that even if Venetian Defendants have the rights they claim, issues of fact would remain as to whether Defendants used excessive force to evict Plaintiffs from the sidewalk.

This Court and the Ninth Circuit already have ruled that the sidewalk in front of the Venetian is a public sidewalk and Venetian Defendants have no right to exclude members of the public from the public sidewalk. This Court specifically stated that "[s]ince the sidewalk performs an essential public function, the Venetian does not have the right to exclude individuals from the sidewalk based upon permissible exercises of their right to expression under the First Amendment." Venetian Casino Resort, L.L.C., 45 F. Supp. 2d at 1036. The Ninth Circuit echoed this sentiment: "Property that is dedicated to public use is no longer truly private. Although the owner of the property retains title, by dedicating the property to public use, the owner has given over to the State or to the public generally one of the most essential sticks in the bundle of rights that are commonly characterized as property, the right to exclude others." Venetian Casino Resort, L.L.C., 257 F.3d at 945-46 (quotation omitted). Venetian Defendants have dedicated the sidewalk in front of the

Venetian to public use, and that sidewalk is a traditional public forum from which the Venetian Defendants have no right to exclude Plaintiffs.  Id. at 946.

Venetian Defendants rely on cases holding the government may exclude members of the public from non-public forums.  But those cases have no application here because the sidewalk in front of the Venetian is a traditional public forum.  Compare Venetian Casino Resort, L.L.C., 257 F.3d at 948 ("As a thoroughfare sidewalk, seamlessly connected to public sidewalks at either end and intended for general public use, the sidewalk in front of the Venetian is the archetype of a traditional public forum." (quotation omitted)), with United States v. Kokinda, 497 U.S. 720, 727-30 (1990) (holding a sidewalk leading from the public sidewalk to a post office was a non-public forum and the government therefore could forbid individuals from setting up tables and passing out literature on the non-public forum sidewalk); Adderley v. State of Fla., 385 U.S. 39, 41 (1966) (holding that demonstrators at a jail trespassed based on finding that the jail was not open to the public, that is, it was not a traditional public forum).

Finally, Venetian Defendants argue that under Nevada state law, they legally are required to police a public sidewalk that traverses their private property, and therefore they have the concomitant right to exclude members of the public from that sidewalk for conduct which violates Venetian's private unwritten policies.  The cases upon which Venetian Defendants rely do not support their position.  In Herndon v. Arco Petroleum Co., the Nevada Supreme Court held that where a private property owner makes "special use" of a public sidewalk that traverses private property, the private property owner may be liable in negligence if that special use creates a hazard.  536 P.2d 1023, 1024-25 (Nev. 1975); see also Wiseman v. Hallahan, 945 P.2d 945, 946 (Nev. 1997) (reaffirming Nevada's adoption of the rule that "abutting property owner or occupant is under no duty to keep the sidewalk in front of his property in a reasonably safe condition" (quotation omitted)).  Herndon does not purport to authorize or require private land owners to police public sidewalks traversing

their private property or to grant private property owners the power to eject members of the public from public sidewalks traversing private property.

This Court and the Ninth Circuit made clear ten years ago that as "a thoroughfare sidewalk, seamlessly connected to public sidewalks at either end and intended for general public use," the sidewalk in front of the Venetian is a public sidewalk, and consequently, a traditional public forum from which Venetian Defendants have no right to exclude members of the public. Venetian Casino Resort, L.L.C., 257 F.3d at 948. The Court therefore will deny Venetian Defendants' Motion for Summary Judgment on the state law claims.

The Court will not consider Plaintiffs' Counter-Motion. Plaintiffs did not timely file the motion, this Court previously denied Plaintiffs' request to extend the dispositive motion deadline (Doc. #79), and Plaintiffs filed the Counter-Motion without leave of the Court.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Las Vegas Sands Corp.; Venetian Casino Resort, LLC; Eli Castro, Linda Hagenmaier; William Lovegren; Anthony Bronson; Kevin Neanover; Kim Gorman; Paul Tanner; and Tony Whiddon's Motion for Summary Judgment (Doc. #80) is hereby GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiffs' constitutional claims in counts one through six. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' Counter-Motion for Summary Judgment (Doc. #95) is hereby DENIED.

DATED: October 25, 2011

_____
PHILIP M. PRO
United States District Judge