1

2

3

4                        UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *
                                        )
7   JASON A. PEREZ-MORCIGLIO and        )
    SEBASTIAN PEREZ-MORCIGLIO,          )
8                                       )
             Plaintiffs,                )
9                                       )              2:10-CV-00899-PMP-RJJ
    v.                                  )
10                                      )
    LAS VEGAS METROPOLITAN POLICE       )
11  DEPARTMENT; SHERIFF DOUGLAS         )
    GILLESPIE; SERGEANT KENDALL         )
12  BELL; OFFICER T. SCOTT; OFFICER S.  )
    SCHAIER; LAS VEGAS SANDS            )              ORDER
13  CORPORATION; VENETIAN CASINO        )
    RESORT, LLC; ELI CASTRO; LINDA      )
14  HAGENMAIER; RON HICKS;              )
    WILLIAM LOVEGREN; ANTHONY           )
15  BRONSON; KEVIN NEANOVER; KIM        )
    GORMAN; PAUL TANNER; and TONY       )
16  WHIDDON,                            )
                                        )
17           Defendants.                )
    _____ )

18          Presently before the Court is Defendants Las Vegas Metropolitan Police

19  Department, Doug Gillespie, Officer Terry Scott, and Officer Scott Schaier's ("LVMPD

20  Defendants") Motion for Summary Judgment (Doc. #81), filed on May 23, 2011.  Plaintiffs

21  filed an Opposition (Doc. #105) and Counter-Motion for Summary Judgment (Doc. #112)

22  on July 14, 2011.  Defendants filed a Reply (Doc. #111) and Opposition (Doc. #113) on

23  August 12, 2011.  Plaintiffs filed a Reply (Doc. #116) on September 6, 2011.  The Court

24  held a hearing on these motions on September 27, 2011.  (Mins. of Proceedings (Doc.

25  #118).)

26  ///

## I.  BACKGROUND

The Court set forth the facts in this matter in an Order filed concurrently herewith and the Court will not repeat them here except where necessary.  Plaintiffs filed suit in this Court, asserting claims against the LVMPD Defendants for violation of the First Amendment (count one), violation of the Fourth and Fourteenth Amendments for unlawful arrest (count two), violation of the Fourth and Fourteenth Amendments for unreasonable search and seizure (count three), conspiracy to violate constitutional rights (count five), violation of substantive due process under the Fourteenth Amendment (count six), and violation of procedural due process under the Fourteenth Amendment (count seven). LVMPD Defendants now move for summary judgment on all claims against them. Plaintiffs oppose the motion and counter-move for summary judgment.

As an initial matter, LVMPD Defendants object to the Court considering Plaintiffs' Counter-Motion for Summary Judgment as untimely.  The Court will not consider Plaintiffs' Counter-Motion.  Plaintiffs did not timely file the motion, this Court previously denied Plaintiffs' request to extend the dispositive motion deadline (Doc. #79), and Plaintiffs filed the Counter-Motion without leave of the Court.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Initially, the moving party bears the burden of proving there is no genuine issue of material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the

1  moving party meets its burden, the burden shifts to the non-moving party to produce

2  evidence that a genuine issue of material fact remains for trial.  Id.  The Court views all

3  evidence in the light most favorable to the non-moving party.  Id.

4  **III. DISCUSSION**

5  To establish liability under § 1983, a plaintiff must allege the violation of a right

6  secured by the Constitution and laws of the United States, and must show that the alleged

7  deprivation was committed by a person acting under color of state law.  Broam v. Bogan,

8  320 F.3d 1023, 1028 (9th Cir. 2003).  To allay the "risk that fear of personal monetary

9  liability and harassing litigation will unduly inhibit officials in the discharge of their

10  duties," government officials performing discretionary functions may be entitled to

11  qualified immunity for claims made under § 1983.  Anderson v. Creighton, 483 U.S. 635,

12  638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who

13  knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling on a

14  qualified immunity defense, a court considers whether the facts alleged show the

15  defendant's conduct violated a constitutional right.  Sorrels v. McKee, 290 F.3d 965, 969

16  (9th Cir. 2002).  In making this determination, the court views the facts alleged in the light

17  most favorable to the party asserting the injury.  Id.  If the plaintiff has alleged the

18  defendant violated a constitutional right, the court then must determine whether that right

19  was clearly established.[1]  Id.

20  A right is clearly established if "'it would be clear to a reasonable officer that his

21  conduct was unlawful in the situation he confronted.'"  Wilkins v. City of Oakland, 350

22  F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194,

23

24

25  [1]  Under Saucier v. Katz, courts previously were required to address whether the plaintiff established a constitutional violation before addressing whether the right was clearly established.  533 U.S. 194 (2001).  However, the Saucier two-step procedure is no longer mandatory, and courts may consider the second step first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

26

3

202 (2001)).  The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 200.  An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable.  Wilkins, 350 F.3d at 955.  The plaintiff bears the burden of showing that the right at issue was clearly established.  Sorrels, 290 F.3d at 969.  But a plaintiff need not establish a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful.  Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997).  Additionally, a plaintiff may meet his burden on the clearly established prong by showing the defendant's conduct was "such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law."  Sorrels, 290 F.3d at 971.

The parties do not dispute that LVMPD Defendants acted under color of law.  The only remaining questions are whether LVMPD Defendants violated Plaintiffs' constitutional rights, whether Scott and Schaier are entitled to qualified immunity, whether Defendant Sheriff Gillespie personally participated in any violations, and whether municipal liability exists.

## A.  First Amendment - Count One

LVMPD Defendants argue they are entitled to summary judgment on Plaintiffs' First Amendment claim because they did not personally participate in removing Plaintiffs from the sidewalk, they never told Plaintiffs they could not engage in free speech on the sidewalk, and they did not arrest or cite Plaintiffs for being on the sidewalk.  Defendants Scott and Schaier also contend they are entitled to qualified immunity.  Plaintiffs respond that they have presented evidence raising a genuine issue of material fact that LVMPD Defendants' conduct would deter and chill free speech because the officers backed up the Venetian's position, did not clarify whether Plaintiffs could be on the sidewalk, improperly

4

warned Plaintiffs about returning to the property, and threatened them with arrest if they did so.  Plaintiffs also argue Scott and Schaier are not entitled to qualified immunity because a reasonable officer would know the officers' conduct was unlawful.

To establish a First Amendment claim, a plaintiff must show the defendant "deterred or chilled" the plaintiff's speech and "such deterrence was a substantial or motivating factor in [the defendant's] conduct." Menotti v. City of Seattle, 409 F.3d 1113, 1155 (9th Cir. 2005) (quotation omitted).  For the first element, a plaintiff need not show his speech actually was deterred. Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).  Rather, the plaintiff must show only that the defendant's acts would "chill or silence a person of ordinary firmness from future First Amendment activities." Id. (quotation omitted).  The second element may be established through direct or circumstantial evidence. Id. at 1300-01.

A reasonable jury could find that a person of ordinary firmness would be deterred from future First Amendment activities by LVMPD Defendants handcuffing Plaintiffs, searching them, detaining them, threatening arrest if Plaintiffs returned to the Venetian, and issuing a misdemeanor warning.  Although LVMPD Defendants contend Scott and Schaier never told Plaintiffs they could not return to the sidewalk, the police officers never clarified for Plaintiffs where they lawfully could be.  Instead, the police officers advised Plaintiffs that if they came back to Venetian property they would be arrested, despite Plaintiffs' continued protestations that they were on a public sidewalk. Instead, Scott and Schaier warned Plaintiffs not to come back and read them a misdemeanor warning even though Plaintiffs had not trespassed and even though LVMPD policy did not support giving the warning under the circumstances.  A reasonable jury could find that a threat of arrest would chill a person of ordinary firmness and in fact chilled Plaintiffs, as both testified they were fearful to return to the Venetian sidewalk.

///

1    However, Plaintiffs fail to present evidence raising a genuine issue of material

2    fact that chilling Plaintiffs' First Amendment rights was a substantial or motivating factor

3    of the police officers' conduct.  Plaintiffs present the following evidence which they

4    contend shows motive:  (1) LVMPD has a history of intentionally applying inapplicable

5    laws to street performers to keep them off the Las Vegas Strip sidewalks, and (2) an

6    LVMPD sergeant who is not a party to this case made a public statement reflecting animus

7    towards street performers.

8    For the first proposition, Plaintiffs cite several declarations by other street

9    performers who aver they have been harassed by LVMPD officers.  None of these

10   individuals identify Scott or Schaier as being involved in these incidents.  The fact that

11   some other officers may harass street performers does not raise an issue of fact that Schaier

12   or Scott acted with the intent to chill Plaintiffs' First Amendment rights.  Additionally, the

13   record reflects other incidents where LVMPD officers have supported street performers,

14   including Jason, against attempts to have them trespassed from the sidewalk on the Strip.

15   Scott testified he refused to trespass an individual based on a casino security guard's

16   complaint.  Plaintiffs present no evidence that either Scott or Schaier ever has expressed

17   hostility towards street performers on the Strip.

18   Plaintiffs also cite Banasik v. Clark Cnty., 2:09-CV-1242-LDG-GWF (D. Nev.

19   2009), in which LVMPD was accused of harassing street performers by enforcing

20   non-applicable laws against them.  That case was resolved by settlement, and there was no

21   finding or admission of such harassment on LVMPD's part.  Scott and Schaier were not

22   identified in that action as officers who engaged in any such alleged harassing conduct.

23   Banasik therefore does not raise an issue of fact that LVMPD, Scott, or Schaier have a

24   history of harassing street performers.

25   For the second proposition, Plaintiffs cite a June 2, 2011 newspaper article which

26   quoting LVMPD Sergeant Tom Jenkins ("Jenkins") as referring to the street performers as

"freaks and felons" and contending street performers have contributed to the decline of the atmosphere on the Strip.  (Opp'n to LVMPD MSJ, Ex. 24.)  Jenkins' statement is not admissible and, in any event, does not raise a genuine issue of material fact regarding whether Scott and Schaier acted with the requisite intent.  Jenkins' statement is hearsay and Plaintiffs have not argued or shown an exception applies.  Even if admissible, Jenkins' statement sheds light on Jenkins' opinions regarding street performers, not the opinions or motivations of Scott or Schaier.  That one LVMPD officer expresses these views does not brand every LVMPD officer with those opinions.

No reasonable jury could find Defendants Scott and Schaier acted with the intent to chill or deter Plaintiffs' First Amendment rights.  Consequently, the Court will grant summary judgment in favor of LVMPD Defendants Scott and Schaier on count one.

### B.  Fourth Amendment Unlawful Arrest - Count Two

LVMPD Defendants argue they did not arrest Plaintiffs, rather they properly conducted a brief investigatory detention.  Plaintiffs respond that LVMPD Defendants arrested them and had no probable cause to arrest.

A claim for unlawful arrest is "cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City & Cnty. of S.F., 266 F.3d 959, 964-65 (9th Cir. 2001).  An arrest occurs when the encounter between the individual and the police "may be sufficiently constrictive to cause the average person, innocent of crime, to reasonably think that he was being arrested."  United States v. Beck, 598 F.2d 497, 500 (9th Cir. 1979) (footnote omitted). Whether a person has been arrested "depends on an evaluation of all the surrounding circumstances."  Id. at 500-01 (quotation omitted).  A "significant consideration is the extent that freedom of movement is curtailed."  Id.  Additionally, the Court considers the "degree and manner of force used in the stop and detention."  Id.

///

While handcuffing an individual is a "substantial factor in determining whether an individual has been arrested . . . handcuffing alone is not determinative." United States v. Bravo, 295 F.3d 1002, 1010 (9th Cir. 2002). "Neither handcuffing a suspect nor relocating a suspect automatically turns a detention into an arrest where these actions are reasonably taken for safety and security purposes." United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1085 (9th Cir. 2000). Additionally, although an officer cannot turn an arrest into an investigatory detention merely by calling it an investigatory detention, a factor to consider as part of the totality of circumstances may include whether the officer informed the individual that handcuffing or detention would cease once the officers conducted an investigation if they determined no crime had occurred. United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009) (considering as a factor that officers told suspects the detention "might be nothing more than a misunderstanding and that its purpose was merely investigatory"); Bravo, 295 F.3d at 1011 (considering as one factor that the officer told the individual the handcuffs were temporary for safety reasons and would be removed upon reaching the security office, and the officer removed the handcuffs upon reaching the security office).

An arrest generally must be supported by probable cause. Dubner, 266 F.3d at 964-65. Probable cause exists if, at the moment of arrest, "under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." Blankenhorn v. City of Orange, 485 F.3d 463, 471-72 (9th Cir. 2007) (quotation omitted). To establish probable cause, an officer "'may not solely rely on the claim of a citizen witness . . ., but must independently investigate the basis of the witness' knowledge or interview other witnesses.'" United States v. Struckman, 603 F.3d 731, 742 (9th Cir. 2010) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)). The plaintiff bears the burden of proving the absence of probable cause. Beck v. City of

Upland, 527 F.3d 853, 864 (9th Cir. 2008).

The parties do not dispute the basic facts relating to whether LVMPD Defendants arrested Plaintiffs or whether the seizure amounted only to an investigatory detention. Because the parties agree on the historical facts and the applicable rule of law is undisputed, this mixed question of law and fact is for the Court.  See In re Bammer, 131 F.3d 788, 791-92 (9th Cir. 1997).

Viewing the facts under the totality of the circumstances, there was an arrest. Although Scott and Schaier did not remove Plaintiffs from the sidewalk, an average person, innocent of crime, reasonably would believe that he was being arrested where the police officers continued the detention of Plaintiffs who were the subject of a citizen's arrest by Venetian security guards and there appeared to be merely a transfer of custody upon the police officers' initial arrival.  Prior to speaking to Plaintiffs, the officers searched Plaintiffs, placed Plaintiffs in their own handcuffs, and at least initially told Jason that the Venetian had the right to detain and search Plaintiffs for trespassing on Venetian property. There is no evidence Scott or Schaier advised Plaintiffs they were being handcuffed for safety reasons or that the detention and handcuffing would be temporary while the officers investigated the situation.  LVMPD Defendants kept Plaintiffs in handcuffs even though Plaintiffs were calm and compliant, did not resist, made no attempt to flee, and were confined in a security office with two police officers and several Venetian security officers. Under these circumstances, a reasonable person, innocent of crime, would believe they were under arrest.

As to whether probable cause existed for the arrest, there are discrepancies in the evidence which raise issues of fact relating to (1) when Scott and Schaier searched Plaintiffs in relation to when they talked to Venetian security personnel, (2) whom Scott and Schaier talked to upon first arriving, and (3) when Scott and Schaier determined Plaintiffs had not committed a crime.  As to the timing of the search, Schaier testified he placed the

handcuffs on Plaintiffs prior to talking to the Venetian security manager.  (LVMPD MSJ, Ex. D at 45-46.)  However, Scott testified he first spoke with Venetian security personnel and the video from the security holding room suggests the police officers spoke at least briefly with Venetian personnel prior to conducting the search and changing out the handcuffs.  (<u>Id.</u>, Ex. C at 63; Notice of Manual Filing.)  As to whom the police officers spoke with, Scott testified he spoke to the security manager and at least one other uniformed security officer.  (LVMPD MSJ, Ex. C at 64.)  In contrast, Schaier testified he remembered talking to only one person, the security manager.  (<u>Id.</u>, Ex. D at 47.)  However, later in his testimony Schaier stated that he ensured the person with whom he was talking had been present at the scene of the incident.  (<u>Id.</u> at 73.) Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find the police officers talked only to the manager, who was not on the scene of the incident and was not an eyewitness to the events, and thus lacked personal knowledge as to where the incident occurred.

As to when Scott and Schaier determined Plaintiffs had committed no crime, Schaier testified that after talking with the Venetian security manager, he determined no crime had been committed.  (LVMPD MSJ, Ex. D at 51.)  Scott likewise testified that upon hearing the Venetian security officers' description of the incident with Sebastian, Scott concluded Sebastian had not committed a battery when Sebastian approached the Venetian security guards on the sidewalk with a cigarette and soda bottle.  (<u>Id.</u>, Ex. C at 82-83.)  Scott testified that he informed the security officers of this conclusion in the initial conversation between the police officers and Venetian security personnel.  (<u>Id.</u>)  Consequently, a reasonable jury could find LVMPD Defendants searched and handcuffed Plaintiffs either prior to conducting any investigation, or after consulting with the complaining party and concluding Plaintiffs had not committed a crime.  Either way, a reasonable jury could find LVMPD Defendants arrested Plaintiffs without probable cause.

///

Plaintiffs thus have raised an issue of fact that LVMPD Defendants violated their Fourth Amendment right to be free from unlawful arrest.  Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs also have established their rights were clearly established such that a reasonable officer would know he was arresting Plaintiffs without probable cause under the facts and circumstances in the present case.  No reasonable officer would believe he could arrest a person accused of trespass and/or battery without conducting any investigation at all.  Alternatively, no reasonable officer would believe he could arrest someone after he has determined no crime has been committed.  Factual issues remain as to what information Scott and Schaier relied upon to make the arrest and at what point they determined no probable cause existed.  These factual disputes relating to the existence of probable cause are intertwined with the qualified immunity inquiry, and genuine issues of material fact therefore remain on the question of qualified immunity on count two.  The Court therefore will deny LVMPD Defendants' Motion for Summary Judgment on count two.

**C.  Fourth Amendment Unreasonable Search & Seizure - Count Three**

LVMPD Defendants argue they properly conducted a brief investigatory detention and Plaintiffs consented to the searches.  Plaintiffs respond by arguing the officers knew Plaintiffs had committed no legal wrong, yet continued to detain them in handcuffs and search them.  Plaintiffs argue there is no evidence Sebastian consented to the search and Jason's consent was invalid because he was under duress.  Plaintiffs further argue LVMPD Defendants had no reasonable suspicion that Plaintiffs were armed and dangerous to support the searches.

1.  Seizure - Investigatory Stop

Police officers may make "limited intrusions on an individual's personal security based on less than probable cause." Michigan v. Summers, 452 U.S. 692, 698 (1981).  An officer briefly may detain a suspect to maintain the status quo while investigating criminal

activity.  Id. (citing Adams v. Williams, 407 U.S. 143 (1972)).  Such detentions may be made on less than probable cause, "so long as police have an articulable basis for suspecting criminal activity."  Id. at 699.

To determine whether a seizure is permissible on less than probable cause, "it is necessary to examine both the character of the official intrusion and its justification."  Id. at 701.  The Court uses the objective reasonableness test of the Fourth Amendment to determine whether the seizure was unreasonable.  Graham v. Connor, 490 U.S. 386, 395 (1989).  Under this test, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  United States v. Enslin, 327 F.3d 788, 796 (9th Cir. 2003) (quotation omitted).  Among the factors to consider are the severity of the crime at issue, whether the suspect posed an immediate threat to safety, and whether the suspect actively resisted arrest or fled.  Graham, 490 U.S. at 396.  The inquiry is fact specific, based on a totality of the circumstances.  United States v. Turvin, 517 F.3d 1097, 1101 (9th Cir. 2008).

An investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  Florida v. Royer, 460 U.S. 491, 500 (1983).  Additionally, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."  Id.  Consequently, to determine whether a seizure is unreasonable, the Court considers both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry v. Ohio, 392 U.S. 1, 19-20 (1968).  The government bears the burden of showing that "the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."  Royer, 460 U.S. at 500.

///

Viewing the facts in the light most favorable to Plaintiffs, genuine issues of fact remain as to whether the seizure was justified at its inception, and whether it was reasonably related to the circumstances which justified the interference in the first place. With respect to whether the seizure was justified at its inception, a reasonable jury could find Scott and Schaier lacked reasonable suspicion to support an investigatory detention for the same reasons discussed above with respect to probable cause. Further, viewing the facts in the light most favorable to Plaintiffs, a reasonable jury also could find that even if the seizure was justified at its inception, the seizure was not sufficiently limited in scope or duration. Scott and Schaier received a call for a trespass, thus the crime at issue was not serious. A reasonable jury could find neither Jason nor Sebastian posed an immediate threat to safety, as both already were detained by Venetian security officers, were in handcuffs, and Jason was seatbelted to a bench in the security office. There was no evidence Jason or Sebastian fled or resisted arrest. The security officers suggested they feared Sebastian was going to batter them with the bottle in his hand and that is why they put him in handcuffs, but the security officers never contended Sebastian actually struck them, attempted to strike them, or threatened to strike them. The police officers quickly determined there was no battery. The governmental interests at stake thus were very low.

A reasonable jury could find the intrusion on Plaintiffs' Fourth Amendment rights was substantial. Upon arrival, Scott and Schaier continued the detention initiated by the Venetian security officers, searched Plaintiffs, and replaced the Venetian handcuffs with their own. Scott and Schaier left Plaintiffs in handcuffs after a search had revealed no weapons or evidence of other criminal behavior, after Plaintiffs had complied with every command, and after the police officers already had decided they would not pursue criminal charges against Plaintiffs. A reasonable jury thus could conclude the detention of Plaintiffs, including the initial and continued use of handcuffs, was unreasonable. Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003) (holding an officer violated the Fourth Amendment

where the officer handcuffed an individual during a search where he had no reason to suspect the occupants of the home to be searched were dangerous, the crime at issue was a non-violent tax crime, and the handcuffed individual did not impede the search, threaten the officer, or attempt to flee).

Plaintiffs have raised an issue of fact as to whether LVMPD Defendants violated their Fourth Amendment rights against unreasonable seizures.  Plaintiffs also have established their rights were clearly established.  No reasonable officer would believe he could handcuff an individual without conducting any investigation or after determining the individual had not committed any crime.  Moreover, no reasonable officer would believe he could handcuff an individual during an investigatory detention where he had no reason to suspect the individual was dangerous; the crime at issue was non-violent; and the handcuffed individual did not impede the search, threaten the officer, or attempt to flee. Meredith, 342 F.3d at 1063.

Genuine issues of fact remain for trial regarding the reasonableness of LVMPD Defendants' seizure of Plaintiffs and the related question of whether Scott and Schaier are entitled to qualified immunity.  The Court therefore will deny LVMPD Defendants' Motion for Summary Judgment as to the seizure aspect of count three.

### 2.  Search

#### a.  Consent

Consent to a search is an exception to the Fourth Amendment's prohibition of unreasonable searches.  Enslin, 327 F.3d at 793.  "However, the consent must be voluntary, not a mere submission to an assertion of authority."  Id.  The government bears the burden of proving that the searched individual freely and voluntarily consented to the search. Royer, 460 U.S. at 497.

LVMPD Defendants are not entitled to summary judgment on consent as to Sebastian.  It is Defendants' burden to prove consent, and the record is unclear as to

whether Sebastian consented.  Sebastian testified he does not remember giving consent.

Defendants point to no other evidence showing Sebastian consented, or that he did so freely

and voluntarily.  Viewing the facts in the light most favorable to Plaintiffs, a genuine issue

of fact remains as to Sebastian's consent.

A genuine issue of fact remains on Jason's consent as well.  Jason admits he

consented to be searched, however Jason testified he did not consent voluntarily but just

submitted to a show of authority.  (Opp'n to LVMPD MSJ, Ex. 6 at 225-26.)  Jason was

detained and in handcuffs when Scott and Schaier arrived and began issuing orders to him,

including to stand up and spread his legs.  Viewing the facts in the light most favorable to

Plaintiffs, a reasonable jury could find LVMPD Defendants have not met their burden of

showing Jason voluntarily consented rather than submitted to authority.  As to qualified

immunity, no reasonable officer would believe he could justify a search based on consent

where that consent either is not given at all or is not freely and voluntarily given.  Because

the qualified immunity inquiry is entwined with the merits, genuine issues of fact remain as

to whether Scott and Schaier are entitled to qualified immunity.  The Court therefore will

deny LVMPD Defendants' Motion for Summary Judgment on the search aspect of count

three.

b.  Frisk for Weapons

An officer may perform a search for weapons for the officer's protection "where

he has reason to believe that he is dealing with an armed and dangerous individual,

regardless of whether he has probable cause to arrest the individual for a crime."  Terry, 392

U.S. at 27.  To determine whether such a search is reasonable, the question is "whether a

reasonably prudent man in the circumstances would be warranted in the belief that his

safety or that of others was in danger."  Id.

Viewing the facts in the light most favorable to Plaintiffs on LVMPD

Defendants' Motion, genuine issues of material fact remain as to whether LVMPD

Defendants were justified in searching Plaintiffs.  LVMPD Defendants argue they had reasonable suspicion that Jason was armed because Jason had been carrying prop swords. Certainly issues regarding officer and public safety must be considered carefully in every such encounter, and this Court has considered it here.  However, even assuming the prop weapons could support reasonable suspicion Jason possessed a real weapon, the officers also must have reasonable suspicion Jason posed an immediate threat to their safety or the safety of others to support a frisk for weapons.  A reasonable jury could find Scott and Schaier had no reasonable suspicion Jason posed an immediate threat to anyone's safety. The officers were called out for a trespass.  Jason was handcuffed  and seatbelted to a bench when the officers arrived.  Jason made no threatening moves and made no verbal threats. As to Sebastian, LVMPD Defendants identify no evidence supporting a reasonable suspicion he was armed.  Like Jason, Sebastian was handcuffed and calm when the officers arrived.  In sum, a reasonable jury could find LVMPD Defendants had no reasonable suspicion that Plaintiffs were armed and/or posed a threat to anyone sufficient to justify the pat down search.

Plaintiffs have presented evidence raising an issue of fact that LVMPD Defendants violated their Fourth Amendment rights against unreasonable searches.  Further, Plaintiffs have met their burden of establishing their rights were clearly established, as the law long has required police officers to have reasonable suspicion that the individual to be frisked is both armed and dangerous.  Because the qualified immunity inquiry is intertwined with the merits, genuine issues of fact remain as to whether Scott and Schaier are entitled to qualified immunity.  The Court therefore will deny Defendants' Motion for Summary Judgment to the extent it seeks to support the searches on the basis of a valid frisk for weapons.

///

///

**D.  Conspiracy - Count Five**

As discussed in the Court's other Order in this case entered contemporaneously herewith, Plaintiffs fail to raise a genuine issue of material fact supporting a conspiracy claim.  The Court therefore will grant Defendants' Motion for Summary Judgment and will deny Plaintiffs' Counter-Motion for Summary Judgment on count five.

**E.  Due Process - Counts Six & Seven**

LVMPD Defendants argue they are entitled to summary judgment on the due process claims because there is no substantive due process claim where Plaintiffs' claims are more readily addressed by explicit constitutional amendments.  LVMPD Defendants argue there is no procedural due process violation because Scott and Schaier let Plaintiffs explain their side of the story, resulting in no arrest or citation.  Plaintiffs argue they have a substantive due process right to "free movement" independent of the First and Fourth Amendments and LVMPD Defendants' conduct shocks the conscience because they endorsed the Venetian Defendants kidnapping Plaintiffs.  As to procedural due process, Plaintiffs contend LVMPD Defendants' procedures are inadequate and result in erroneous deprivations of constitutional rights.

1.  Substantive Due Process - Count Six

Where the court can analyze a § 1983 plaintiff's claim "under an explicit textual source of rights in the Constitution, a court should not resort to the more subjective standard of substantive due process." Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001) (quotation omitted).  Here, however, Plaintiffs' substantive due process claim does not rest on their First or Fourth Amendment rights.  Rather, Plaintiffs claim a right of free movement under the Fourteenth Amendment.  "Citizens have a fundamental right of free movement, historically part of the amenities of life as we have known them." Nunez by Nunez v. City of San Diego, 114 F.3d 935, 944 (9th Cir. 1997) (quotation omitted).  This includes "the freedom to loiter for innocent purposes" as "part of the 'liberty' protected by

the Due Process Clause of the Fourteenth Amendment."  City of Chic. v. Morales, 527 U.S. 41, 53 (1999) (plurality opinion).  While LVMPD Defendants argue Plaintiffs' substantive due process claim raises the same issues as their First and Fourth Amendment claims, Plaintiffs' substantive due process claim does not depend on either a First or Fourth Amendment violation.  Rather, Plaintiffs contend that because LVMPD Defendants threatened Plaintiffs with arrest if they returned to the Venetian and did not clarify whether this included the public sidewalk, LVMPD Defendants violated Plaintiffs' free movement rights.  The Court therefore will analyze this claim as a substantive due process claim.

To establish a substantive due process violation, a plaintiff must show the defendant deprived him of his life, liberty, or property and engaged in "conscience shocking behavior."  Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006).  An official's conduct may shock the conscience where the official acts with the purpose to harm in a rapidly evolving situation, or where he acts with deliberate indifference or reckless disregard for the plaintiff's rights in situations where the official had the opportunity to deliberate. Tennison v. City & Cnty. of S.F., 570 F.3d 1078, 1089 (9th Cir. 2009); Porter v. Osborn, 546 F.3d 1131, 1137-39 (9th Cir. 2008).  Deliberate indifference requires "an objective risk of harm and a subjective awareness of that harm."  Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 844 (9th Cir. 2010).

Plaintiffs have raised a genuine issue of material fact that LVMPD Defendants deprived Plaintiffs of their liberty.  Freedom of movement and to loiter for innocent purposes are liberty interests protected by the Fourteenth Amendment.  Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find LVMPD Defendants deprived Plaintiffs of this right when they issued the misdemeanor warning to Plaintiffs and advised Plaintiffs they could not return to the Venetian without clarifying whether Plaintiffs could access the public sidewalk.  A reasonable jury could find Plaintiffs attempted to clarify the issue but were never given a clear answer by LVMPD Defendants whether they

would be arrested if they returned to the sidewalk in front of the Venetian.  Plaintiffs

offered evidence they did not return to the Venetian sidewalk for fear of being arrested.

As to whether the officers' conduct shocks the conscience, Scott and Schaier had

time to deliberate, and thus their conduct could shock the conscience if they acted with

deliberate indifference or in reckless disregard of Plaintiffs' rights.  This is a close question

which ultimately will depend upon credibility determinations by the trier of fact.  However,

viewing the facts in the light most favorable to Plaintiffs, genuine issues of material fact

remain as to whether Defendants acted with deliberate indifference.  A reasonable jury

could find that by effectively endorsing the Venetian Defendants' conduct and issuing a

misdemeanor warning against Plaintiffs in violation of  LVMPD policy, Plaintiffs were

deterred from returning to the sidewalk.  Although Plaintiffs repeatedly stated they were on

a public sidewalk and expressed confusion about whether they could return to the public

sidewalk, LVMPD Defendants did not clarify the issue.  Rather, Scott and Schaier told

Plaintiffs they could not return to Venetian's property.

Further, genuine issues of fact remain that Scott and Schaier had a subjective

awareness of that harm.  A reasonable jury could find the officers were subjectively aware

of the risk of deterrence based on evidence that Plaintiffs repeatedly told the officers that

Plaintiffs were on a public sidewalk when Venetian Defendants handcuffed them and

brought them back to the security office.  Scott and Schaier did not clarify whether

Plaintiffs could return to the sidewalk in front of the Venetian despite Plaintiffs' expressed

confusion and concerns over the issue.  A reasonable jury could conclude Scott and Schaier

appreciated the risk that their failure to clarify the point would result in Plaintiffs not

exercising their rights to return to the sidewalk in front of the Venetian.

Plaintiffs have met their burden of establishing genuine issues of fact remain as

to whether LVMPD Defendants violated their substantive due process rights.  However,

Plaintiffs have not met their burden of establishing their rights were clearly established in

the factual context presented to these officers.  Plaintiffs have not identified any case law

that would make it clear to a reasonable police officer that his failure to clarify a dispute

over a legal issue involving private versus public property rights would amount to unlawful

conduct.  The Court therefore will grant LVMPD Defendants' Motion for Summary

Judgment to the extent that Defendants Scott and Schaier are entitled to qualified immunity

on the substantive due process claim in count six.

2.  Procedural Due Process - Count Seven

For a procedural due process claim, the plaintiff must demonstrate "(1) a

deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

adequate procedural protections."  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

Due process requires that a party affected by government action be given notice and "'the

opportunity to be heard at a meaningful time and in a meaningful manner.'"  S.E.C. v.

McCarthy, 322 F.3d 650, 659 (9th Cir. 2003) (quoting Mathews v. Eldridge, 424 U.S. 319,

333 (1976)).  To determine whether the procedures provided are adequate, the Court must

"balance (1) the private interest affected by the official action; (2) the risk of erroneous

deprivation and the probable value of additional procedural safeguards; and (3) the

governmental interest, including the fiscal and administrative burdens of additional

procedures."  Humphries v. Cnty. of L.A., 554 F.3d 1170, 1193 (9th Cir. 2009), rev'd on

other grounds, L.A. Cnty v. Humphries, 131 S. Ct. 447 (2010).

A genuine issue of material fact remains as to whether Plaintiffs' procedural due

process rights were violated.  Plaintiffs have Fourth Amendment liberty interests to be free

from unreasonable searches and seizures.  A reasonable jury could find there is a risk of

erroneous deprivation due to LVMPD policy, custom, or practice.  Scott and Schaier both

testified that it is LVMPD standard procedure that if LVMPD officers arrive on the scene

and the casino security personnel have handcuffed an individual, LVMPD automatically

will exchange the casino handcuffs for the LVMPD handcuffs.  (LVMPD MSJ, Ex. C at 75-

76 (Scott testifying that it is "standard procedure" for LVMPD to replace LVMPD handcuffs for casino security handcuffs), Ex. D at 45-46 (Schaier testifying that "the first thing we do is switch out handcuffs.  That's just our standard practice when it comes to in-custodies that are detained.").)  Viewing that evidence in the light most favorable to Plaintiffs, a reasonable jury could find that this policy, custom, or practice leads LVMPD officers to refrain from making an independent judgment about whether to place an individual in handcuffs, and a reasonable jury could find this happened to Plaintiffs.  A reasonable jury could find that additional safeguards, such as revising this policy, custom, or practice would be valuable so that police officers make independent judgments about handcuffing individuals, rather than automatically ratifying a decision made by casino security.  Furthermore, a reasonable jury could conclude that requiring the officers to make their own independent judgment about whether handcuffing a particular individual is appropriate is neither fiscally nor administratively burdensome.

Plaintiffs have met their burden of establishing an issue of fact remains that Defendants violated their procedural due process rights.  However, Plaintiffs do not identify any law that would put these individual officers on notice that by following LVMPD standard operating procedure of switching out their handcuffs for a private actor's handcuffs their conduct would be unlawful.  Defendants Scott and Schaier therefore are entitled to qualified immunity.  Additionally, viewing the facts in the light most favorable to LVMPD Defendants on Plaintiffs' Counter-Motion, although both officers testified this is standard procedure, Scott testified that he does not automatically defer to casino security and he made his own independent judgment that handcuffing Plaintiffs was appropriate in this case.  (LVMPD MSJ, Ex. C at 76.)  A reasonable jury could find that the policy, custom, or practice therefore was not the moving force behind any Fourth Amendment violation.  Rather, Scott exercised his independent judgment.  The Court will grant LVMPD Defendants' Motion to the extent that Defendants Scott and Schaier are entitled to qualified

immunity on count seven.

### F.  Defendant Douglas Gillespie - Personal Participation

A defendant is not liable under § 1983 unless he personally participated in the alleged deprivation of the plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  "[T]here is no respondeat superior liability under section 1983."  Id.  However, a supervisor personally participates, and may be liable in his own right, if the supervisor "acted, or failed to act, in a manner that was deliberately indifferent" to the plaintiff's rights.  Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  To establish deliberate indifference, the plaintiff must show the official was both "aware of facts from which the inference could be drawn that a substantial risk of [a rights violation] exists, and he must also draw the inference."  Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010) (quotation omitted).

Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find Defendant Sheriff Douglas Gillespie ("Gillespie") failed to establish policies or train his officers regarding First Amendment issues related to the sidewalks along the Strip despite the Ninth Circuit's opinion in the matter, and despite knowing there was confusion amongst line officers regarding First Amendment issues on the sidewalks in front of the casinos.  (Opp'n to LVMPD MSJ, Ex. 3 at 16-17.)  Gillespie testified he was aware of these issues dating back as far as 1998 or 1999.  (Id. at 42.)  Although aware of this confusion, Gillespie has not ensured officers are trained on First Amendment issues regarding sidewalks along the Strip, has not directed anyone to develop policies for officers regarding First Amendment issues along the Strip sidewalks, and does not know whether any have been developed.  (Id. at 52, 56.)  Only recently has the LVMPD initiated any attempt policies and training on the subject.  (Id. at 52.)

Defendants argue LVMPD provides general training on sidewalk and First Amendment issues generally and therefore Gillespie was not required to train specifically

on the narrow strip of sidewalk in front of the Venetian.  However, Plaintiffs have

presented evidence that despite such training, confusion reigns amongst line officers when

confronted with casino property owners claiming rights to the sidewalks on the Strip and

that Gillespie was aware of this confusion.  Thus, a reasonable jury could find Gillespie was

deliberately indifferent to the risk that the current policies and training were inadequate.

The Court therefore will deny Defendants' Motion for Summary Judgment on this issue.

### G. Municipal Liability

Defendants argue they are entitled to summary judgment on this issue because

Plaintiffs can show no LVMPD policy or custom to harass street performers.  Defendants

note that Jason has heard police officers tell casino security guards that street performers

have a right to be on the sidewalk on the Strip, thereby showing no policy or custom.

Plaintiffs argue there is evidence of a policy or custom of cooperating with casino security

officials even when doing so violates First Amendment rights.  Alternatively, Plaintiffs

argue Gillespie is a final decision maker whose failure to train is imputed to LVMPD.

A municipal entity may be liable under § 1983 "only where the municipality itself

causes the constitutional violation through execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy."  Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984 (9th Cir. 2002)

(quotation omitted).  "Liability for improper custom may not be predicated on isolated or

sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

consistency that the conduct has become a traditional method of carrying out policy."

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Additionally, a plaintiff may establish a municipal entity is liable for its

omissions where the municipality's "deliberate indifference led to its omission and that the

omission caused [a municipal] employee to commit the constitutional violation."  Gibson v.

Cnty. of Washoe, Nev., 290 F.3d 1175, 1186 (9th Cir. 2002).  To establish liability through

omission, a plaintiff must show: (1) that a municipal employee violated the plaintiff's rights; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that these policies were the "moving force" behind the employee's violation of the plaintiff's constitutional rights.  Id. at 1194.  "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation."  Id. at 1186. Unlike the deliberate indifference standard for an individual employee's liability, this standard does not include a subjective component.  Id. at 1195.  A policy, or lack thereof, is the "moving force" if the municipality "could have prevented the violation with an appropriate policy."  Id. at 1194.

### 1.  Policy or Custom

Plaintiffs have failed to present evidence raising a genuine issue of material fact that LVMPD has a policy or custom of violating First Amendment rights along the sidewalk on the Strip.  Rather, the evidence shows that while some officers will support the casinos, others will support the street performers.  Jason testified he has been supported by LVMPD officers in other incidents where casino security attempted to have him trespassed from a public sidewalk.  Scott testified he has refused to arrest an alleged trespasser despite a Venetian casino security guard's request that he do so.  The evidence before the Court shows a lack of policy or custom on the subject, rather than a persistent and widespread custom of harassing street performers.

However, viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have presented evidence raising a genuine issue of fact that LVMPD has a policy and custom of reinforcing casino security decisions regarding detaining and handcuffing individuals without making an independent judgment regarding the appropriateness of those actions.  Scott and Schaier testified that it is was standard operating procedure to place LVMPD handcuffs on any individual handcuffed by casino personnel.  Further, Plaintiffs

have presented evidence that LVMPD officers never have questioned a casino security guard's decision to detain an individual.

A reasonable jury could infer this policy, custom, or practice is likely to lead to Fourth Amendment violations.  Likewise, a reasonable jury could find LVMPD knew or should have known that abdicating to casino security guards its responsibility to make independent evaluations regarding the appropriateness of using handcuffs or detaining individuals likely would result in constitutional violations.  A reasonable jury could conclude this policy, custom, or practice was the moving force behind any Fourth Amendment violation Plaintiffs may prove at trial, as Scott and Schaier testified they were following LVMPD policy, custom, or practice in detaining, searching, and handcuffing Plaintiffs.

The Court therefore will grant LVMPD Defendants' Motion with respect to the lack of a policy of harassing street performers.  However, the Court will deny LVMPD Defendants' Motion with respect to a policy, custom, or practice related to automatic handcuffing of individuals who have been detained and handcuffed by casino security personnel.

### 2.  Omission

As discussed with respect to other issues in this case, Plaintiffs have raised genuine issues of material fact that LVMPD employees violated Plaintiffs' rights, that LVMPD's policies, customs, practices, or failure to train amount to deliberate indifference, and that these policies, customs, practices, or omissions were the moving force behind the violation of Plaintiffs' constitutional rights.  Moreover, a reasonable jury could find LVMPD had a policy, practice, or custom of automatically handcuffing individuals whom casino security guards had handcuffed and that this custom or practice was the moving force behind a Fourth Amendment violation in this case.  The Court therefore will deny

///

Defendants' Motion on the issue of municipal liability.[2]

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Defendants Las Vegas Metropolitan Police Department, Doug Gillespie, Officer Terry Scott, and Officer Scott Schaier's Motion for Summary Judgment (Doc. #81) is hereby GRANTED in part and DENIED in part.  The motion is granted with respect to Plaintiffs' First Amendment claim in count one as to Defendants Terry Scott and Scott Schaier, Plaintiffs' conspiracy claim in count five as to all LVMPD Defendants, Plaintiffs' substantive due process claim in count six as to Defendants Terry Scott and Scott Schaier, and Plaintiffs' procedural due process claim in count seven against Defendants Terry Scott and Scott Schaier.  The motion also is granted with respect to Plaintiffs' allegation that Defendants maintained a policy, custom, or practice of harassing street performers.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' Counter-Motion for Summary Judgment (Doc. #112) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Excess Pages (Doc. #104) is hereby GRANTED.

DATED: October 25, 2011

_____
PHILIP M. PRO
United States District Judge

---

[2]  Although the Court is granting summary judgment in favor of Scott and Schaier for some claims, that does not mean LVMPD likewise is entitled to summary judgment.  Where the plaintiff suffers constitutional deprivations not "as a result of actions of the individual officers, but as a result of the collective inaction of the [municipal entity]," the officers' individual liability will not affect whether the municipal claim may proceed.  Fairley v. Luman, 281 F.3d 913, 916-17 (9th Cir. 2002).  Thus, a municipality may be liable under § 1983 for improper training even if a jury found in favor of the individual officer who allegedly violated the plaintiff's constitutional rights.  Id.; Chew v. Gates, 27 F.3d 1432, 1439-40 (9th Cir. 1994); Hopkins v. Andaya, 958 F.2d 881, 888 (9th Cir. 1992).